# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**ANGELIQUE L. LINGARD and SUDARIERN D. SMITH, Individually and on behalf of all others similarly situated,**

**CASE NO.**

**Plaintiffs,**

**CLASS ACTION**

**v.**

**JURY TRIAL DEMANDED**

**HOLIDAY INN CLUB VACATIONS, INC. f/k/a ORANGE LAKE COUNTRY CLUB, INC. and WILSON RESORT FINANCE, LLC,**

**Defendants.**

_____/

## CLASS ACTION COMPLAINT

Plaintiffs Angelique L. Lingard and Sudarien D. Smith, (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, sue Defendants Holiday Inn Club Vacations, Inc. f/k/a Orange Lake Country Club, Inc. and Wilson Resort Finance, LLC

(referred to herein collectively as "Holiday Inn" or "Defendants[1]") and allege:

## INTRODUCTION

1.     This Complaint seeks to void timeshare loans that violate the Military Lending Act ("MLA"), 10 U.S.C. § 987, which was enacted to protect members of the United States Military from an epidemic of predatory lending that endangers our Nation's military readiness and impacts servicemember retention.

2.     Holiday Inn sells vacations, or more accurately, the potential to book a future vacation through a complex system of vacation club points that are tied to timeshare properties that are owned by a trust controlled by Holiday Inn. As part of the transaction, Holiday Inn traps servicemembers into a loan that can never be repaid because of accompanying maintenance fees.

3.     A combination of factors make active-duty servicemembers uniquely attractive to Holiday Inn, including, among other reasons: 1) they are required to pay their financial obligations in a  timely manner

---

[1] Plaintiffs allege claims against all Defendants as alter egos of one another, as explained more fully herein.

under the Uniform Code of Military Justice and are subject to punishment, 2) they have a reliable source of income that is subject to garnishment, 3) they are relatively unsophisticated consumers given their average age and educational background, and 4) for those servicemembers who have a security clearance, they risk losing their job entirely.

4. Accordingly, Holiday Inn targets military consumers by, among other things, offering free stays to military families and offering them discounts. Once they agree to a free vacation, Military families are lured into high-pressure timeshare sales presentations and are frequently convinced to purchase vacation points that represent timeshare interests at a Holiday Inn timeshare location.

5. The MLA covers an incredibly broad range of credit transactions that is closely aligned with the broad definition of credit used in the Truth in Lending Act (TILA) and Regulation Z, with only a few narrowly defined exceptions. When consumer credit is extended to an MLA Covered Borrower, the MLA requires additional disclosures, and limits the amount of interest a creditor can charge. The MLA also prohibits the use of mandatory arbitration clauses, restricts methods of

payment, and enforces any other rights provided to the borrower under state or federal laws.

6.    Although it targets military families, Holiday Inn's standard course of business violates the MLA.  Specifically, it fails to provide the required MLA disclosures; (b) unlawfully requires mandatory binding arbitration; and (c) unlawfully refinances, rolls over or consolidates previous timeshare loans.

7.    As a result, the timeshare loans made to Plaintiffs and other similarly situated servicemembers are void from inception pursuant to the MLA.  This lawsuit seeks injunctive relief to void the credit agreements of Plaintiffs and the Class, as well as restitution damages to recover the money paid to Holiday Inn, and other actual damages caused to Plaintiffs and the Class by Holiday Inn's routine violations of the MLA.

8.    Plaintiffs also assert an individual fraud claim based on false statements made to them by Holiday Inn salespeople regarding their ability to sell their timeshare back as a result of their military service.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this matter pursuant to 10 U.S.C. § 987 and 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over Defendants because Defendants are entities that were formed or incorporated in Florida, have been headquartered in Florida at all times relevant to this Complaint, and they engaged in much of the actions complained of herein in Florida.

11.     Venue is proper in this district pursuant to 10 U.S.C.A. § 987(f)(5)(E) and 28 U.S. § 1391, because one or more of Defendants resides in the district and a substantial part of the events and omissions giving rise to the claims occurred in the district.

12.     Plaintiffs have standing because they suffered a concrete injury in that: (a) they are obligated to pay money under the terms of purported Agreements that were void from inception because they violated the MLA, (b) they have made payments pursuant to the unlawful Agreements, which money they would not have paid but for Holiday Inn knowingly or negligently inducing them into entering into illegal and

void agreements, and (c) they paid interest in excess of the amount stated in the agreements in violation of the MLA.

## **PARTIES**

13.    At all times material hereto, Plaintiff Angelique Lingard was sui juris, a citizen of South Carolina, and on active duty in the United States Air Force.

14.    At all material times hereto, Plaintiff Sudarien Smith was sui juris, a citizen of Georgia, and on active duty in the United States Air Force.

15.    Defendant Holiday Inn Club Vacations, Inc. (f/k/a Orange Lake Country Club, Inc.) is an active corporation, with its principal place of business in Orlando, Florida. At all times material hereto Holiday Inn Club Vacations, Inc. sold, sells, and finances timeshare interests in Florida.

16.    Defendant Wilson Resort Finance, LLC is an active limited liability company operating in Florida corporation with its principal place of business in Kissimmee, Florida. Upon information and belief, Wilson Resort Finance, LLC is a single-purpose entity that exists only to finance the Holiday Inn timeshare interests.

17.    An Affiliated Business Arrangement Disclosure Statement, provided to Plaintiffs by Holiday Inn, provides that Holiday Inn Club Vacations, Inc., Wilson Resort Finance, LLC and Wilson Title Services, LLC "have a business relationship with each other. Wilson Title Services, LLC and Wilson Resort Finance, LLC are both wholly owned subsidiaries of Holiday Inn Club Vacations Incorporated and are therefore affiliates of each other. Because of these relationships, these referrals may provide Holiday Inn Vacations Club Incorporated and/or Wilson Resort Finance, LLC a financial or other benefit."

18.    Wilson Resort Finance, LLC is listed as the lender on Plaintiffs' Closing Disclosures.

19.    Holiday Inn Club Vacations Incorporated is listed as the Settlement Agent and the seller on Plaintiff's Closing Disclosures.

20.    At all times herein mentioned, each of the Defendants was the agent, servant, partner, aider and abettor, co-conspirator and/or joint venture of each of the other Defendants and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other Defendants, and

their collective conduct constitutes violations of the MLA as to Plaintiffs and Class members.

21.    At all times herein mentioned, Defendants and each of them, were fully informed of the actions of their agents and employees, and thereafter no officer, director or managing agent of Defendants repudiated those actions, which failure to repudiate constituted adoption and approval of said actions and all Defendants and each of them, thereby ratified those actions.

22.    There exists and, at all times herein mentioned, there existed a unity of interest in ownership between certain Defendants and other certain Defendants such that any individuality and separateness between the certain Defendants has ceased and these Defendants are the alter ego of the other certain Defendants and exerted control over those Defendants. Adherence to the fiction of the separate existence of these certain Defendants as entities distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction fraud and/or would promote injustice.

23.    For the reasons set forth in paragraphs 15-22, Defendants are jointly and severally liable for all the violations of the MLA alleged herein.

## FACTUAL ALLEGATIONS

24.    Plaintiffs, Tech Sergeant Sudarien Smith and Tech Sergeant Angelique Lingard were friends in 2016 and later began dating in 2018 while both serving in the United States Air Force and stationed at Barksdale Air Force Base in Bossier Parrish, Louisiana.

25.    Sometime in late 2016, a fellow servicemember informed Plaintiffs about a "free vacation" in Orlando, Florida that was being offered to military personnel by Holiday Inn.

26.    After agreeing to a "free vacation" from Holiday Inn, Plaintiffs traveled to Orlando for what they believed would be a much-deserved and relaxing vacation.

27.    Upon arrival, Plaintiffs were told that they were required to attend a mandatory presentation, otherwise the credit card on file for incidentals during the "free vacation" would be charged for the full price of the stay at the Holiday Inn Orlando location.

28.    Plaintiffs subsequently attended a 4-hour high pressure sales pitch on Holiday Inn's timeshare vacation points program. During the presentation and in one-on-one conversations later, Plaintiffs were informed by Holiday Inn's sales agents that they could sell their timeshare interest back to Holiday Inn at any time because they were in the military.

29.    Ultimately, Plaintiff Smith entered into a timeshare contract to purchase a "fixed week" timeshare interest from Defendants in November 2016 at the Orange Lake Country Club Villas in Kissimmee, FL.

30.    When Plaintiffs used their timeshare vacation for the first time in August 2017, Holiday Inn pitched them again on the benefits of upgrading their fixed week timeshare in connection with a different property.

31.    At this time, Plaintiffs again inquired about their ability to sell their timeshare points back to Holiday Inn should they wish to do so and were again told that because they were "in the military" Holiday Inn would buy back their points "at any time."

32.    Plaintiff Smith agreed to a fixed week timeshare interest from Defendants in August 2017 at the Cape Caribe Resort in Cape Canaveral, FL.

33.    The same thing happened again in August 2018 when Plaintiffs used their timeshare and were convinced by Holiday Inn to convert the 2016/2017 fixed-week timeshare contracts into a new 300,000 "standard" timeshare points contract with Holiday Inn.  The purchase price of these points was $60,070.90,[2] with a monthly payment of $1,004.40.

34.    Plaintiffs were also pushed to purchase an additional 50,000 "Signature" timeshare points from Holiday Inn after being told that this purchase would allow them access to a higher level of Holiday Inn timeshare luxury rooms.  The purchase price of these points was $ 13,736., with a monthly payment of $229.67.

35.    On August 2, 2019, the pattern continued and Holiday Inn's sales team convinced Plaintiffs to purchase another 50,000 timeshare

[2] The purchase prices represented herein state the amount financed by Plaintiffs for each transaction.

points for $13,329.50. The monthly payment for this purchase was $222.87.

36.    In September 2020, Plaintiffs visited a Holiday Inn timeshare resort in Las Vegas for their family vacation. During this trip, Holiday Inn required Plaintiffs to attend a "briefing" (which lasted 4 hours) in order to review their existing contracts.

37.    During the briefing, Plaintiffs again inquired if they were able to sell back their Holiday Inn timeshare points should they choose to do so. The Holiday Inn representative informed Plaintiffs that they could sell the points back to Holiday Inn at any time because they were in the military.

38.    On September 21, 2020, Plaintiffs Smith and Lingard entered into an agreement to purchase 425,000 timeshare points (including 300,000 points from the prior 2018 contract) from Holiday Inn. (Exhibit A, 2020 Consolidated Timeshare Contract). The reason Plaintiffs purchased these additional points was in order have access to a premier tier of Holiday Inn resort locations with upgraded rooms along with the incentive of a "free vacation" at any Holiday Inn resort.

39.    In April 2021, Plaintiff Smith entered into an agreement with Holiday Inn for the purchase of 30,000 timeshare points in order to have access to Holiday Inn's Registry Collection.

40.    At this point, Plaintiffs had four separate timeshare contracts with Holiday Inn totaling 555,000 total points.  (50,000 points in 2018, 50,000 points in 2019, 425,000 points in 2020 and 30,000 points in 2021). Each of these contracts came with its own yearly "maintenance fee" that had to be paid over and above the monthly payments.    These maintenance fees ranged from $400 to $4,800.

41.    In August 2021, Plaintiffs used their timeshare points for a family vacation in Galveston, Texas.  During this trip, Plaintiffs were again required to attend a briefing (which lasted six hours) in order to "review" all their current contracts.

42.    During this meeting, Plaintiffs explained that they could no longer afford their existing contracts and requested that Holiday Inn buy back the points it had sold them previously.  For the first time and contrary to repeated assurances provided by all former sales people over the previous five years, the Holiday Inn representative informed Plaintiffs that Holiday Inn would not purchase their points back from

them.  Plaintiffs' military status made no difference.  The request was flatly rejected.

43.    Instead, the Holiday Inn representative informed Plaintiffs that they could lower their maintenance fees by converting and consolidating their 2018, 2019 and 2021 separate contracts (totaling 130,000 points) into a single contract for a total of 200,000 points. According to the salesperson, the consolidation would reduce the overall maintenance costs.

44.    On August 10, 2021, Plaintiffs executed a consolidated timeshare contract to purchase 200,000 Holiday Inn timeshare points (including 130,000 consolidated points from prior contracts).  (Exhibit B, 2021 Consolidated Contract).

45.    Thus, at the time of filing this Complaint, Plaintiffs are subject to two existing timeshare contracts with Holiday Inn: (1) the 2020 Consolidated Timeshare Contract for 425,000 points at a sale price of $78,760.20 and a monthly payment of $1,154.01, plus maintenance costs (approximately $4,000 per year), and (2) the 2021 Consolidated Contract for 200,000 points at a sale price of $51,679.10 and a monthly payment of $864.08, plus yearly maintenance costs of approximately $1,600.00.

46.    Plaintiff's combined annual income after taxes is approximately $100,000.  Plaintiffs were spending approximately 29% of their combined income on timeshare related costs as a result of these two timeshare loans from Holiday Inn.

47.    When the maintenance costs did not decrease as promised, Plaintiffs realized they could no longer afford to make the monthly payments or carry the maintenance costs on their timeshare loans.

48.    Plaintiffs ceased making payments on the 2020 Consolidated Timeshare Contract in May/June 2022 and the 2021 Consolidated Contract in August 2021.

49.    Holiday Inn reported Plaintiffs' failure to pay to the credit reporting agencies and these loans are listed as delinquent.

50.    Because of this indebtedness and detrimental credit reporting, Plaintiffs were prevented from purchasing a home,  are currently in jeopardy of losing their security clearances and being involuntarily terminated from the Air Force.

### Holiday Inn

51.    Holiday Inn is a creditor for timeshare interests throughout the United States.  Holiday Inn's entire marketing scheme is centered on

the selling of timeshare vacation points.  Every page of its website is replete with references to "vacation ownership" and timeshare and not to the selling of real estate.  The tab on the Holiday Inn Resorts website titled "Become a Member" explains the true nature of what is sold in the timeshare transactions – vacation points, not an ownership interests in dwellings.  *See*  https://holidayinnclub.com/membership/what-is-a-timeshare.

52.    Holiday Inn has 28 different resorts, 8,018 villas in 14 U.S. States and more than 365,000 timeshare owners.[3] Holiday Inn has sold and loaned the money to purchase thousands of timeshares, including, upon information and belief, making timeshare loans to hundreds of covered borrowers like Plaintiffs.

53.    Upon information and belief, Holiday Inn used the standard-form timeshare contracts for all loans for timeshare interests at Holiday Inn timeshare resorts with no relevant variations for MLA covered borrowers.

---

[3] https://holidayinnclub.com/about-us#growth-and-members;
https://holidayinnclub.com/membership/what-we-offer

54.   Holiday Inn is a "creditor" which provided "credit" to Servicemembers Plaintiffs Sudarien Smith and Angelique Lingard, as those terms are defined in 32 C.F.R. § 232.3(h) & (i).

55.   To obtain financing, Plaintiffs provided their social security numbers, their military identification cards, and other credit information to Holiday Inn.

56.   Holiday Inn knew or should have known of Plaintiffs status as active-duty military members, as the Plaintiffs provided Holiday Inn with their credit information and military identification cards and Holiday Inn verified the same before entering into the Agreements.

57.   Additionally, Holiday Inn has uniformly and systematically failed to implement policies and procedures to ensure compliance with the MLA's mandatory written and oral disclosures and limitations as part of or in connection with their standard-form contracts that they use uniformly at their timeshare resort locations. There is no mention of MLA protections appearing anywhere in the Agreements and none were provided to Plaintiffs and the Class via any supplemental notices or disclosures.

## The Military Lending Act, 10 U.S.C. § 987

58.    The United States Congress passed the Military Lending Act of 2006 (hereinafter "MLA"), which was implemented as part of the John Warner National Defense Authorization Act for Fiscal Year 2007. Specifically, section 670, was written to protect military servicemembers from unfair or abusive loan or credit sale transactions, such as high interest, short-term, or installment loans to inexperienced military borrowers, who in years prior to enactment had fell victim to predatory lending.

59.    The MLA directs the Department of Defense ("DoD") to prescribe regulations to carry out the MLA. DoD regulation, 32 C.F.R. Part 232, implements the MLA and contains limitations on and requirements for certain types of consumer credit extended to active duty servicemembers and their dependents ("covered borrowers").

60.    Under the MLA, "consumer credit" is defined as:

Credit offered or extended to a covered borrower primarily for personal, family, or household purposes, and that is:

(i)    Subject to a finance charge; or

(ii)    Payable by a written agreement in more than four installments.

32 CFR § 232.3.

61.    Holiday Inn's timeshare loans constitutes an extension of "consumer credit," as defined under the MLA, 32 CFR § 232.3, because (1) Plaintiffs and the other Class members were "covered borrowers," (2) their timeshare interests were primarily for personal, family, or household purposes, (3) loans were subject to finance charges, and (4) the debt was payable pursuant to written agreements payable in more than four installments.

62.    The MLA places a duty on creditors to determine whether a potential borrower is a "covered borrower." Creditors can use the free MLA Database maintained by the Department of Defense to make this determination.  There is nothing in the MLA requiring Plaintiffs to identify themselves as "covered borrowers."

63.    The MLA requires three specific disclosures be made whenever a lender extends consumer credit to covered borrowers, including:

(1)    A statement of the MAPR applicable to the extension of credit;

(2)    Any disclosure Regulation Z requires to be made in accordance with the applicable Regulation Z provisions; and

(3)    A clear description of the payment obligation, which can be either a payment schedule for closed-end credit, or account opening disclosures consistent with Regulation Z for open-end credit, as applicable.

32 CFR § 232.6(a).

64.    Holiday Inn made no attempt to determine if Plaintiffs were covered borrowers under the MLA.

65.    On information and belief, it is Holiday Inn's routine and systematic business practice to not use the DoD database or any other available method to determine whether an individual is a covered borrower or to comply with the MLA.

66.    Holiday Inn violates the MLA in three distinct ways, each of which make the contract "void from inception."

67.    First, neither of Plaintiffs' timeshare contracts include the required "statement of the MAPR" as required by 32 CFR § 232.6(a).

68.    On information and belief, it is Holiday Inn's routine business practice to not include a valid "statement of the MAPR" in any of its timeshare contracts.

69.   As a result of failing to provide the required Statement of MAPR disclosure, Plaintiffs' 2020 Consolidated Timeshare Contract and 2021 Consolidated Contract are "void from inception" pursuant to 10 U.S.C. § 987(f)(3) and 32 CFR § 232.9(c).

70.   Second, the MLA (10 U.S.C. § 987(e)(3)) also prohibits creditors from requiring covered borrowers to submit to mandatory arbitration.

71.   Holiday Inn's standard-form timeshare contracts include binding mandatory arbitration provisions with no exception for covered borrowers under the MLA, including both contracts entered into with Plaintiffs.

72.   As a result of unlawfully requiring covered borrowers, including Plaintiffs, to enter into contracts containing mandatory arbitration provisions in violation of 10 U.S.C. § 987(e)(3), Plaintiffs' 2020 Consolidated Timeshare Contract and 2021 Consolidated Contract are "void from inception" pursuant to 10 U.S.C. § 987(f)(3) and 32 CFR § 232.9(c).

73.   Third, 10 U.S.C. § 987(e)(1) of the MLA states that it shall be unlawful for any creditor to roll over, renew, repay, refinance or

consolidate any consumer credit extended to the borrower by the same creditor with the proceeds of other credit extended to the same covered member.

74.    As part of its routine business practice, Holiday Inn timeshare sales department routinely encourages covered borrowers to roll over or consolidate previous timeshare loans and points into a new contract with proceeds extended by the same creditor.  Plaintiffs' 2021 Consolidated Contract is an example of a consolidated loan in violation of 10 U.S.C. § 987(e)(1).

75.    As a result of Holiday Inn's routine practice of unlawfully rolling over or consolidating Plaintiffs' 2017, 2018 and 2019 timeshare contracts into the 2021 Consolidated Contract, the 2021 contract is "void from inception" pursuant to 10 U.S.C. § 987(f)(3) and 32 CFR § 232.9(c).

## CLASS ALLEGATIONS

76.    Plaintiffs bring this case as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed "Class" includes the following:

> All covered borrowers who financed a timeshare from Holiday Inn within the five (5) years prior to the filing of the initial Complaint in this matter.

77.    Additionally, Plaintiffs also propose a "Consolidation Subclass" defined as those member of the Class who had one or more previous timeshare loans consolidated into a subsequent timeshare loan with Holiday Inn.

78.    Expressly excluded from the Class and subclass are: (a) any Judge presiding over this action and members of their immediate families; (b) Defendant and any entity in which Defendant has a controlling interest, or which has a controlling interest in Defendant, and their legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

79.    Plaintiffs reserve the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

## Rule 23 Criteria

80.    <u>Numerosity</u>. Because Holiday Inn targets military consumers as set forth above, and because Holiday Inn has sold approximately 365,000 timeshares nationally over the last five years, Plaintiffs believe that there are more than 100 class members.  Joinder of this many class

members would be impracticable. The exact number of Class members is unknown, as such information is in the exclusive control of Holiday Inn. However, the number of Class members can be easily determined by obtaining a list of persons who purchased and financed timeshare interests from Holiday Inn during the class period and running those names through the DoD database created for this purpose. Upon information and belief, Holiday Inn maintains the information electronically necessary to generate such a list necessary to identify the members of the Class.

81.    <u>Commonality</u>. Common questions of law and fact affect the rights of each Class member and common relief by way of damages is sought for Plaintiffs and Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

      a.    Whether Holiday Inn entered into standard-form timeshare contracts with servicemembers;

      b.    Whether the timeshare contracts constitute an extension of consumer credit under the MLA;

      c.    Whether Holiday Inn failed to provide required MLA disclosures in violation of the MLA;

d.    Whether Holiday Inn's standard-form timeshare contracts contain binding arbitration clauses in violation of the MLA;

e.    Whether Holiday Inn rolled over or consolidated prior timeshare loans of covered borrowers in violation of the MLA;

f.    Whether Holiday Inn Club Vacations, Inc. f/k/a Orange Lake Country Club and Wilson Resort Finance, LLC, are jointly and severally liable for the violations of the MLA committed;

g.    Whether the timeshare loans and contracts made to the class are void from inception due to violations of the MLA; and

h.    The remedies and damages to which Plaintiffs and the Class are entitled to under 10 U.S.C. § 987.

82.    <u>Typicality</u>. The claims and defenses of the representative Plaintiffs are typical of the claims and defenses of the Class because they are covered borrowers under the MLA like the rest of the Class and their claims arise under the same legal theories and out of a common course of

conduct by Holiday Inn. The contracts used in Plaintiffs' transactions with Holiday Inn are standardized agreements that are also used by Holiday Inn to sell timeshares to the other members of the Class. None of these standardized agreements contain the necessary "statement of MAPR" as required by the MLA. Similarly, Holiday Inn's standardized contracts also contains a binding arbitration clause in direct violation of the MLA. As a result, these contracts are void from inception and Plaintiffs have suffered statutory and actual damages of the same type and in the same manner as the Class they seek to represent. There is nothing peculiar about Plaintiffs' claims when compared to those of the other members of the Class.

83. <u>Adequacy</u>. The representative Plaintiffs will fairly and adequately assert and protect the interests of the Class. As active duty military servicemembers, Plaintiffs are both "covered borrowers" under the MLA. Plaintiffs have no conflict of interest with the class members they seek to represent. They have hired attorneys who likewise have no conflicts of interest with the Class and who are experienced in prosecuting class actions, consumer protection law claims and MLA

claims in particular, and will adequately represent the interests of the class.

84. <u>Predominance and Superiority</u>. A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

a. The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members. The statutory claims under the MLA require a simple identification of those consumers who are also covered borrowers, which can be accomplished by the use of the MLA database provided by the DoD.

b. Prosecution of a separate action by each individual members of the Class would create a risk of inconsistent and varying adjudications against Defendants when confronted with incompatible standards of conduct;

c. Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests;

d.  Defendants reside in this District and violated the MLA within this District, making this Court appropriate for the litigation of the claims of the entire Class; there are very few attorneys in the United States with any expertise or experience in this nascent area of law making it nearly impossible for Class members to find adequate representation; and the novelty of these claims and the fact that individual damages may be modest in comparison to the time required to litigate make a Class action the only procedural method of redress in which Class members can, as a practical matter, recover for the conduct at issue.  In fact, the vast majority of class members are not even aware that they have a claim.

85.  Defendants have acted and refused to act on grounds generally applicable to the Class, thereby making declaratory relief and corresponding final injunctive relief under Rule 23(b)(2) appropriate with respect to the Class as a whole. Plaintiffs and the Class are entitled to a declaration that their contracts are void and Defendants should be

enjoined from attempting to collect any monies pursuant to them or to enforce them in any way.

## COUNT I

### Violation of the Military Lending Act
### On Behalf of the Class

86.    Plaintiffs and the Class repeat and re-allege the allegations in paragraphs 1 through 85 as if set forth herein in full.

87.    Servicemembers Sudarien Smith and Angelique Lingard and all the other members of the Class were "covered borrowers" and "covered members" as those terms are defined pursuant to 32 C.F.R. § 232.3(g), because they were serving active duty members of the United States Air Force at the time they contracted with Holiday Inn.

88.    Plaintiffs are both listed in the MLA database as active duty servicemembers covered by the MLA on the date of the 2020 Consolidated Timeshare Contract and the 2021 Consolidated Contract.

89.    Members of the putative class are also those individuals who are listed in the MLA database as covered borrowers on the date they executed a timeshare purchase contracts with Holiday Inn.

90.    Holiday Inn is a "creditor" which provided "consumer credit" to Plaintiffs and the Class as those terms are defined in 32 C.F.R. §232.3(f), (h) & (i).

91.    Holiday Inn violates the MLA in three separate ways: (1) failure to provide a "statement of the MAPR"; (2) by requiring covered borrowers to arbitrate; and (3) by requiring covered borrowers to waive their right to participate in a class action. Each of these violations constitutes a separate and independent violation of the MLA, and provides a separate and independent basis for voiding the timeshare contracts of Plaintiffs and the Class.

## NO STATEMENT OF THE MAPR

92.    First, 10 U.S.C. § 987 (c)((1)(A) and 32 C.F.R. § 232.6 makes mandatory the following disclosures in all loans to covered borrowers:

> (a) Required information. With respect to any extension of consumer credit (including any consumer credit originated or extended through the internet) to a covered borrower, a creditor shall provide to the covered borrower the following information before or at the time the borrower becomes obligated on the transaction or establishes an account for the consumer credit:
>
> (1) A statement of the MAPR applicable to the extension of consumer credit;

(2) Any disclosure required by Regulation Z, which shall be provided only in accordance with the requirements of Regulation Z that apply to that disclosure; and

(3) A clear description of the payment obligation of the covered borrower, as applicable. A payment schedule (in the case of closed-end credit) or account-opening disclosure (in the case of open-end credit) provided pursuant to paragraph (a)(2) of this section satisfies this requirement.

....

(c) Statement of the MAPR—

(1) In general. A creditor may satisfy the requirement of paragraph (a)(1) of this section by describing the charges the creditor may impose, in accordance with this part and subject to the terms and conditions of the agreement, relating to the consumer credit to calculate the MAPR. Paragraph (a)(1) of this section shall not be construed as requiring a creditor to describe the MAPR as a numerical value or to describe the total dollar amount of all charges in the MAPR that apply to the extension of consumer credit.

(2) Method of providing a statement regarding the MAPR. A creditor may include a statement of the MAPR applicable to the consumer credit in the agreement with the covered borrower involving the consumer credit transaction. Paragraph (a)(1) of this section shall not be construed as requiring a creditor to include a statement of the MAPR applicable to an extension of consumer credit in any advertisement relating to the credit.

(3) Model statement. A statement substantially similar to the following statement may be used for the purpose of paragraph (a)(1) of this section: "Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed

Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account)."

93. Holiday Inn's standard-form timeshare contracts and closing disclosures used in the timeshare sales to Plaintiffs and the Class do not provide any "Statement of the MAPR" either in the form of a description of the charges necessary to calculate the MAPR or through the inclusion of the MLA Model Statement.

94. Pursuant to 32 C.F.R. § 232.9(c), "any credit agreement, promissory note., or other contract with a covered borrower" that fails to comply with 10 U.S.C. § 987 or its implementing regulations "is void from inception of the contract."

95. Because Holiday Inn's timeshare contracts and promissory notes do not contain the required "statement of the MAPR" as required by the MLA, they are all "void from inception."

## BINDING ARBITRATION

96.    Second, 10 U.S.C. § 987(e)(3) of the MLA also prohibits creditors from requiring covered borrowers to submit to mandatory arbitration.

97.    Holiday Inn's standard-form timeshare contracts include binding mandatory arbitration provisions with no exception for covered borrowers under the MLA, including both contracts entered into with Plaintiffs.

98.    Holiday Inn's arbitration provision includes 16 separate paragraphs.

99.    Specifically, Holiday Inn's timeshare contract includes the following arbitration provision, in part:

> IF ARBITRATION IS CHOSEN BY EITHER PARTY WITH RESPECT TO A CLAIM, NEITHER PURCHASER NOR SELLER SHALL HAVE THE RIGHT TO LITIGATE THAT CLAIMIN COURT OR TO HAVE A JRUY TRIAL ONT HAT CLAM, OR TO ENGAGE IN PRE-ARBITRATION DISCOERY EXCEPT AS PROVIDED FOR IN THE ROCEDURES AND RULES. FURTHER, PURCHASER WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLIAM SUBJECT TO ARBITRATION. THE ARBITRATOR'S DECISION WILL GENERALLY

BE FINAL AND BINDNG.   OTHER RIGHTS THAT THE PURCHASER OR SELLER WOULD HAVE IF THE CLAIM WAS LITIGATED IN COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.    IT IS IMPORTANT THAT PURCHASER READ THIS ENTIRE SECTION CAREFULLY    BEFORE    SIGNING    THIS AGREEMENT.

Any Claim or Claims shall be resolved, upon the election by Purchaser or Seller, by binding arbitration pursuant to this Section.  For purposes of this Section, a Claim shall include, but not be limited to, any claim, dispute or controversy of every kind and nature arising from or relating to this Agreement or the relationship between Purchaser and Seller, promotions or oral or written statements related to this Agreement, the Interest acquired under this Agreement, the terms of financing, the administration and operation of the    Trust    Plan,    the    Site    Associations, GlobalAccess, Seller and its affiliates, membership and maintenance assessment, and the validity, enforceability, and scope of this Section and this Agreement.  …

(Exhibits A and B, Section 17).

100.  As a result of unlawfully requiring covered borrowers to enter into contracts containing mandatory arbitration provisions in violation of 10 U.S.C. § 987(e)(3) of the MLA, the timeshare contracts of Plaintiffs all members of the Class are "void from inception" pursuant to 10 U.S.C. § 987(f)(3) and 32 CFR § 232.9(c).

## CLASS ACTION WAIVER

101. Third, 10 U.S.C. § 987(e)(2) of the MLA prohibits creditors from requiring covered borrowers to "waive the borrower's right to legal recourse under any otherwise applicable provision of State or Federal law."

102. Holiday Inn's standard-form timeshare contracts include a class action waiver provision which specifically required Plaintiffs and all Class Members to "unconditionally waive any right to participate in a representative capacity or as a member of any class in any dispute" related in any way to their timeshare purchase.  (Exhibits A and B at section 21).

103. The right to participate in a class action stems from the Rules of Civil Procedure under both State and Federal law, including the right to bring this class action lawsuit under the MLA.

104. As a result of unlawfully requiring covered borrowers to waive their right to file or participate in any class action lawsuit in violation of 10 U.S.C. § 987(e)(2) of the MLA, the timeshare contracts of Plaintiffs all members of the Class are "void from inception" pursuant to 10 U.S.C. § 987(f)(3) and 32 CFR § 232.9(c).

105.  For each of these three independent violations of the MLA, and in addition to voiding the contracts "from inception," 32 CFR § 232.9(e)(1) provides that Plaintiffs and each member of the Class are entitled to actual damage sustained but not less than $500 for each violation, appropriate punitive damages, equitable or declaratory relief, and any other available relief.

106.  Holiday Inn is also liable for Plaintiffs' attorney fees and costs pursuant to 32 CFR § 232.9(e)(2).

## COUNT II

### Violation of the Military Lending Act
### On Behalf of the Consolidation Loan Subclass

107.  Plaintiffs and the Class repeat and re-allege the allegations in paragraphs 1 through 85 as if set forth herein in full.

108.  Servicemembers Sudarien Smith and Angelique Lingard and all the other members of the Class were "covered borrowers" and "covered members" as those terms are defined pursuant to 32 C.F.R. § 232.3(g), because they were serving active duty members of the United States Air Force at the time they contracted with Holiday Inn.

109.  Plaintiffs are both listed in the MLA database as active duty servicemembers covered by the MLA on the days the 2020 Consolidated

Timeshare Contract and the 2021 Consolidated Contract were entered into.

110. Members of the putative Consolidation Subclass are also those individuals who are listed in the MLA database as covered borrowers on the date they executed a timeshare contract with Holiday Inn.

111. Holiday Inn is a "creditor" which provided "consumer credit" to Plaintiffs and the Class as those terms are defined in 32 C.F.R. §232.3(f), (h) & (i).

112. 10 U.S.C. § 987(e)(1) of the MLA states that it shall be unlawful for any creditor to roll over, renew, repay, refinance or consolidate any consumer credit extended to the borrower by the same creditor with the proceeds of other credit extended to the same covered member.

113. As part of its routine business practice, Holiday Inn's timeshare sales department routinely encourages covered borrowers to roll over or consolidate previous timeshare loan agreements into new agreements with proceeds extended by the same creditor.

114.   Plaintiffs' 2021 Consolidated Contract is an example of a consolidated loan in violation of 10 U.S.C. § 987(e)(1) as it consolidated Plaintiff's three previous loans involving 130,000 total timeshare points and added an additional 70,000 points for a total of 200,000 points.  (See Exhibit B).

115.   As a result of Holiday Inn's routine practice of unlawfully rolling over or consolidating Plaintiffs' 2017, 2018 and 2019 timeshare contracts into the 2021 Consolidated Contract, the 2021 contract is "void from inception" pursuant to 10 U.S.C. § 987(f)(3) and 32 CFR § 232.9(c).

116.   The loans of Consolidated Subclass Members are also "void from inception" pursuant to 10 U.S.C. § 987(f)(3) and 32 CFR § 232.9(c).

117.   In addition, 32 CFR § 232.9(e)(1) provides that Plaintiffs and each member of the Class are entitled to actual damage sustained but not less than $500 for each violation of the MLA, appropriate punitive damages, equitable or declaratory relief, and any other available relief.

118.   Holiday Inn is also liable for Plaintiffs' attorney fees and costs pursuant to 32 CFR § 232.9(e)(2).

## COUNT III

### Common Law Fraud
### Individually and Not on Behalf of any other Class Member

119.  Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 85  as if set forth herein.

120.  This fraud claim is asserted by Plaintiffs in their individual capacity and not on behalf of any Class Member.

121.  The elements of a Fraud Claim are (1) the making of a statement, (2) the falsity of the statement, (3) an intent to deceive, (4) reasonable reliance on the false statement, and (5) damages.

122.  Plaintiffs assert that Holiday Inn committed fraud through the conduct of its sales agents who repeatedly stated that because of Plaintiffs' status as military members, Holiday Inn would buy back their timeshare points upon request, thereby allowing Plaintiffs' to cease making payments on the loans.

123.  Specifically, on or about Novembe16, 2016, at the Orange Lake Holiday Inn location in Orlando, FL, Orlando Acevedo Jr, a Holiday Inn sales representative, informed Plaintiffs that they could sell back their timeshare to Holiday Inn "at any time" because they were military.

124.    On or about August 22, 2017, at the Orange Lake Holiday Inn location in Orlando, FL, Plaintiffs specifically asked Daniel Foreno, a Holiday Inn sales representative, about whether they could sell back their timeshare to Holiday Inn. They were again informed that Plaintiffs could sell back their timeshare to Holiday Inn at "any time" because they were military.

125.    The following year, on or about August 2, 2018, at the Orange Lake Holiday Inn location in Orlando, FL, Daniel Foreno again informed Plaintiffs they could sell back their timeshare at any time because they were military.

126.    On September 21, 2020, when entering the 2020 Consolidated Timeshare Contract at the Holiday Inn resort in Las Vegas, Nevada, Plaintiffs were informed again by a Holiday Inn sales representative, Taylour Frommelt, that they could sell back their timeshare at "any time" because they were military.

127.    In April 2021, Plaintiff Smith purchased an additional 30,000 points at the Holiday Inn resort located in Galveston, Texas where he was informed by Holiday Inn sales representative Lindsay Gilberton that

Plaintiffs again could sell back their timeshare at "any time" because they were military.

128. Plaintiffs relied on Holiday Inn's statements to their detriment because they only agreed to purchase any timeshare in the first place because they believed that they could get out of it if necessary and sell back to Holiday Inn. Because this sell back option was repeatedly referred to by different Holiday Inn sales people at different locations, Plaintiffs believed that it was Holiday Inn's policy to allow persons with military status to sell back their points at any time.

129. Plaintiffs only first determined that the sell-back statements were false on August 10, 2021, when they requested that Holiday Inn buy back their timeshare points at the Holiday Inn resort in Galveston, Texas. The Holiday Inn sales representative at that time, Kim McCurry, informed Plaintiffs that she was "unaware of any such policy" and that they would be required to continue making payments through the life of each loan.

130. As a result of the fraudulent representations made by Holiday Inn through its sales agents, Plaintiffs have been damaged because they would not have purchased any timeshare without the reassurance that

they could essentially terminate the Agreement at any time thought the sell back provision that had been explained to them time and time again.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs request the Court enter order and judgment as follows:

A.    An order certifying this action to proceed as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class Representatives, and appointing the undersigned as Class Counsel;

B.    A judgment declaring that Plaintiffs' and the Class's timeshare contracts were void from the inception because they violated the MLA and awarding Plaintiffs and the Class the equitable, declaratory and injunctive relief set forth above pursuant to their implied right of action under 10 U.S.C. § 987 and/or 10 U.S.C. § 987(5)(A)(iii) and/or restitution/unjust enrichment under Florida law;

C.    A judgment awarding Plaintiffs and Class members actual damages the greater of all amounts they paid in connection with or pursuant to the illegal and void timeshare contracts or $500 per MLA

violation, together with appropriate punitive damages pursuant to 10 U.S.C. § 987(f)(5)(A);

D.    A judgment awarding Plaintiffs and the Class reasonable attorneys' fees and litigation costs incurred in this action pursuant to 10 U.S.C. § 987(f)(5)(B);

E.    A judgment awarding Plaintiffs and the Class all pre-judgment and post-judgment interest recoverable at law or in equity; and

F.    A judgment awarding Plaintiffs and the Class such other and further relief to which they are justly entitled.

## JURY TRIAL DEMAND

Plaintiffs and the Class demand a jury trial on all issues so triable.

Respectfully submitted this 24th day of February, 2023.

**VARNELL & WARWICK, P.A.**

/s/ JANET R. VARNELL
Janet R. Varnell; FBN: 0071072
Brian W. Warwick; FBN: 0605573
Erika R. Willis, FBN: 100021
Matthew T. Peterson, FBN: 1020720
1101 E. Cumberland Ave.
Ste. 201H, #105
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352-504-3301
*jvarnell@vandwlaw.com*
*bwarwick@vandwlaw.com*

*mpeterson@vandwlaw.com*
*ewillis@vandwlaw.com*
*ckoerner@vandwlaw.com*

***Counsel for Plaintiffs,
individually and on behalf of all
others similarly situated***