**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| ANGELIQUE L. LINGARD and SUDARIEN D. SMITH, Individually and on behalf of all others similarly situated, | ) **Case No. 6:23-cv-323-PGB-RMN** |
| Plaintiffs, | ) **CLASS ACTION** |
| v. | ) |
| HOLIDAY INN CLUB VACATIONS, INC. f/k/a ORGANE LAKE COUNTRY CLUB, INC. and WILSON RESORT FINANCE, LLC, | ) |
| Defendants. | ) |

---

**Expert Report of Christopher W. Young, Ph.D., MBA, MAFF, CVA**
**Dated: May 28, 2024**

## TABLE OF CONTENTS


I. INTRODUCTION AND QUALIFICATIONS ..... 3

A. Scope of Work ..... 3

B. Qualifications ..... 4

C. Documents Relied Upon and Reservations ..... 5

II. BACKGROUND ..... 6

A. Plaintiffs ..... 6

B. Defendants ..... 7

C. Timeline of Events ..... 8

III. OVERVIEW OF THE HABIBI REPORT ..... 10

IV. SUMMARY OF OPINIONS ..... 12

V. DETAILED SUPPORT FOR OPINIONS ..... 12

A. Mr. Habibi Has Failed To Consider Information That Is Relevant To His Conclusion ..... 12

B. A Common Methodology Can Be Used To Estimate The Offset Due to Holiday Inn Using The Market Approach To Value Holiday Inn Points ..... 14

# I. INTRODUCTION AND QUALIFICATIONS

## *A. Scope of Work*

1. I am a Partner at Resolution Economics, LLC ("Resolution Economics"). Resolution Economics has been retained by Varnell & Warwick, P. A., counsel for Angelique Lingard and Sudarien Smith ("Plaintiffs") and others similarly situated ("Class Members") in connection with the Second Amended Class Action Complaint dated **March 28, 2023**.[1]

2. Plaintiffs have filed a class action lawsuit against Holiday Inn Club Vacations, Inc. and Wilson Resort Finance, LLC, (collectively referred to as "Holiday Inn" or the "Defendants") alleging that they have violated the Military Lending Act of 2006 (the "MLA") when issuing loans to buy interests in Holiday Inn timeshares.

3. More specifically, I have been retained by Varnell & Warwick, P. A ("Counsel") to respond to Mr. Paul Habibi's conclusion in his Expert Report dated April 26, 2024 (the "Habibi Report")[2]: and his allegation that "*each putative class member has a unique history of purchase timing, timeshare interest structure, redemption timing, and redemption type, there is no plausible common method for reliably calculating the value of benefits received by all putative class members*",[3] i.e., the offset due to Holiday Inn.

4. My opinions and the detailed support to my opinions can be found in **Sections IV** and **V** of my report, respectively.

---

[1] *See* ANGELIQUE L. LINGARD and SUDARIEN D. SMITH, Individually and on behalf of all others similarly situated, Plaintiffs, v. Holiday Inn Club Vacations, Inc. f/k/a Orange Lake Country Club Inc. and Wilson Resort Finance, LLC, Case No. 6:23-cv-323-PGB-RMN dated March 28, 2023 (the "Second Amended Complaint").

[2] The Habibi Report includes a background on the timeshare industry and the history of Holiday Inn Club Vacations, I have not been retained to respond to these particularly sections but reserve to the right to do so, if I am instructed by Counsel at a later date.

[3] Habibi Report at para. 71.

### *B. Qualifications*

5. I am an Associate Professor at Rutgers School of Business, where I teach business ethics and strategy. Previously, I was a professor of economics, finance, and political economy at Seton Hall University's Stillman School of Business and School of Diplomacy. Prior to becoming a partner at Resolution Economics, I founded Red Maple Economics, LLC ("Red Maple"), a forensic, strategy, and economic consulting firm. I have a Ph.D. and M.B.A. in global political economy, finance, and accounting from Rutgers University. I am presently taking courses toward an additional master's degree focused on behavioral economics from Harvard University.

6. I have approximately thirty (30) years of experience valuing companies, partnerships, intangible assets, and related non-marketable securities, working with C-level executives, attorneys, bankers, venture capitalists, entrepreneurs, government officials, and the like. I have held senior and executive-level positions in finance, strategy, M&A, partnerships, sales, and product development for Fortune 1,000 companies such as Thomson Reuters, Dow Jones (NewsCorp.), and CIT (Newcourt Financial, Dell Venture Products). I have also held positions at ComVest Ventures and Berkery Noyes Investment Bank, where I negotiated, managed, and implemented partnerships, JVs, and acquisitions.

7. Additionally, I was previously Vice President and Board Member of the National Association of Forensic Economics. I am a Research Fellow at Rutgers Institute for Ethical Leadership, a member of the National Association of Certified Valuators and Analysts, a member of the Collegium of Pecuniary Damages Signatories, and a member of the Society for Business Ethics. I also write and publish in economics, finance, and accounting peer-reviewed journals and magazines.

8. A more comprehensive description of my relevant experience is contained in my curriculum vitae, which can be found in **Appendix A** to this report. Also included as **Appendix B** is a list of cases in which I have provided deposition and/or trial testimony

over the course of my career. My time is being billed at a rate of $450 per hour in this matter. Other Resolution Economics personnel assisting me in connection with my work on this matter are also being billed at their customary hourly rates. No portion of the compensation related to my work in this litigation is dependent upon the outcome of this matter.[4]

### *C. Documents Relied Upon and Reservations*

9. In connection with my work on this matter, I and/or members of my staff have reviewed and analyzed, among other sources, contracts, spreadsheets, deposition transcript(s), and other documents and information produced in this case, contemporaneous business records, and information from publicly available sources. A complete list of the documents reviewed and relied upon in my analysis can be found in **Appendix C** attached to this report.

10. The opinions expressed in this report are based on analyses conducted to date and information available to me as of the date of this report. To the extent documents or other information which might affect the opinions and conclusions expressed herein should become available subsequent to the filing of this report, I respectfully reserve the right to supplement and/or amend this report on that basis or for other reasons.

11. Further, I may independently create, or be asked by Counsel to create, exhibits after the issuance of this report. These exhibits may then be used as demonstratives during trial. In support of my opinions, I may also use any of the previously produced documents referred to in the body of this report or in any exhibit or attachment hereto, including the list of materials I reviewed in forming my opinions.

[4] Please note that references to I or Resolution Economics are all the expressed opinions of Christopher W. Young.

## II. BACKGROUND

### *A. Plaintiffs*

12. Tech Sergeant Angelique Lingard ("Ms. Lingard") is from South Carolina and on active duty in the United States Air Force. Tech Sergeant Sudarien Smith ("Mr. Smith") is from Georgia and is also on active duty in the Unites States Air Force.[5] Both were stationed at Barksdale Air Force Base in Bossier Parrish, Louisiana in 2018.[6]

13. Mr. Smith and Ms. Lingard purchased various interests[7] in Holiday Inn timeshares from 2016 through 2021. Their purchases were funded by loans from the Defendants.

14. As of March 2023, Mr. Smith and Ms. Lingard had two contracts with Holiday Inn:

- A 2020 timeshare contract for 425,000 points with a monthly payment of $1,154.01 and yearly maintenance costs of approximately $4,000, and
- A 2021 timeshare contract for 200,000 points with a monthly payment of $864.08 and a yearly maintenance cost of approximately $1,600.[8]

15. By August 2021 Mr. Smith and Ms. Lingard could no longer pay for their 2021 timeshare contract.[9]

16. In May/June 2022 they stopped making payments pursuant to their 2020 timeshare contract.[10]

17. Mr. Smith and Ms. Lingard and Class Members represent a proposed class for the class period February 24, 2018, to February 24, 2023 (the "Class Period").

[5] Second Amended Complaint at paras. 13 and 14.
[6] Second Amended Complaint at para. 24.
[7] In this context, a purchase of an interest is the purchase of an ownership interest without lending interest.
[8] Second Amended Complaint at para. 45.
[9] Second Amended Complaint at para. 48.
[10] *Id.*

18. Plaintiffs allege that the Defendants issued timeshare loans that violated the MLA, 10 U.S.C. Section 987.[11] The MLA protects military service members from unfair or abusive lending practices. Pursuant to the MLA, the Department of Defense ("DoD") outlines the regulations to implement the MLA and defines the type of consumer credit that can be extended to active-duty service members and their dependents, i.e., Covered Borrowers.

19. The MLA defines consumer credit as "*Credit offered or extended to a covered borrower primarily for personal, family, or household purposes, and that is: (i) Subject to a finance charge; or (ii) Payable by written agreement in more than four installments*."[12]

20. Plaintiffs specifically allege the Defendants failed to determine if they were Covered Borrowers as defined by the MLA.[13] Plaintiffs also claim that Defendants, as creditors, were obligated to verify their status as Covered Borrowers and to ensure compliance with the MLA's mandatory written disclosures that are designed to protect service members from predatory lending practices.[14]

### *B. Defendants*

21. Holiday Inn Club Vacations, Inc. ("Holiday Inn Club"), formerly known as Orange Lake Country Club, Inc., is a corporation, with its principal place of business in Orlando, Florida. The Holiday Inn Club sells and finances timeshare interests in Florida. It has two subsidiaries: Wilson Resort Finance, LLC and Wilson Title Services, LLC.[15]

22. Holiday Inn Club has historically provided a variety of vacation club options, including fixed-week, floating-week, and undivided interests in a specific resort,[16] which allowed owners to use points throughout the resort or in a particular building, unit type, or phase of

---

[11] Second Amended Complaint at pp. 1-2.
[12] MLA at 32 CFR Section 232.3.
[13] Second Amended Complaint at para. 64.
[14] Second Amended Complaint at para 62.
[15] Second Amended Complaint at paras. 15 and 17.
[16] Purchase Agreement for Torrence Lamar Gilliam dated December 31, 2015.
https://www.holidayinnclub.com/membership/what-is-vacation-ownership

the development. Fixed-week interests granted owners exclusive rights to use a specific unit a week each year or every other year depending on the interest purchased.[17]

23. In 2018, Holiday Inn Club shifted from the previously mentioned ownership structures to a new model centered on interests within the Orange Lake Revocable Land Trust ("Orange Lake Land Trust"). The ownership terms and conditions for the land trust are detailed in each individual purchase agreement.[18] These land trust interests provide owners with the ability to reserve and use units across various participating properties within the trust.[19] Purchasers of timeshare interests via the Orange Lake Land Trust receive a timeshare estate within the land trust, which is linked to a designated point value.[20]

Wilson Resort Finance, LLC ("WR Finance") is a limited liability company operating out of Kissimmee, Florida that provides financing to purchase Holiday Inn timeshare interests.[21] Holiday Inn Club timeshare interests can be purchased either through a cash payment or financed with a mortgage loan. WR Finance offers these loans with promissory notes secured by a mortgage, creating a lien on the real property tied to the timeshare. Each loan agreement outlines the term, interest rate, and monthly payment details, with the loans generally amortizing over a period of 10 or 15 years.[22]

### *C. Timeline of Events*

24. In late 2016 Ms. Lingard and Mr. Smith heard about Holiday Inn offering "free vacations" in Orlando, Florida to military personnel from a friend. They went to vacation there but on arrival were told they had to attend a presentation "*otherwise the credit card on file for*

---

[17] Purchase Agreement for Torrence Lamar Gilliam dated December 31, 2015.
[18] Purchase Agreement for Matthew Nicholas Gayle dated May 4, 2019.
[19] *Id.*
[20] *Id.*
[21] Second Amended Complaint at para. 16.
[22] Mortgage of Matthew Nicholas Gayle dated May 4th, 2019; Promissory Note of Matthew Nichols Gayle dated May 4, 2019.

*incidentals during the "free vacation" would be charged for the full price of the stay at the Holiday Inn Orlando location.*"[23]

25. When Ms. Lingard and Mr. Smith attended the sales presentation for Holiday Inn's timeshare vacation points program, they were told by sales agents that if they participated in the program, they could sell their timeshare interest back to Holiday Inn at any point in time because they were military personnel.[24]

26. In November 2016, Mr. Smith signed a timeshare contract with the Defendants to buy a fixed week timeshare interest at the Orange Lake Country Villas in Kissimmee, Florida.[25]

27. In August 2017, Mr. Smith signed a second timeshare contract with the Defendants for a fixed week timeshare interest at the Cape Caribe Resort in Cape Canaveral, Florida. After Mr. Smith and Ms. Lingard used their timeshare, they were convinced by the Defendants to switch from their 2016/2017 fixed week timeshare to a contract that would provide 300,000 standard timeshare points (the "Points Program").[26]

28. From 2017 through 2021 Plaintiffs then:

- Purchased 50,000 Signature Points from Holiday Inn to give them access to timeshare luxury rooms
- Purchased another 50,000 points on August 2, 2019
- Entered into agreement on September 21, 2020, to purchase 425,000 points that included 300,000 points from their 2018 contracts which gave them access to premier Holiday Inn resort location

[23] Second Amended Compliant at paras. 25-27.
[24] Second Amended Compliant at para. 28.
[25] Second Amended Compliant at para. 29.
[26] Second Amended Compliant at paras. 32 and 33.

- Entered into an agreement in April 2021 to purchase 30,000 timeshare points to get access to Holiday Inn's Registry Collection.

29. In August 2021, Mr. Smith and Ms. Lingard took a family vacation to Galveston, Texas using their points. During a meeting there with a Holiday Inn representative they explained they could no longer afford their contracts and asked that Holiday Inn purchase their points back. Despite being repeatedly told that Holiday Inn would buy back their points at any point in time, their request was refused.[27]

30. The only option provided to them was to consolidate their 2018, 2019 and 2021 contracts for 130,000 points into one contract for 200,000 points and their maintenance fees would allegedly be reduced. Given this option, Mr. Smith and Ms. Lingard entered into a timeshare agreement to buy 200,000 points on August 10, 2021.[28]

31. The maintenance costs did not decrease and payments by Mr. Smith and Ms. Lingard were ceased.[29]

## III. OVERVIEW OF THE HABIBI REPORT

32. Mr. Habibi was retained by Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. counsel to the Defendants in this matter to:

- "*Provide an overview of the timeshare industry and trends in operations and ownership structures;*
- *Assess the development, sales, and operational practices of HICV—specifically, the forms of ownership interest offered for sale at various points in time, the transition to the structuring of timeshare interests as ownership in a land trust, and the use of points and*

[27] Second Amended Complaint at paras. 41 and 42.
[28] Second Amended Complaint at paras. 43 and 44.
[29] Second Amended Complaint at paras. 47 and 48.

*demand management in internal and external exchanges—in the context of industry custom and practice; and*

- *Evaluation of Plaintiffs' claims about their transactions with HICV, from both an industry custom and practice and an economic perspective, to assess whether their individual claims and the claims of proposed class members can be addressed using a common methodology*."[30]

33. His opinions are presented in paragraph 8 of his report and are as follows:

- **Habibi Opinion One***: "Plaintiffs and proposed class members acquired unique and variable timeshare interests in different structures with different use rights, different financing terms, and different financing disclosures before and during the Proposed Class Period."*
- **Habibi Opinion Two:** *"Plaintiffs have not identified a class-wide method for determining what caused any injuries to proposed class members."*
- **Habibi Opinion Three:** *"The remedies sought by Plaintiffs would require an individualized analysis of each proposed class member's respective purchase, interest, and use history."*

34. After presenting his opinions, Mr. Habibi concludes that:

"*Due to the substantial variation across putative class members, which is reflected both by evidence in the record and Plaintiffs' testimony, it is my opinion that there is not a reliable common approach which could be used to identify the process by which proposed class members collectively could have their transactions voided from inception, or to estimate the costs, benefits received damages suffered by proposed class members resulting from*

[30] Habibi Report at para. 7.

*the allegedly unlawful loan transactions. To reliably estimate damages to proposed class members, an individualized, case-by-case analysis would need to be undertaken*."[31]

## IV. SUMMARY OF OPINIONS

35. Based on my review and analysis, detailed in the remainder of my report, as well as my extensive experience in economic damages, I have determined that:

    a. In coming to his conclusion, Mr. Habibi has failed to consider relevant information that the Defendants have; and

    b. A common methodology can be used to estimate the offset due to Holiday Inn using the market approach to value Holiday Inn points.

## V. DETAILED SUPPORT FOR OPINIONS

### *A. Mr. Habibi Has Failed To Consider Information That Is Relevant To His Conclusion*

36. Despite Mr. Habibi's conclusion that each Class Members' offset calculation would have to be determined on a case-by-case basis, Holiday Inn should know the value of the underlying contracts they have with Holiday Inn point holders because:

    - Prior to entering into a contract with any Plaintiff, Holiday Inn likely assesses the profitability of the contract, this assessment cannot be made without knowing the value of a point; and

    - Similarly, when Holiday Inn is rolling over existing contracts into new contracts, Holiday Inn must be considering the value of a point to determine the value of the equity used in the new contracts.[32]

---

[31] Habibi Report at para. 75.
[32] Equity Transfer Acknowledgement Form of Mr. Smith dated September 21, 2020.

37. Mr. Habibi has failed to review any of Defendants' analysis that a company would typically do to assess its financial performance and operations when setting the price of points at the outset. This information can be used to determine Defendants' calculations (or projections) of the value of a Holiday Inn point.

38. Additionally, it is clear from the deposition testimony of Mr. Michael Gould ("Mr. Gould"), Senior Vice President of Revenue Management and Operational Planning for Holiday Inn Club, that Defendants do have relevant information to determine the value of Holiday Inn points for purposes of determining the offset, such as:

- Agreement(s) related to the conversion of Holiday Inn points to IHG points,[33]
- Holiday Inn point holders using points to book airfares through Arriva in lieu of cash,[34]
- Holiday Inn point holders using an Expedia subsidiary to rent cars with points in lieu of cash through the Global Exchange program,[35]
- The purchase price of additional points purchased to complete a reservation or transaction,[36]
- Holiday Inn point holders using points in lieu of cash to pay for annual maintenance fees,[37]
- Information about rental properties via their own systems including, but not limited to TimeShareWare[38] and Holiday Inn Club's "point currency" for its properties at Orange Lake and other various resorts.[39]

[33] Deposition of Mr. Michael Gould dated May 15, 2024 ("Gould Deposition") at p. 95.
[34] Gould Deposition at pp. 75-80.
[35] Gould Deposition at pp. 25-28.
[36] Gould Deposition at pp. 55-56. Mr. Gould refers to this as the renting of points as it is a one-time purchase of additional points to complete a reservation or transaction.
[37] HICVLINGARD017692 Reservations at 'Summary' tab column J.
[38] Gould Deposition at p. 50 and pp. 71-72.
[39] Gould Deposition at pp. 42-43 and 46-47.

39. Mr. Habibi failed to consider this aforementioned relevant information in coming to his conclusion, which, as I explain later in my report, can be used to estimate the value of Holiday Inn points and the offset due to Holiday Inn.

### *B. A Common Methodology Can Be Used To Estimate The Offset Due to Holiday Inn Using The Market Approach To Value Holiday Inn Points*

40. Mr. Habibi takes the position that there is no common approach to determine the offset for each Class Member.

41. When determining the value of a tangible or intangible asset, common and accepted valuation methodologies include: the income method, the cost method, and the market approach method.[40] Calculating an offset due to Holiday Inn for each Class Member is a function of the value of Holiday Inn points which can be determined using the following valuation approaches: the cost approach and the market approach.

#### i. The Cost Approach to Value Holiday Inn Points

42. The first approach I considered was the cost approach. The cost approach uses the cost of an asset to determine its value. For example, if the cost to buy a car is $30,000 then its value under the cost approach is $30,000.[41]

43. To value Holiday Inn points using the cost approach, you simply use the cost to purchase the points and the number of points being purchased. This information is available for each Plaintiff since they entered into purchase agreements with the Defendants that provide these details.

44. Counsel provided me information including, but not limited to loan documents including contracts, purchase agreements, mortgage information, and promissory notes, as well as,

---

[40] Litigation Services Handbook Sixth Edition: The Role of the Financial Expert at section 11.5.
[41] Litigation Services Handbook Sixth Edition: The Role of the Financial Expert at section 11.8.

payment information, point usage information, pertaining to the Plaintiffs and the following Class Members:

- Mr. Matthew & Ms. Angela Gayle,
- Mr. Bolin Belles,
- Mr. Brian & Ms. Lindsey Adams,
- Mr. Kevin & Ms. Myrtle Patterson, and
- Mr. Torrence Gilliam & Ms. Samantha Fidilio.

45. The table below details the transactions that the Plaintiffs and Class Members entered into with the Defendants.

| Table 1 - Summary of Plaintiffs and Class Member Transactions | | |
|---|---|---|
| **Name** | **Transaction Date** | **Points Purchased** |
| Matthew Gayle & Angela Gayle | 5/4/2019 | 50,000 |
| Sudarien Smith & Angelique Lingard | 9/21/2020 | 425,000 |
| Sudarien Smith & Angelique Lingard | 8/10/2021 | 200,000 |
| Bolin Belles | 8/11/2018 | 150,000 |
| Bolin Belles | 8/4/2019 | 50,000 |
| Brian Adams & Lindsey Adams | 12/23/2018 | 190,000 |
| Brian Adams & Lindsey Adams | 1/25/2019 | 275,000 |
| Brian Adams & Lindsey Adams | 4/19/2019 | 225,000 |
| Myrtle Patterson & Kevin Patterson | 8/13/2018 | 100,000 |
| Myrtle Patterson & Kevin Patterson | 4/21/2019 | 300,000 |
| Myrtle Patterson & Kevin Patterson | 12/28/2019 | 155,000 |
| Torrence Gilliam & Samantha Fidilio | 5/13/2019 | 125,000 |
| | | |
| **Sources:** | | |
| Purchase Agreements of Plaintiffs and Class Members | | |

46. The Plaintiffs and Class Members entered into loans with the Defendants to complete these aforementioned transactions. According to Ms. Heather Brandow ("Ms. Brandow"), a Vice President of Holiday Inn Club, the Defendants did not assess borrowers' income or their

ability to pay loans when offering loans[42] nor did they typically provide the amortization schedules of the loans to borrowers.[43]

47. I reviewed the transactions of the Plaintiffs and Class Members and calculated the price per point for each transaction using the cost method. Below I outline the analysis I conducted for a transaction between Mr. Matthew Gayle ("Mr. Gayle") and the Defendants.

48. Mr. Gayle entered into a purchase agreement on May 4th, 2019, with Holiday Inn Club. I reviewed the purchase agreement, promissory note, and other underlying documents related to this transaction. Pursuant to his purchase agreement, Mr. Gayle purchased 50,000 points for $7,500. Therefore, the price per point is $0.15 (i.e., $7,500/50,000).

49. I completed a similar calculation for the Plaintiffs and other Class Members and calculated the price for a Holiday Inn point for each respective transaction (see table below).

**Table 2 - Price Per Point**

| Name | Transaction Date | Points Purchased | Purchase Price | Price Per Point |
|---|---|---|---|---|
| Matthew Gayle & Angela Gayle | 5/4/2019 | 50,000 | $ 7,500 | $ 0.15 |
| Sudarien Smith & Angelique Lingard | 9/21/2020 | 425,000 | $ 83,545 | $ 0.20 |
| Sudarien Smith & Angelique Lingard | 8/10/2021 | 200,000 | $ 54,767 | $ 0.27 |
| Bolin Belles | 8/11/2018 | 150,000 | $ 29,550 | $ 0.20 |
| Bolin Belles | 8/4/2019 | 50,000 | $ 15,009 | $ 0.30 |
| Brian Adams & Lindsey Adams | 12/23/2018 | 190,000 | $ 43,700 | $ 0.23 |
| Brian Adams & Lindsey Adams | 1/25/2019 | 275,000 | $ 55,750 | $ 0.20 |
| Brian Adams & Lindsey Adams | 4/19/2019 | 225,000 | $ 37,738 | $ 0.17 |
| Myrtle Patterson & Kevin Patterson | 8/13/2018 | 100,000 | $ 21,400 | $ 0.21 |
| Myrtle Patterson & Kevin Patterson | 4/21/2019 | 300,000 | $ 47,990 | $ 0.16 |
| Myrtle Patterson & Kevin Patterson | 12/28/2019 | 155,000 | $ 25,033 | $ 0.16 |
| Torrence Gilliam & Samantha Fidilio | 5/13/2019 | 125,000 | $ 27,500 | $ 0.22 |
| | | | | |
| **Sources:** | | | | |
| Purchase Agreements of Plaintiffs and Class Members | | | | |

50. To assess the reasonableness of using the cost method to value Holiday Inn points, I considered:

[42] Deposition of Ms. Heather Brandow dated May 14, 2024 ("Brandow Deposition") at p. 90 and p.96.
[43] Brandow Deposition at pp. 182-185.

a. Mr. Gould's deposition testimony that the value of the points is different from the price paid for them given "*Those points can be used -- it's a lifetime of points. It's 50,000 points every year. You can stay at different properties. You can stay at different times of the year. You can stay in different units. You can use those points to go to exchange companies and stay in different resorts. You can use those points to, you know, purchase other travel products. You can use those points go through our IHG reward program if you're part of the Global Access program*."[44] Essentially, market observations exist that are be better indicators of value.

**ii. The Market Approach to Value Holiday Inn Points**

51. The second approach I considered was the market approach. The market approach uses analysis of market data on transactions or other relative value indicators that are comparable to the item or entity being valued.[45]

52. Typically, these types of points can be valued using the following market observations:

a. The purchase of points by the issuer,

b. The purchase of points in order to complete a transaction,

c. The sale of points in secondary markets, and

d. The redemption of points for items such as holiday stays, cruises, and car rentals etc. versus the cost of purchasing them.

*<u>The Purchase of Points By The Issuer</u>*

53. Ms. Brandow confirmed during her deposition that Holiday Inn Club does not purchase back points.[46]

---

[44] Gould Deposition at p. 41.
[45] Litigation Services Handbook Sixth Edition: The Role of the Financial Expert at section 11.7.
[46] Brandow Deposition at p. 30.

*The Purchase of Points In Order To Complete A Transaction*

54. According to Mr. Gould, Holiday Inn point holders can purchase additional points to complete a reservation or a transaction and explains that Holiday Inn point holders pay cash for additional points.[47] When asked who sets the purchase price for additional points, he states: "*They're set at inception of the program*."[48] Therefore, you could determine the value of Holiday Inn points using Holiday Inn's pricing schedule or calculate the value of Holiday Inn points by dividing the price to purchase additional points by the number of points purchased to complete a transaction.

*The Sale of Points in Secondary Markets*

55. According to the Holiday Inn Club purchase agreements, a purchaser "*warrants and represents…that purchase of the Interest is made for the Purchaser's personal use*".[49] Therefore, it is unclear if there would be a specific secondary market for the sale of Holiday Inn points.

56. However, Holiday Inn points can be converted to IHG points. Mr. Gould states:

> *"…We have an agreement that a member can transfer points from their HICV [Holiday Inn Club] account to – or their Global Access account to their IHG membership rewards account"*[50]

57. Mr. Gould goes on to explain that when Holiday Inn points are transferred to the IHG account, IHG bills Holiday Inn Club and that "*there's an established price per point*"[51] and that there is "*an agreement that's been established*" that details the price. He specifies that this agreement is an addendum to a master agreement between Holiday Inn Club and IHG.[52]

---

[47] Gould Deposition at pp. 55-56.
[48] Gould Deposition at p. 56.
[49] Purchase Agreement between Mr. Smith and Ms. Lingard and Holiday Inn Club dated September 21, 2020, at para. 32 of the Terms and Conditions.
[50] Gould Deposition at pp. 93-94.
[51] Gould Deposition at 95.
[52] *Id.*

While Mr. Gould explains that there is a transfer price per point, this is not a cash value but a conversion rate of Holiday Inn points to IHG points.

58. Importantly, once Holiday Inn points are converted to IHG points, these IHG points can be sold in secondary markets. Through Google searches I identified companies offering to purchase IHG points.[53] When using one of them, I received an offer to purchase 300,000 IHG points for $600 on May 22, 2024.[54] Using this market observation, an IHG point is being valued at $0.002 (i.e., $600/300,000 IHG points).[55]

59. In fact, IHG sells IHG points through its own website. Looking at the website there is an option to buy anywhere from 1,000 to 250,000 IHG points. If you buy 5,000 IHG points or more, you receive an additional 80% in bonus points (i.e., buy 5,000 points and receive 4,000 bonus points). A purchaser is able to buy 5,000 IHG points for $67.50 resulting in the value of an IHG point as $0.0135. As a purchaser buys more points, the points become cheaper as is the case with most products, as you buy more volume the price per unit decreases. In this case, a purchaser can buy 250,000 IHG points for $2,500 putting the value of an IHG point at $0.01.[56]

*<u>The Redemption of Points For Items Versus The Cost To Purchase Them</u>*

60. The Defendants themselves maintain information on the redemption of points for specific products and the monetary value of those products. Examples are listed below:

    a. Holiday Inn point holders have an option to book their airfares through a third-party vendor called "Arrivia". Holiday Inn point holders tell Arrivia where they want to travel, and the company will tell them how many points it costs to go there. Mr. Gould states that once the transfer of points occurs between the Holiday Inn point

---

[53] For examples see: https://milesbuyer.com/sell-miles/ihg-points/, https://www.topdollarpayouts.com/sell-ihg-points/, and https://storefront.points.com/IHG-rewards-club/en-US/buy.
[54] This particular purchaser required that a minimum of 300,000 IHG points be sold.
[55] Screenshots from https://milesbuyer.com/sell-miles/ihg-points/.
[56] Screenshots from https://storefront.points.com/IHG-rewards-club/en-US/buy.

holder and Arrivia in exchange for a ticket, Holiday Inn Club is sent an invoice by Arrivia for their services that includes the price of the airline ticket.[57] In fact, Ms. Myrtle Paterson used 450,000 points to book airfare.[58] Based on the data I reviewed, this was also just one among several instances of Holiday Inn Club point holders using their points to book air fare.[59] The value of a Holiday Inn point can be calculated as: the invoiced amount for the flight divided by the total number of points that the Holiday Inn point holder used. Mr. Gould goes on to state that point values are communicated to Holiday Inn point holders when they purchase items such as plane tickets.[60]

b. Similar to the rental airfare program, Holiday Inn point holders have the option to book rental cars through an exchange program that utilizes a third-party such as an Expedia subsidiary to book a car in exchange for Holiday Inn points.[61] For example, if the Expedia subsidiary charges Holiday Inn point holder 20,000 points for a 5-day rental car that typically costs $1,000, a cost of a point could be determined to be $0.05. As further evidence that this program is utilized, Ms. Myrtle Paterson, used 222,247 points to book a rental car.[62] This was also just one among several instances of Holiday Inn Club point holders using their points to book car rentals.[63]

c. Holiday Inn Club has allowed Holiday Inn point holders to use points to pay for the maintenance fees they owe. In one instance, a Holiday Inn Club point holder, Ms. Erykah Hightower used 65,000 points to pay for her maintenance fees.[64] As there must have been a receipt for this transaction detailing the total amount of

---

[57] Gould Deposition at pp. 77-78.
[58] HICVLINGARD028307 Reservations at 'Point Usage Summary' tab column H.
[59] *Id.*
[60] Gould Deposition at pp. 83-84.
[61] Gould Deposition at p. 28.
[62] HICVLINGARD028307 Reservations at 'Point Usage Summary' tab column J.
[63] *Id.*
[64] HICVLINGARD017692 Reservations at 'Summary' tab column J.

maintenance fees that were paid for with her 65,000 points, a value for the points could be determined by taking the value of the maintenance fees paid divided by the 65,000 points used.

e. Data from Defendant's property management system "TimeShareWare" that includes information on the number of points used by a Holiday Inn point holder for a week at a hotel as well as the cost to stay at the same hotel during the same week for the general public.[65] The price of a Holiday Inn point can be calculated as follows: the cost ($) to stay at the hotel divided by number of Holiday Inn points redeemed. In fact, Mr. Gould himself testifies that he cannot think of a better way to provide a dollar value.[66]

61. Given that Defendants have data on market observations to value Holiday Inn points, the market approach can be used to value Holiday Inn points and calculate the offset due to Holiday Inn in connection with points used by each Class Member. To the extent the specific documents and information I have referred to in paragraph 38 of my report become available subsequent to the filing of this report or any other relevant information, I respectfully reserve the right to supplement and/or amend this report on that basis, to conduct a market approach valuation of Holiday Inn points.

This report has been prepared on May 28, 2024 by:



Christopher Young

Partner, Resolution Economics, LLC.

[65] Gould Deposition at p. 50 and pp. 71-72.
[66] Gould Deposition at p. 75.

**Appendix A**

# Christopher Warren Young, Jr.

**Partner (New York, Los Angeles)**
**Resolution Economics**
cyoung@resecon.com
Phone: 347-522-0480

**Offices:**
*New York: 550 fifth Avenue, 6th Floor, New York, NY 10036*
*California: 1925 Century Park East, 15th Floor, Los Angeles, CA 90067*

## EDUCATION

| | |
|---|---|
| 2009 | Ph.D., Political Economics and International Finance, Division of Global Affairs, Rutgers University |
| 1999 | M.B.A., Finance, and Professional Accounting, Rutgers University |
| 1994 | B.F.A, Arts and Economics, Montclair State University – also attended M.A. Program in Economics |
| -- Present | M.A., Behavioral Economics, Harvard University – Extension School |

## ACADEMIC APPOINTMENTS

**Rutgers University**

| | |
|---|---|
| 2014-present | Associate Professor of Professional Practice, Rutgers Business School |
| 2017-present | Research Fellow, Rutgers Institute for Ethical Leadership |
| 2015-2019 | Associate Professor, NENU University / Rutgers University, Changchun, China |

**Seton Hall University**

| | |
|---|---|
| 2010-2014 | Visiting Assistant Professor, Stillman School of Business, and School of Diplomacy |
| 2002-2010 | Lecturer, Economics, Finance, and Legal Studies |

## COURSES TAUGHT

**Rutgers University**

Business Policy and Strategy
Business Ethics and Society, China
Business Ethics and Society
Strategic Management, MBA
Global Management, MBA
Business Ethics, MBA
Blockchain Technology and Business, Executive Education
Artificial Intelligence and Business, Executive Education

**Seton Hall University**

Microeconomics
Macroeconomics
Money and Banking

Corporate Finance, MBA
Economics, Pre-qualifying MBA course
Doing Business in Cuba
Global Economic Crises in the 20th Century
International Economics, MBA
International Political Economy, MA
Institutions of Global Governance
Advisor to the United Nations Mock Project in Philadelphia

**NON-ACADEMIC POSITIONS**

| | |
|---|---|
| 2018-present | Managing Member, Red Maple Economics |
| 2018-2019 | Head of Strategy, Proof Media, LLC |
| 2012-2018 | Principal, Valuation, Strategy, and Litigation Support, SobelCo. |
| 2010-2012 | Managing Director, Mergers and Acquisitions, Berkery Noyes |
| 2008-2010 | Global Director, Dow Jones/Wall Street Journal |
| 2002-2008 | Vice President, Finance, Strategy, M&A, Product Management, ThomsonReuters |
| 2000-2002 | Vice President, Private Equity, Comvest Ventures |
| 1998-2000 | Director, Venture Products, The CIT Group |
| 1995-1998 | Senior Consultant, Ernst & Young LLP |
| 1993-1995 | Founder, Results, Inc. |
| 2001-2005 | 411th Civil Affairs, Psychological Operations Command |
| 1990-1995 | 11th Special Forces Group, before deactivation |

**HONORS & RECOGNITIONS**

| | |
|---|---|
| 2023 | Thomas H. Mott Jr Award for Excellence in Teaching |
| 2023 | 91st Civil Affairs Battalion, Special Operations, Certificate of Appreciation |
| 2023 | Guru Vandana Ceremony, Rutgers Hindu Student Society (honoring 35 faculty and administrators) |
| 2022 | Guru Vandana Ceremony, Rutgers Hindu Student Society (honoring 35 faculty and administrators) |
| 2017 | Rutgers Women's Lacrosse, Excellence in Teaching Honor |
| 2016 | Thomas H. Mott Jr Award for Excellence in Teaching |
| 2008 | 5.0 Teaching Accommodation Award for a new course, Economic Crisis in 21st Century |
| 2008 | Teaching Accommodation Award |
| 2007 | Teaching Accommodation Award |
| 2006 | Teaching Accommodation Award |
| 2005 | Teaching Accommodation Award |
| 2004 | Teaching Accommodation Award |
| 2003 | Teaching Accommodation Award |
| 2002 | Teaching Accommodation Award |
| 2002 | Department of the Army, Army Achievement Award |
| 1992 | United States Army, 11 Special Forces, Certificate of Appreciation |

**UNIVERSITY SERVICE**

[1] Volunteered to assist a group of students attending and contributing to the UN Project (2015), Seton Hall University, School of Diplomacy
[2] Took a group of students to Cuba to learn about the business and economic climate of the country (2016), Seton Hall University, Stillman School of Business
[3] Served as Aspen Case Competition Advisor for the years 2015-2017, Rutgers University
[4] Advised two Rutgers Honor College students with undergraduate honors thesis, 2016, 2018
[5] Served as Student Advisor, Faculty Mentor, Rutgers School of Arts and Sciences, 2018-2023
[6] Served on recruiting committee for Rutgers Business School, Business Ethics Tenure Faculty Search Committee, 2017
[7] Served on recruiting committee for Rutgers Business School, Business Ethics Non-Tenure Faculty Search Committee, 2022-2023

**APPLIED RESEARCH IN LAW, ECONOMICS, AND ETHICS**

Since 2012, I have completed well over 500 applied research projects for lawyers, the court, public institutions, and quasi-government bodies. These projects include econometric analysis, cannibalization studies, economic damages, valuation of various assets, intellectual property damages in cross-border disputes, contract negotiations, international disputes, criminal white-collar investigations, fraud cases, misappropriation of trade secrets, class action lawsuits, employment disputes, product safety cases, discrimination, defamation, securities 10B-5 disputes, and other related projects.

**PUBLICATIONS**
**Peer-Reviewed Articles in Journals and Law Reviews**

[1] Young, Christopher W. and Robert Lenahan. "Adjusting for Size and Company-Specific Risk in Small Company Valuations. *Journal of Forensic Economics.* [forthcoming]

[2] Young, Christopher W. Re-evaluating Ethics and Justice from the Panopticon of Neuroscience and Free Will," *Journal of Law in Society.* [forthcoming]

[3] Young, Christopher W. and Luigi D'Onorio DeMeo. "Revisiting the S-Corporation Premium: Further Evidence," *Journal of Forensic Accounting Research, (2020).*

[4] Young, Christopher W. "Raising the Stakes: When a Working Shareholder Takes Your Clients," *UC Davis Journal of Business Law,* Volume 1, 70-86, (2020).

[5] Young Christopher W., and Janos James. "Incongruent Court Advice: Examining Fair Value and Fair Market Value Standards in Commercial Damages Cases Pursuant to Minority Claims," *Journal of Forensic Economics*, Volume 28, Issue 1-2, 197-209 (2019)

[6] Young, Christopher W. "Integrating Dividends, Interest and Value in Commercial Damage Cases: Toward a Comprehensive Methodology," *The Earnings Analyst*, Volume 15, 33-46 (2016)

[7] Young, Christopher W. and Wayne Eastman, "The Structural Failures of the Heavenly Markets," *Journal of Rationality and Society*, 41-89 (2013)

**BOOKS AND DISSERTATION**

[8] Young, Christopher W., Addie's Ascent: A Story of Hope (fiction), *Archway Publishing*, March 2023.

[9] Young, Christopher W., "Understanding the Fatality of God in Democratic Capitalist Societies," [Economic Approach to Religious Competition in the United States and Turkey, Doctoral Dissertation, ProQuest Dissertations and Theses (2009), https://rucore.libraries.rutgers.edu/rutgers-lib/28468/

**PUBLICATIONS IN PROCESS**

[10] Young, Christopher W., Benfatti, Coleton. "Shedding Light in the Valuation Dark Period and its Requirements". *[Out for review with the Journal of Legal Economics]*

[11] Young, Christopher W. "Freewill, Determinism and Providence." *[Out for review with Sophia]*

[12] Young, Christopher W., Smith, S, Rotthoff, K. "The Cannibalization of Lottery Gaming". *[Draft]*

[13] Young, Christopher W., Tucker, Michael D. "The Correlates of Right Wing Extremism".*[Out for review with Ethics Press]*

**PUBLISHED ART WORK**

[14] Friedman, F., Diamond, D. *Creation in Space*, Kendall Hunt Publishing.

**NEWS ARTICLES AND TRADE JOURNALS**

[15] "Moving Clients Forward – By Going Backward," New Jersey CPA Magazine (Publishing Date: August/September 2022)

[16] "The Trusted Strategic Accountant," New Jersey CPA Magazine (June 2022), https://njcpa.org/article/2022/06/07/the-trusted-strategic-accountant

[17] "The Enchanted Accountant: Three Ways to Become a Trusted and Strategic Advisor," New Jersey CPA Magazine, pp. 14-16 (July/August 2018), https://issuu.com/njscpa/docs/0718_njcpa_web

[18] "New Jersey - The Past and Foreseeable Future," New Jersey CPA Magazine, pp. 6-7 (March 2015) https://issuu.com/njscpa/docs/njcpa_mayjune15_lowres

[19] "Leading Us Out of Recession," Inside Business Journal, Volume Thirteen, Number Eleven, (Nov 2010) permanently archived.

[20] "Bringing Trust Back to the Free-Market," New Jersey News Room (Aug. 26, 2010) permanently archived

[21] "Keynes, Obama & the Future," New Jersey News Room (Jul. 30, 2010) permanently archived

[22] "Times of Uncertainty Not Helped by President Obama's Financial Reform Bill," New Jersey News Room, (Jul. 26, 2010) permanently archived

**ACADEMIC CONFERENCE PAPERS**

[23] Young, Christopher W., Lenahan, Robert. "Small Company Discount Rates: A New Solution", Western Economic Association, (July 2023)

[24] Young, Christopher W. "Shining Light on the Dark Period: Understanding Dark Period Valuations", Western Economic Association, virtual, (June, 2022)

[25] Young, Christopher W. "Shining Light on the Dark Period: Understanding Dark Period Valuations", Collegium for Pecuniary Damages Experts, Las Vegas, (April 2022)

[26] Young, Christopher W. "Revisiting Private Company Risk: A New Argument", NAFE Virtual Southern Economics Meeting, virtual (November 20, 2020)

[27] Young, Christopher W. "A Preliminary Examination into the Ethics of Race, Gender, and Abilities in Personal Injury and Wrongful Death Cases," National Association of Forensic Economics, Eastern Economic Association Annual Conference, Boston (February 25-28, 2020)

[28] Young, Christopher W. "Pareto Apologetics: The Beginning of a Professional Ethic," National Association of Forensic Economics, Southern Economic Association Annual Conference, Ft. Lauderdale (November 23-25, 2019)

[29] Young, Christopher W. "Pareto Apologetics: The Beginning of a Professional Ethic" National Association of Forensic Economics, Eastern Economic Association Annual Conference, Boston (March, 2019)

[30] Young, Christopher W. "Raising the Stakes: When a Working Shareholder Takes Your Clients," National Association of Forensic Economics, Eastern Economic Association Annual Conference, Boston (March 1- 4, 2018)

[31] Young, Christopher W, and Luigi D'Onorio DeMeo. "The Tokenization Economy: Valuing Digital Token Assets" National Association of Forensic Economics, American Economic Association Annual Conference, Philadelphia (January 6, 2018)

[32] Young, Christopher W, and James Janos. "Incongruent Court Advice: Examining Fair Value and Fair Market Value Standards in Commercial Damages Cases Pursuant to Minority Claims," American Economic Association Annual Meeting, Chicago (January 6-8, 2017)

[33] Young, Christopher W. "I Will Pay More for Voting Stock, Right? (Analysis of non-voting discounts), Western Economic Association Annual Meeting, Oregon (July 2, 2016)

[34] Young, Christopher W. "Integrating Dividends, Interest and Value in Commercial Damage Cases: Toward a Comprehensive Methodology", Western Economic Association Annual Meeting, Honolulu (June 29, 2015)

[35] Young, Christopher W. "Pitfalls in Valuation," a presentation at the Allied Social Sciences Association Conference in San Francisco, California (January 3-5, 2015)

[36] Young, Christopher W. "Religion and Earnings," Eastern Economic Association Annual Conference, Boston (March 6-9, 2015)

[37] Young, Christopher W. "Lemons, Cherries and Church," a paper presented at the 2011 ASREC Annual Conference, Arlington, VA (April 7-10, 2011)

[38] Young, Christopher W. "The Economics of Culture, Understanding Supply and Demand Studies," 2008 International Studies Association, Peer Reviewed Annual Conference, Paper Presentation, San Francisco (January 8-11, 2008)

[39] Young, Christopher W., Geoffrey Pigman, and Anthony Deos, "The Disintermediation of Diplomatic Communication: Propaganda, Lobbying, and Public Diplomacy," 2006 International Studies Association, Paper Presentation, San Diego (March 22-25, 2006)

[40] "The Unholy Paradox," 2006 International Studies Association, Paper Presentation, San Diego (March 22-25, 2006)

**OTHER CONFERENCE ACTIVITIES**

[41] Conference Chair. Southern Economic Association, National Association of Forensic Economics Meeting, June 2022.

[42] Discussant for paper: Economic Damages in Price Fixing Cases: A Difference-in-Difference Estimation Approach, by Scott Dale Gilbert, American Economic Association Annual Conference, San Diego (January 3-5, 2020)

[43] Discussant for paper: Estimating the 'Quantify Effect' in a Lost Profits Case: An Econometric Approach, by Dr. Frank Adams, Southern Economic Association Annual Conference, Ft. Lauderdale (November 23-25, 2019)

[44] Discussant for paper: Applying a Blockage Discount to Determine the Value of Stock-Based Compensation for Thinly Traded Stocks, by Dr. Roman Garagulagian, Southern Economic Association Annual Conference, Ft. Lauderdale (November 23-25, 2019)

[45] Discussant for paper: A Markov Model of the Impact of Recidivism on Worklife Expectancy using Criminal Backgrounds, by Dr. Michael Nieswiadomy, Western Economic Association Annual Conference, San Francisco (June 28-July 2, 2019)

[46] Discussant for paper: Stock Options in Wrongful Termination Cases, Joseph Goldberg, Eastern Economic Association, Washington DC (February 28 - March, 1 2016)

[47] Discussant for paper: Tax Gross Ups for Multiple Years by Dr. Michael Nieswiadomy, University of North Texas, Western Economics Association, Honolulu (June 28-July 2, 2015)

[48] Discussant for paper: Disputed Valuation: Recent Case Examples - Valuing Assets and Companies in Emerging Markets, by Oksana Kitaychik, NERA, Eastern Economic Association Annual Meeting, New York (March 1-5, 2015)

[49] Discussant for paper: The Rule of 70, by Dr. Larry Spizman, NAFE Session, American Economic Association Annual Meeting, Boston (January 3-5, 2015)

[50] Discussant for paper: Economic Foundation of Damages in Personal Injury and Wrongful Death Law, by Dr. Scott Gilbert, NAFE Session, American Economic Association (January 3-5, 2015)

[51] Discussant for panel: Ideology in Economics, 2011 ASREC Annual Conference, Arlington, VA (April 7-10, 2011)

[52] Discussant for panel: "Reason and Economics," 2008 International Studies Association, Peer Reviewed Annual Conference, Paper Presentation, San Francisco (January 8-11, 2008)

[53] "The Corporation as Social Actor," paper presented to undergraduate students and Bennington College, sponsored by Bennington College, Bennington, VT (May, 2007)

**PROFESSIONAL TALKS**

[54] The Mark Conference, Rutgers University, April 2023

[55] Rutgers TEDx, "Fear at Your Own Risk," (February 22, 2020), https://www.youtube.com/watch?v=KPY7yZxvcB0

[56] Business Valuation, Part 2, CSG, (March 26, 2021)

[57] Raising the States: Understanding Predatory Restricted Covenant Behavior CLE, Einhorn Harris, (April 23, 2021)

[58] Raising the States: Understanding Predatory Restricted Covenant Behavior CLE, Weiner Law Group, (February 23, 2021)

[59] Commercial Damages, Part 2, Riker Danzig, (February 9, 2022)

[60] The Top 10 Valuation Mistakes, CLE, Connell Foley, (January 19, 2021)

[61] Business Valuation, Part 2, CLE, Calcagni and Kanefski, (January 12, 2021)

[62] Commercial Damages: A Case Study, Red Maple Online CLE, (April 2021)
7

[63] Commercial Damages CLE, Genova Burns, (November 19, 2019)

[64] FV v. FMV in Litigation CLE, Weiner Law Group, (November 13, 2019)

[65] Raising the States: Understanding Predatory Restricted Covenant Behavior CLE, Greenbaum Rowe, (November 5, 2019)

[66] The Price is Right: An Introductory Look at Business Valuation for Attorneys CLE, Mercer County Bar Association, (October 17, 2019)

[67] Business Valuation 101, Continuing Legal Education, Riker Danzig Law Firm, (July 25, 2109).

[68] Personal Injury & Damages Continuing Legal Education Class at Weiner Law Group, Parsippany, NJ (July 17, 2019)

[69] Personal Injury & Damages Continuing Legal Education Class at Mandelbaum Salsberg, Roseland, NJ (July 16, 2019)

[70] Commercial Damages 101: A Case Study presented at Greenbaum Rowe Smith & Davis, New York, NY (May 21, 2019)

[71] Valuation 101: A Case Study, Continuing Legal Education Class at Townsend, Tomaio & Newmark, Whippany, NJ (April 6, 2019)

[72] Raising the Stakes Presentation presented at Mandelbaum Salsberg, Roseland, NJ (April 17, 2019)

[73] Making Ethical Decision, talk given at Comcast/NBCUniversal to a group of executive and entrepreneurs, New York, NY, (August 2017)

[74] Understanding Fair Market vs. Fair Value in Litigation presented at Riker Danzig, Morristown, (June 13, 2017)

[75] Breaking Up Is Hard To Do: Business Divorce co-presented with Alan Pralgever, Litigators Roundtable, Sobel&Co, Livingston, NJ (April 20, 2017)

[76] Commercial Damages 101: A Case Study presented at Mandelbaum Salsberg, Roseland, NJ (May 4, 2017)

[77] Commercial Damages 101: A Case Study presented at Porzio Bromberg and Newman, Morristown, NJ (April 18, 2017)

[78] Valuation 101: A Case Study at Sobel & Co. Continuing Legal Class, Livingston, NJ (April 6, 2017)

[79] The Top 10 Valuation Mistakes presented at Norris, McLaughlin & Marcus, Bridgewater, NJ (March 16, 2017)

[80] Commercial Damages 101: A Case Study presented at Chiesa, Shahinian & Giantomasi February 21, West Orange, NJ (September 2017)

[81] Understanding Fair Market vs. Fair Value in Litigation: presented at Mandelbaum Salsberg, Roseland, NJ (February 16, 2017)

[82] Understanding Fair Market vs. Fair Value in Litigation: presented Sobel & Co. LLC, Livingston, NJ (February 7, 2017)

[83] Understanding Fair Market vs. Fair Value in Litigation presented to the Bergen County Bar Association, (January 26, 2017)

[84] 2016 Economic Outlook, presentation to 50 executives at Sobel&Co, Livingston, NJ (February 2016)

[85] The Top 10 Mistakes in Business Valuation, presentation to Hoagland Longo, New Brunswick, NJ, (December 9, 2015)

[86] Valuation 101: presentation to Riker Danzig, Morristown, NJ (October 26, 2015).

[87] The Top 10 Mistakes in Business Valuation, presentation to Porzio, Bromberg, Morristown, NJ (September 9, 2015)

[88] Valuation 101: Sobel & Co., Litigators Roundtable, Livingston, NJ (February 2015)

[89] Valuation 101: Townsend, Tomaio Law Firm – Morristown (April 2015)

[90] Valuation 201: Townsend , Tomaio Law Firm – Morristown (July 14, 2015)

[91] Commercial Damages 101: Sobel & Co., Breakfast Discussion (March 2015)

[92] Intellectual Property Damages: Association for Corporate Growth, Members Forum (February 2015)

[93] Common Valuation Mistakes: Sobel & Co., Litigators Roundtable, Livingston, NJ (January 2015)

[94] Invited Speaker at Sobel & Co., Litigators Roundtable, Livingston, NJ (September 11, 2014)

[95] Invited Speaker at the Financial Trading Architecture Summit (High Frequency Trading), New York City, NY (April 2011)

[96] Speaker at the Annual Investorside Conference, New York City, NY (Apr. 2011)

[97] Speaker at the SIFMA, Private Client Conference, New York, NY (May 2011)

[98] Wall Street Journal, Vertically migrating financial news into a full service financial information services provider, New York, NY (Winter 2009)

[99] Thomson Healthcare, Senior Executive Conference: 2008 Exploiting Social Media as a Mechanism for Pharmaceutical Messaging, Understanding the Challenges, the Opportunities and the Regulations, New York, NY (June 2008)

[100] Thomson Financial Executive Committee: Exploiting Digital File Sharing as Next Generation Investment Banking Due Diligence Rooms, New York (Winter 2007)

[101] Thomson Financial Executive Committee: How to Monetize People and Customer Profile Data, Building the Next Generation Key Opinion Leader Database, New York, NY (Fall 2007)

**EDITORIAL AND PUBLICATION COMMITTEES**

| | |
|---|---|
| 2023-present | Associate Editor, Journal of Forensic Accounting Research, American Accounting Association |
| 2022-present | Editorial Review Board and Publications Committee, American Accounting Association |
| 2014-present | Editorial Review Board, Journal of Leadership and Management |
| 2022-present | Special Editor, Economic Damages in Commercial Cases, Journal of Forensic Economics |
| 2014-present | Editorial Reviewer (ad hoc), Journal of Forensic Economics |
| 2014-present | Editorial Reviewer (ad hoc), Journal of Religion and Business Ethics |
| 2020 | Editorial Reviewer (ad hoc), Rutgers Business Review |
| 2014 | Editorial Reviewer (ad hoc), Routledge Publishing |
| 2017-2019 | Editorial Reviewer (ad hoc), Journal of Business Ethics |

**MEDIA**

[1] Did You Know That? (Feature with Christopher Young) March 19, 2021
[2] Tech on Medium, Crowdsourcing Credibility with Proof and UProof, Christopher Young, January 14, 2020
[3] Tennessean, Part of the USA Network "There may be an ethical violation here, I want to be very care what we may say", February 8, 2018.
[4] Bergen Record (discussed the role of Cuba in the US Economy), February 25, 2015
[5] WWOR Radio (discussant about BlackFriday), November 26, 2013
[6] Providence Journal, quoted in the article, "American Dream is in Danger," Apr. 2012
[7] Inside Market Data, quoted in the article, "Research M&A, Helps Clients," Jan. 2011
[8] The Star Ledger, quoted in the article, "There's No Simple Solution to Job Creation," Sept. 15, 2011

[9] Newsweek (interview regarding the recent insider trading scandal), Nov. 2010
[10] Channel 9 News (radio discussant Financial Crisis), Oct. 2008
[11] Stu Taylor Radio Show (radio discussant – TARP), Nov. 2008
[12] New Jersey Now, WWOR (television discussant – TARP), Nov. 2008
[13] Seton Hall University (discussant about the Obama Economic Plan), Dec. 2008
[14] One-on-One with Steve Adubato (television discussant on Obama Economic Plan, TARP), Dec. 2008
[15] Stu Taylor Radio Show (Discussant – Stimulus Bill), Feb. 2009 1. National Association of Forensic Economics

**ACADEMIC AND PROFESSIONAL MEMBERSHIP AND AFFILIATIONS**

[1] American Accounting Association
[2] Society of Business Ethics
[3] National Association of Certified Valuators and Analysts
[4] American Economic Association
[5] Eastern Economic Association
[6] Western Economic Association
[7] Southern Economic Association
[8] National Association of Forensic Economics
  (a)NAFE, board election committee chair (July 2019)
  (b)NAFE, board election committee (July 2018)
  (c)Vice President, Eastern Region, The National Association of Forensic Economics (January 2017 to December 31, 2019)
  (d)Eastern Economic Association, Annual Conference Coordinator (2017, 2018, and 2019)
[9] Morris Arts, Board of Trustees (2019-2021)
[10] Supreme Court of New Jersey, Office of Attorney Ethics, Fee Arbitration Committee, (September 1, 2015 – August 31, 2018)

**CERTIFICATIONS**

[1] Certified Valuation Analyst (CVA) - National Association of Certified Valuators
[2] Master Analyst in Forensic Finance (MAFF) - National Association of Certified Valuators and Analysts

**Appendix B**

# Christopher Warren Young, Jr.

**Partner (New York, Los Angeles)**
**Resolution Economics**
cyoung@resecon.com
Phone: 347-522-0480

**Offices:**
*New York: 550 fifth Avenue, 6th Floor, New York, NY 10036*
*California: 1925 Century Park East, 15th Floor, Los Angeles, CA 90067*

**EXPERT TESTIMONY – MATTERS RELATED TO ECONOMICS AND ETHICS**

[1] Deposition: Shai Carr v. County of Essex, Armando B. Fountoura, John Goncalves, Jacqueline Jones.
Case: Violation of First Amendment, Violation of Civil Rights Act, Violation of 14th Amendment, Violation of 2 U.S.C. 1983.
Date: December 12, 2023
Trier of Fact: United District Court for the District of New Jersey

[2] Deposition: Jennifer Witte v. Dolese; Dolese Bros. Co.: and HDI, SE, International Insurance Company of Hanover SE.
Case: Breach of Contract, Negligence, Wrongful Death
Date: June 22, 2023
Trier of Fact: District Court of Cleveland County, State of Oklahoma

[3] Trial: Jennifer Witte v. Dolese; Dolese Bros. Co.: and HDI, SE, International Insurance Company of Hanover SE.
Case: Breach of Contract, Negligence, Wrongful Death
Date: November 6, 2023.
Trier of Fact: District Court of Cleveland County, State of Oklahoma

[4] Deposition: Silverleaf Advisors, LLC v. Milo Seidl, Michelle Seidl, JDL Surface Solutions, Inc. Duane Lopez
Case: Breach of Contract, Restrictive Covenants
Date: October 23, 2023
Trier of Fact: Arbitration: Doyle Conflict Resolution

[5] Deposition: Torrey Mitchell Sr. v. Gutierrez Trucking
Case: Property Damage
Date: August 8, 2023
Trier of Fact:

[6] Deposition: 18W v. Mepco
Case: Breach of Contract, Shareholder Oppression, Unjust Enrichment
Date: November 11, 2023
Trier of Fact: United States District Court, District of New Jersey

[7] Deposition: Levonia v. Macy's
Case: Wrongful Termination
Date: August 12, 2023
Trier of Fact: Superior Court of the State of California, for the County of Los Angeles

[8] Deposition: Epworth Villa Litigation Trust v. Homeland Insurance Company, Holden P.C, Steven E. Holden
Case: Breach of Fiduciary Duty and Good Faith, Breach of Contract, Legal Malpractice, Punitive Damages
Date: July 18, 2023
Client: White & Weddle
Tier-of-Fact: District Court of Oklahoma County, State of Oklahoma

[9] Deposition: KLM Group, LP, Royal Mfg Co, Lp, Rivercrest LLC v. Axel Royal LLC v. Kari L. Harris 2000 Irrevocable Trust, Kristi L. Kincheloe 2000 Irrevocable Trust, William R. Mallory, Jr and James Gott
Case: M&A, breach of contract
Date: July 8, 2023
Client: White & Weddle
Tier-of-Fact: District Court of Tulsa County, State of Oklahoma

[10] Arbitration: Keith Diamond, Marisa Diamond, Diamond Irrevocable Gifting Trust v. Charles Bobroski, Warren Beckom, Pulsar Microwave Corporation, Michael Chilimintris, Sigatek Limited Liability Company
Case: Breach of Fiduciary, Shareholder Oppression
Date: May 4, and 5, 2023
Client: Cole Schotz
Trier of Fact: AAA Arbitration

[11] Trial: Timothy Woods and Susan Woods Deligans v. Dr. Pepper Snapple Group, et al
Case: Injury Case – Valuation of Dental Practice and Loss of Income
Date: August 25, 2021
Client: Durbin, Larimore & Bialicj
Trier of Fact: US District Court for the Western District of Oklahoma

[12] Deposition: Diaz Mata, et al. v. Newhall Unified School District, et al.
Case: Dangerous Condition of Public Policy, Negligence
Date: January 2023
Client: Collins + Collins, McCuneHarber
Trier-of-Fact: Superior Court of the State of California, County of Los Angeles

[13] Arbitration: Santamaria v. River Rock Bar & Grill, Inc., et al.
Case: Wrongful Termination, Shareholder Oppression
Date: November 2023
Client: Cole Shotz
Tier-of-Fact: American Arbitration Association

[14] Deposition: Traeger Class Action (Yates, Jones v. Traeger Pellet Grills, LLC)
Case: Consumer Fraud, and Deception – Class Action)
Date: August 2022
Client: Kronenberg Rosenfeld, LLP
Tier-of-Fact: United States, District Court, District of Utah

[15] Trial: Dr. Eric Frank v Seindner Dentistry and Associates, P.C., Roxbury Orthodontics and Bruce Seidner.
Case: Breach of Contract, Breach of Good Faith and Fair Dealing
Date: August 25, 2022
Client: Callagy Law
Trier-of-Fact: Superior Court of New Jersey, Union County, NJ

[16] Arbitration: National Distribution Alliance, LLC v. A.M. Newspaper, Roy Newman, et al.
Case: Breach of covenant, breach of fiduciary duty, and fourth claim for relief
Date: August 25, 2022
Client: Tannenbaum Helpern Syracuse & Hirschtritt LLP
Trier-of-Fact: American Arbitration Association, Commercial Dispute

[17] Trial: Valliance Bank v Derek Mask
Case: Fraud, Lending Malpractice
Date: June 2, 2022
Client: Durbin Larimore & Bialick and Corbin Law
Trier-of-Fact: District Court of Cleveland County, State of Oklahoma

[18] Deposition: Valliance Bank v Derek Mask
Case: Fraud, Lending Malpractice
Date: April 7, 2022
Client: Durbin Larimore & Bialick and Corbin Law
Trier-of-Fact: District Court of Cleveland County, State of Oklahoma

[19] Arbitration Tribunal: Strike PCH, LLC v. Isaac Stern, Jeffrey Reece, David Glass, Chang Jin Kim, and Pinnex Capital Holdings LLC. ▪ Case: Fraud
Case: Fraud
Date: July 2022
Client: Calcagny Kanefski
Trier-of-Fact: Superior Court of New Jersey Chancery Division, Union County

[20] Deposition: Michael Yates, et al. v. Traeger Pellet Grills, LLC
Case: Class Action Consumer Fraud
Date: February 3, 2022
Client: Kronenberg Rosenfeld, LLP
Trier of Fact: United States District Court for the District of Utah, Central Division

[21] Deposition: Michael Yates, et al. v. Traeger Pellet Grills, LLC
Case: Class Action Consumer Fraud
Date: July 13, 2022
Client: Kronenberg Rosenfeld, LLP
Trier of Fact: United States District Court for the District of Utah, Central Division

[22] Deposition: Michael C. Berman v. John Canavari and 900 Degrees
Case: Fraud, breach of contract, misappropriation of assets
Date: March 10, 2022
Client: Lebensfeld, Sharon & Schwartz P.C.
Trier of Fact: Superior Court of New Jersey, Law Division: Morris County.

[23] Deposition: Keith McDade v. Klmdh Inc.
Case: Breach of contract, shareholder oppression, breach of restrictive covenant
Date: July 7, 2021
Client: Varcadipane & Pinnisi, PC
Trier of Fact: Superior Court of New Jersey Law Division: Essex County

[24] Trial: Frank Callahan, Callahan Lawyer Service Inc and 47 Washington Lodi, Inc. v. Danny Callahan
Case: Fraud, shareholder oppression, tortious interference
Date: July 19, 2021
Client: Frank T. Luciano, Esq.
Trier of Fact: Superior Court of New Jersey, Bergen County Chancery Division

[25] Deposition: Timothy Woods and Susan Woods Deligans v. Dr. Pepper Snapple Group, et al

Case: Injury Case – Valuation of Dental Practice and Loss of Income
Date: August 25, 2021
Client: Durbin, Larimore & Bialicj
Trier of Fact: US District Court for the Western District of Oklahoma

[26] Deposition: Stanislav Royzenshteyn ("Royzenshteyn") and Roman Gerashenko (collectively, "Plaintiffs" or "Clients") individually and derivatively on behalf of Onyx Enterprises Int'l Corp. ("Onyx") v. Defendants Prashant Pathak ("Pathak"), Carey Kurtin ("Kurtin"), J. William Kurtin ("W. Kurtin"), Ekagrata Inc. ("Ekagrata"), In Colour Capital, Inc. ("ICC"), Onyx Enterprises Canada, Inc. ("OEC") and Ekagrata Inc. ("Ekagrata") (collectively, "Defendants"), Docket No. MON-C-45-18 (the "Onyx Lawsuit")
Case: Fraud, employment contract, securities violation, bankruptcy
Date: Q2 2021
Client: Calcagni&Kanefsky
Trier of Fact: Superior Court of New Jersey, Chancery Division, Monmouth County.

[27] Deposition: NuMSP v. David St. Etienne
Case: Breach of contract, fraud, misrepresentation
Date: Q2 2021
Client: Aguilar Bentley LLC
Trier of Fact: American Arbitration Association

[28] Deposition: Lyons v. Qdoba Franchise.
Case: Breach of contract, fraud, misrepresentation
Date: December 10, 2020
Client: Carl Louis Peer
Trier of Fact: United States District Court for the District of New Jersey

[29] Trial: Verbeke v. Kessler.
Case: Valuation and the Dissolution of ThreeCube3, a marital asset (representing the petitioner)
Date: August 26, and 27, 2020 (virtual)
Client: Provident Law, PLLC
Trier of Fact: Superior Court, State of Arizona

[30] Deposition: Stanislav Royzenshteyn and Roman Gerashenko v. Prashant Pathak, Carey Kurtin, Ekagrata, Inc., Onyx Enterprises Canada Inc., Onyx Enterprises Int'l, Corp., In Colour Capital, Inc. and J. William Kurtin
Case: Breach of Fiduciary Duty, Fraud, Violation of 15 U.S.C 78j and 17 C.F.R. 240.110b-5, Negligent Misrepresentation, Diversion of Corporate Opportunity, Breach of Implied Faith and Fair Dealing, Tortious Interference, Shareholder Oppression, Conspiracy
Date: June 4, 2020 (virtual)
Client: Calcagni, Kanefsky & Kanefsky (representing the Plaintiff)

[31] Arbitration: Auctus Restaurant Group, Inc. and Klayrock, LLC v. Golden Krust Franchising, Inc. d/b/a Golden Krust Caribbean Bakery & Grill
Case: Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Violation of Florida Franchise Act, Tortious Interference with Business Relationship, Violation of New York's Deceptive and Unfair Trade Practices Act, Federal Price Discrimination
Date: June 12, 2020
Client: Greenberg Traurig (representing the respondent)
Trier of Fact: American Arbitration Association, Commercial Dispute

[32] Deposition: Q of Hasbrouck Heights, LLC v. Qdoba Restaurant Corporation
Case: Breach of Fiduciary Duties, Breach of Contract, Violation of Franchise Law
Date: January 14, 2020

Client: Q of Hasbrouck Heights, LLC via Carl Peer, Esq.

[33] Arbitration: Golden Krust Franchising, Inc., v. Keith Clayborne, Bernadette Clayborne, Golden Krust #6, LLC, and Golden Krust #7, LLC, and 7 "K" Corp
Case: Breach of Fiduciary Duties
Date: October 9, 2019
Client: Greenberg Traurig (representing the claimant)
Trier of Fact: American Arbitration Association, Commercial Dispute

[34] Arbitration: RDSL Urban NY LLC v. Interstate Transit Media, LLC
Case: Breach of Contract
Date: June 26, 2019
Client: Aguilar Bentley, Esq. (representing the complainant)
Ethics of Pricing in a non-transparent contract, fee dispute
Trier of Fact: American Arbitration Association, Commercial Dispute

[35] Arbitration: Donald Julich, Jr. v. David Julich, Richard Julich, and Crown Fish Company
Case: Declaratory Judgement, Buyout of Donald's Ownership Interest [Shareholder Oppression]
Date: June 11, 2019
Client: Callagy Law (representing the complainant)
Ability-to-Pay Analysis Hearing
Trier of Fact: American Arbitration Association, Commercial Dispute

[36] Deposition: Robert B. Johnson, Trustee, et al. v. Gibbs Wire & Steel Company, Inc
Case: Multiple, Shareholder Oppression, Fraud (underlying legal malpractice case)
Date: December, 2018
Client: Berman and Sable LLC (representing the plaintiff)
Court: Superior Court, Judicial District of Stamford CT, Complex Litigation Docket

[37] Arbitration: QPharma, Inc. and Patrick Den Boer v. Sela2, Inc. d/b/a Skila, Inc. QForma, Inc., Skila Holdings, Inc., and Belhealth Investment Partners, Inc
Case: Fraud, Fraudulent Inducement
Date: September 2018
Client: Riker Danzig Scherer Hyland & Perretti LLP (representing the claimant)
Trier of Fact: American Arbitration Association, Commercial Dispute

[38] Deposition: Cook Moran & Associates, Inc. v. Brian Scrocca and Alliant Insurance Services, Inc.
Case: Breach of Contract, Conversion, Unjust Enrichment
Date: August 2018
Client: Cole Shotz, LLP (representing the plaintiff)
Court: Superior Court of New Jersey, Bergen County Division

[39] Deposition: Kenneth Pasternak v. Adam Mermelstein, et al
Case: Fraud, Breach of Duty of Loyalty and Fiduciary Duty, Unfair Competition, Theft of Trade Secrets,
Date: March 2018
Client: Calcagni & Kanefsky, LLP (representing the plaintiff)
Court: Superior Court of New Jersey, Bergen County Division

[40] Deposition: Eric Inselberg, et al. v. New York Football Giants, Inc., et al.
Case: Fraud
Date: December 22, 2017
Client: Clinton, Brook and Peed Law Firm (representing the plaintiff)
Court: Superior Superior Court of New Jersey, Bergen County Division

[41] Deposition: Robert B. Johnson, Trustee, et al. v. Gibbs Wire & Steel Company, Inc.
Case: Multiple, Shareholder Oppression, Fraud (underlying legal malpractice case)

Date: October 20, 2017
Client: Berman and Sable LLC (representing the plaintiff)
Court: Superior Court, Judicial District of Stamford CT, Complex Litigation Docket.

[42] Arbitration: Donald Julich, Jr. v. David Julich, Richard Julich, and Crown Fish Company
Case: Declaratory Judgement, Buyout of Donald's Ownership Interest [Shareholder Oppression]
Date: October 11 to October 13
Client: Genova Burns
Confidential Arbitration before Hon. Thomas P. Olivieri (Ret.)

[43] Deposition: 365 Warranty v. TMI Solutions Inc
Case: Breach of Contract, Tort Claims
Date: August, 2017
Client: Reiter Law Firm (representing the plaintiff)
Court: Superior Court of New Jersey, Middlesex County Chancery Division

[44] Deposition: Intelliquit v. Bedfont Scientific LTD
Case: Misappropriation of Property, Tort Claims
Date: June 2017
Client: Intelliquit (representing the plaintiff)
Court: Superior Court of New Jersey Law Division: Bergen County

[45] Deposition: RPC v Gilligan
Case: Breach of Contract Date
Date: November 23, 2016
Client: Johnson & Johnson (representing the defendant)
Court: Superior Court of New Jersey Law Division: Morris County

[46] Trial: Blinds To Go (US) v. Times Plaza Development., LP.
Case: Breach of Contract
Date: August 4, 2016
Client: Law Offices of Kenneth Glassman (representing the defendant)
Court: Appellate Division, Supreme Court, Kings County, New York

[47] Trial: Blinds To Go (US) v. Times Plaza Development., LP.
Case: Breach of Contract
Date: June 8, 2016
Client: Law Offices of Kenneth Glassman (representing the defendant)
Court: Appellate Division, Supreme Court, Kings County, New York

[48] Arbitration: Martin J. Carroll, Jr., Combined Computer Resources, Inc., MTLM Management Corp.
V. Thomas Wishney and Laura Palamar. ▪ Case: Breach of Fiduciary Duties, Tortious Interference
Date: May 25, 2016
Client: Jones, Wolf & Kapasi (representing the defendant)
Court: Superior Court of New Jersey Law Division: Middlesex County

[49] Trial: Wichansky v. Zowine ▪ Case: Breach of Fiduciary Duty, Retaliation of Fraudulent Billing Claim, Computer Fraud
Date: April 2016 (2 days of testimony)
Client: Callagy Law (representing the plaintiff)
Court: United States District Court, 9th District, Arizona

[50] Deposition: Wichansky v. Zowine ▪ Case: Breach of Fiduciary Duty, Retaliation of Fraudulent Billing Claim, Computer Fraud
Date: September 2015
Client: Callagy Law (representing the plaintiff)

Court: United States District Court, 9th District, Arizona

[51] Deposition: Aviation Training Consultants v. Sikorsky (Lockheed Martin and United Technologies) ▪ Case: Breach of Joint Venture
Date: August 2015
Client: Durbin, Larimore, and Bialick (representing the plaintiff)
Court: Jackson County

[52] Deposition: Uflex v. PIM ▪ Case: Breach of Contract
Date: August 2015
Client: Porzio, Bromberg & Newman (representing the defendant)

[53] Trial: Velox Corporation ▪ Case: Misappropriation of Intellectual Property
Date: July 2015
Client: K+L Gates (representing the plaintiff)
Court: Superior Court of New Jersey, Law Division, Morris County

[54] Trial: Kamal Srahin v. ADM Management, Inc ▪ Case: Fraud, Tortious Interference, Breach of Contract
Date: June 2015
Client: Law Offices of Richard Vrhovc (representing the defendant)
Court: Superior Court of New Jersey, Essex County

[55] Deposition: Gonzalo Chirino, et al. v. Proud 2 Haul, Inc., and Ivana Koprowski ▪ Case: Breach of Contract, Breach of Fiduciary Duty
Date: February 26, 2015
Client: Garrubo & Capece (representing the defendant)
Court: Superior Court of New Jersey Law Division: Hudson County

[56] Trial: George Prussin and The Law Funder, L.L.C. v Matthew R. Sheldon, Esq., Matthew R. Sheldon, Esq., Rory Donadio a/k/a James R. Donadio, Montclair Financial Group, Inc., MontclairFunding, Corp., Montclair Funding Group, LLC, Ryan Jeffreys, Lawsuit Capital Advisors, L.L.C., Lawsuit Funding, L.L.C., Lawsuit Capital, Management, L.L.C., Lawsuit Capital Funding, L.L.C., Solutions Corp., Scott Villanueva, Esq., Nelson Slosbergas, Esq., Bradley Braun, Gregory, Krasovsky, Esq., The Law Offices of Raul J., Sloezen and Gregory Krasovsky, Joan Gordon, Catherine Donadio, Jessica Escobar a/k/a Ana Garza a/k/a Lisa Cantu, David Solomon, Law Capital Enterprises, John Does 1-100 (fictitious names), ABC, L.L.C. 1-25 (fictitious names), and XYZ Corp. 1-25 (fictitious names) ▪ Case: Fraud, Tortious Interference, RICO, Breach of Fiduciary Duty
Date: June 2014
Client: Callagy Law (representing the plaintiff)
Court: Superior Court of New Jersey, Bergen County

[57] Mediation: New Jersey Law Enforcement Supervisor's Association ▪ Case: Contract Dispute and Negotiation
Date: December 2013
Client: Pellettieri Rabstein & Altman (representing the union)

## Appendix C

## Documents Reviewed and Relied Upon

The following documents have been reviewed and relied upon by Christopher Young in this report. All documents referenced in the report of Christopher Young dated May 28, 2024 are incorporated herein.

| | |
|---|---|
| | **Agreements and Contracts** |
| 1 | Club Exchange [5-4-2019] Gayle.Matthew.C.HICVLINGARD025944.pdf |
| 2 | Mortgage [5-4-2019]Gayle.Matthew.C.HICVLINGARD026028.pdf |
| 3 | Note [5-4-2019]Gayle.Matthew.C.HICVLINGARD026033.pdf |
| 4 | Purchase Agreement [5-4-2019] Gayle.Matthew.C.HICVLINGARD026013.pdf |
| 5 | Club Exchange [8-11-2018] Belles.Bolin.C.HICVLINGARD024206.pdf |
| 6 | Mortgage [8-11-2018] Belles.Bolin.C.HICVLINGARD024227.pdf |
| 7 | Note [8-11-2018] Belles.Bolin.C.HICVLINGARD024165.pdf |
| 8 | Purchase Agreement [8-11-2018] Belles.Bolin.C.HICVLINGARD024211.pdf |
| 9 | Satisfaction of 8-11-2018 Mortgage - Belles.Bolin.C.HICVLINGARD024243.pdf |
| 10 | Club Exchange [8-4-2019] Belles.Bolin.C.HICVLINGARD025194.pdf |
| 11 | Contract Sale[8-4-2019] Belles.Bolin.C.HICVLINGARD026978.pdf |
| 12 | Mortgage [8-4-2019] Belles.Bolin.C.HICVLINGARD025914.pdf |
| 13 | Note [8-4-2019] Belles.Bolin.C.HICVLINGARD027000.pdf |
| 14 | Satisfaction of 8-4-2019 Mortgage - Belles.Bolin.C.HICVLINGARD026970.pdf |
| 15 | Club Exchange [1-25-2019] Adams.Brian.C.HICVLINGARD017280.pdf |
| 16 | Contract for Sale [1-25-2019] Adams.Brian.C.HICVLINGARD017255 PA 6681996.pdf |
| 17 | Mortgage [1-25-2019] Adams.Brian.C.HICVLINGARD017272.pdf |
| 18 | Note [1-25-2019] Adams.Brian.C.HICVLINGARD017277.pdf |
| 19 | Club Exchange [12-23-2018] Adams.Brian.C.HICVLINGARD016958.pdf |
| 20 | Contract for Sale [12-23-2018] Adams.Brian.C.HICVLINGARD016933 - 6663504.pdf |
| 21 | Mortgage [12-23-2018] Adams.Brian.C.HICVLINGARD016950.pdf |
| 22 | Note [12-23-2018] Adams.Brian.C.HICVLINGARD016955.pdf |
| 23 | Club Exchange [2-10-2018] Adams.Brian.C.HICVLINGARD016365.pdf |
| 24 | Mortgate [2-10-2018] Adams.Brian.C.HICVLINGARD016362 - 6561767 .pdf |
| 25 | Promissory Note [2-10-2018] Adams.Brian.C.HICVLINGARD016364.pdf |
| 26 | Purchase Agreement [2-10-2018] Adams.Brian.C.HICVLINGARD016353.pdf |
| 27 | Club Exchange [4-19-2019] Adams.Brian.C.HICVLINGARD017310.pdf |
| 28 | Contract for Sale [4-19-2019] Adams.Brian.C.HICVLINGARD017285 PA 6693549.pdf |
| 29 | Mortgage [4-19-2019] [FILED VERSION] Adams.Brian.C.HICVLINGARD017320 Mortgate 4-19-2019.pdf |
| 30 | Note [4-19-2019] Adams.Brian.C.HICVLINGARD017307.pdf |
| 31 | Special Warranty Deed - 12-30-2020 HICVLINGARD000853.pdf |
| 32 | Closing Disclosures [4-13-2021] HICVLINGARD000873.pdf |
| 33 | Contract for Sale [4-13-2021] HICVLINGARD000913.pdf |
| 34 | Mortgage [4-13-2021] HICVLINGARD000900.pdf |
| 35 | Note [4-13-2021] HICVLINGARD000930.pdf |
| 36 | Closing Disclosures [8-10-2021]HICVLINGARD000987.pdf |
| 37 | Club Exchange [8-10-2021] HICVLINGARD001005.pdf |
| 38 | Mortgage [8-10-2021] HICVLINGARD001012.pdf |
| 39 | Note [8-10-2021] HICVLINGARD001036.pdf |
| 40 | Purchase Agreement [8-10-2021] HICVLINGARD001020.pdf |
| 41 | Closing Disclosures [8-2-2018] HICVLINGARD000309.pdf |
| 42 | Club Exchange [8-2-2018] HICVLINGARD000327.pdf |
| 43 | Equity Transfer Form [8-2-2018] HICVLINGARD000476.pdf |
| 44 | Mortgage [8-2-2018] HICVLINGARD000340.pdf |
| 45 | Note [8-2-2018] HICVLINGARD000366.pdf |
| 46 | Purchase Agreement [8-2-2018] SMITH ONLY - HICVLINGARD000461.pdf |
| 47 | Purchase Agrement [8-2-2018] HICVLINGARD000348.pdf |
| 48 | Closing Disclosures [8-2-2019] HICVLINGARD000624.pdf |
| 49 | Club Exchange [8-2-2019] HICVLINGARD000646.pdf |
| 50 | Mortgage [8-2-2019] HICVLINGARD000651.pdf |
| 51 | Note [8-2-2019] HICVLINGARD000684.pdf |
| 52 | Purchase Agreement [8-2-2019] HICVLINGARD000666.pdf |
| 53 | Closing Disclosures [9-21-2020] HICVLINGARD000740.pdf |
| 54 | Club Exchange [9-21-2020] HICVLINGARD000761.pdf |
| 55 | Equity Transfer Form [9-21-2020] HICVLINGARD000814.pdf |
| 56 | Mortgage [9-21-2020] HICVLINGARD000772.pdf |
| 57 | Note [9-21-2020] HICVLINGARD000826.pdf |
| 58 | Purchase Agreement [9-21-2020] HICVLINGARD000786.pdf |
| 59 | Club Exchange [12-28-2019] Paterson.Myrtle.C.HICVLINGARD023828.pdf |
| 60 | Mortgage [12-28-2019] Paterson.Myrtle.C.HICVLINGARD027290.pdf |

| Documents Reviewed and Relied Upon | |
|---|---|
| The following documents have been reviewed and relied upon by Christopher Young in this report. All documents referenced in the report of Christopher Young dated May 28, 2024 are incorporated herein. | |
| 61 | Note [12-28-2019] Paterson.Myrtle.C.HICVLINGARD027295.pdf |
| 62 | Purchase Agreement [12-28-2019] Paterson.Myrtle.C.HICVLINGARD027328.pdf |
| 63 | Satisfaction of 12-28-2019 Mortgage - Paterson.Myrtle.C.HICVLINGARD028283.pdf |
| 64 | Club Exchange [4-21-2019] Paterson.Myrtle.C.HICVLINGARD025289.pdf |
| 65 | Mortgage [4-21-2019] Paterson.Myrtle.C.HICVLINGARD025514.pdf |
| 66 | Note [4-21-2019] Paterson.Myrtle.C.HICVLINGARD025519.pdf |
| 67 | Paterson.Myrtle.C.HICVLINGARD025527.pdf |
| 68 | Paterson.Myrtle.C.HICVLINGARD025542.pdf |
| 69 | Purchase Agreement [4-21-2019] Paterson.Myrtle.C.HICVLINGARD025499.pdf |
| 70 | Club Exchange [8-13-2018] Paterson.Myrtle.C.HICVLINGARD023536.pdf |
| 71 | Mortgage [8-13-2018] Paterson.Myrtle.C.HICVLINGARD024277.pdf |
| 72 | Note [8-13-2018] Paterson.Myrtle.C.HICVLINGARD024282.pdf |
| 73 | Purchase Agremeent [8-13-2018] Paterson.Myrtle.C.HICVLINGARD024261.pdf |
| 74 | Club Exchange [10-11-2009] Gilliam.Torrence.C.HICVLINGARD023028.pdf |
| 75 | Club Exchange [12-31-2015] Gilliam.Torrence.C.HICVLINGARD032782.pdf |
| 76 | Club Exchange [5-3-2019] Gilliam.Torrence.C.HICVLINGARD026322.pdf |
| 77 | Club Exchange [6-03-2017] Gilliam.Torrence.C.HICVLINGARD023566.pdf |
| 78 | Deed of Trust [12-31-2015] Gilliam.Torrence.C.HICVLINGARD023354.pdf |
| 79 | Mortgage [10-11-2009] Gilliam.Torrence.C.HICVLINGARD023002.pdf |
| 80 | Mortgage [5-3-2019] Gilliam.Torrence.C.HICVLINGARD026137.pdf |
| 81 | Mortgage [6-03-2017] Gilliam.Torrence.C.HICVLINGARD023733.pdf |
| 82 | Note [5-3-2019] Gilliam.Torrence.C.HICVLINGARD026225.pdf |
| 83 | Promissory Note [10-11-2009] Gilliam.Torrence.C.HICVLINGARD023004.pdf |
| 84 | Promissory Note [12-31-2015] Gilliam.Torrence.C.HICVLINGARD023362.pdf |
| 85 | Promissory Note [6-03-2017] Gilliam.Torrence.C.HICVLINGARD023735.pdf |
| 86 | Purchase Agreement [10-11-2009] Gilliam.Torrence.C.HICVLINGARD022994.pdf |
| 87 | Purchase Agreement [12-31-2015] Gilliam.Torrence.C.HICVLINGARD023346.pdf |
| 88 | Purchase Agreement [5-3-2019] Gilliam.Torrence.C.HICVLINGARD026203.pdf |
| 89 | Purchase Agreement [6-03-2017] Gilliam.Torrence.C.HICVLINGARD023725.pdf |
| 90 | Satisfaction of 10-11-2009 Mortgage - Gilliam.Torrence.C.HICVLINGARD022992.pdf |
| 91 | HICVLINGARD028307 Reservations.xlsx |
| 92 | HICVLINGARD028310 Payments.xlsx |
| 93 | Samples for Expert.docx |
| 94 | 2018 Member Guide HICVLINGARD037493 |
| 95 | 2019 Member Guide HICVLINGARD037584 |
| 96 | 2020 Member Guide HICVLINGARD037764 |
| 97 | 2021 Member Guide HICVLINGARD037944 |
| 98 | 2022 Member Guide HICVLINGARD038040 |
| 99 | 2023 Member Guide HICVLINGARD038232 |
| 100 | HICVLINGARD017692 Reservations |
| 101 | HICVLINGARD017693 Payments |
| 102 | Hightower.Erykah.C.HICVLINGARD016968 |
| 103 | Hightower.Erykah.C.HICVLINGARD016983 |
| 104 | Hightower.Erykah.C.HICVLINGARD016988 |
| 105 | Hightower.Erykah.C.HICVLINGARD016991 |
| 106 | Hightower.Erykah.C.HICVLINGARD016996 |
| 107 | Hightower.Erykah.C.HICVLINGARD016997 |
| 108 | Hightower.Erykah.D |
| 109 | Hightower.Erykah.L.HICVLINGARD005419 |
| | |
| **Depositions and Exhibits** | |
| 1 | Deposition of Michael Gould dated May 15, 2024 |
| 2 | 5-15-24 Michael Gould condensed deposition |
| 3 | 5-15-24 Gould Ex. 1 Amended 30(b)(6) Deposition Notice |
| 4 | 5-15-24 Gould Exhibit 26 - Exhibit 1 - Plaintiff Purchases Over Time |
| 5 | 5-15-24 Gould Exhibit 27 - HICV Point Chart |
| 6 | 5-15-24 Gould Exhibit 28 - 2019 Member Guide Scottsdale Resort |
| 7 | 5-14-24 Brandow condensed deposition.pdf |
| 8 | 5-14-24 Brandow deposition transcript.pdf |
| 9 | 5-14-24 Brandow Ex. 1 Amended 30(b)(6) Deposition Notice.pdf |
| 10 | 5-14-24 Brandow Ex. 10 Purchase Agreement [8-22-2017] HICVLINGARD000258.pdf |
| 11 | 5-14-24 Brandow Ex. 11 Purchase Agreement [8-2-2018] SMITH ONLY - HICVLINGARD000461.pdf |
| 12 | 5-14-24 Brandow Ex. 12 Equity Transfer Form [8-2-2018] HICVLINGARD000476.pdf |
| 13 | 5-14-24 Brandow Ex. 13 Closing Disclosures [8-22-2017] HICVLINGARD000230.pdf |

| Documents Reviewed and Relied Upon | |
|---|---|
| The following documents have been reviewed and relied upon by Christopher Young in this report. All documents referenced in the report of Christopher Young dated May 28, 2024 are incorporated herein. | |
| 14 | 5-14-24 Brandow Ex. 15 Closing Disclosures Loan #6618559 [8-2-2018] HICVLINGARD000420.pdf |
| 15 | 5-14-24 Brandow Ex. 17 Club Exchange [8-2-2018] HICVLINGARD000327.pdf |
| 16 | 5-14-24 Brandow Ex. 18 Purchase Agreement [8-2-2018] HICVLINGARD000348.pdf |
| 17 | 5-14-24 Brandow Ex. 19 Purchase Agreement [8-2-2019] HICVLINGARD000666.pdf |
| 18 | 5-14-24 Brandow Ex. 2 Wilson Resorts Sunbiz.pdf |
| 19 | 5-14-24 Brandow Ex. 20 Contract for Sale [4-13-2021] HICVLINGARD000913.pdf |
| 20 | 5-14-24 Brandow Ex. 21 Purchase Agreement [8-10-2021] HICVLINGARD001020.pdf |
| 21 | 5-14-24 Brandow Ex. 22 Equity Transfer [8-10-2021] HICVLINGARD001039.pdf |
| 22 | 5-14-24 Brandow Ex. 23 Closing Disclosures [8-10-2021]HICVLINGARD000987.pdf |
| 23 | 5-14-24 Brandow Ex. 24 Exhibit 1 - Plaintiff Purchases Over Time.pdf |
| 24 | 5-14-24 Brandow Ex. 25 SCRA Policy - HICVLINGARD003497.pdf |
| 25 | 5-14-24 Brandow Ex. 3 HICV Resp. and Obj. to Requests for Admission (1).pdf |
| 26 | 5-14-24 Brandow Ex. 4 HICV Resp. and Obj. to Interrogatories.pdf |
| 27 | 5-14-24 Brandow Ex. 5 Second Amended Complaint with Exhibits.pdf |
| 28 | 5-14-24 Brandow Ex. 6 Defendants' ANSWER and affirmative defenses with Jury Demand to [20] Amended Complaint by Holiday Inn Club Vacations, Inc., Wilson.pdf |
| 29 | 5-14-24 Brandow Ex. 6 Defendants' ANSWER and affirmative defenses.pdf |
| 30 | 5-14-24 Brandow Ex. 7 Combined Smith Loan Apps.pdf |
| 31 | 5-14-24 Brandow Ex. 8 JONES-WYNN.LACHERYL.C.HICVLINGARD018848 - PA [3-29-2018].pdf |
| 32 | 5-14-24 Brandow Ex. 9 Purchase Agreement [11-16-2016] HICVLINGARD000153.pdf |
| | |
| **Filings and Affidavits** | |
| 1 | Lingard v. Holiday Inn - 20. Second Amended Complaint with Exhibits |
| | |
| **Expert Reports and Exhibits** | |
| 1 | Lingard v. Holiday Inn Club Vacations - Habibi Report_4.26.24 |
| 2 | Exhibit 1 - Plaintiff Purchases Over Time |
| 3 | Exhibit 2 - Illustrative Interests Acquired During Alleged Class Period |
| 4 | Appendix A - Paul Habibi CV |
| 5 | Appendix B - Documents Reviewed |
| 6 | Appendix C - Combined Usage |
| 7 | AIF 2012 State of Industry - Full Report |
| 8 | AIF 2017 State of Industry - Full Report |
| 9 | AIF 2023 State of Industry - Full Report |
| 10 | Bowen 2006 - Timeshare Ownership |
| 11 | Melkolte 2012 - Optimizing Vacation Exchange |
| 12 | Stringam 2010 |
| | |
| **Other Research and Publicly Available Information** | |
| 1 | https://milesbuyer.com/sell-miles/ihg-points/ |
| 2 | https://www.topdollarpayouts.com/sell-ihg-points/ |
| 3 | https://storefront.points.com/IHG-rewards-club/en-US/buy |
| 4 | Litigation Services Handbook Sixth Edition: The Role of the Financial Expert |
| 5 | https://www.holidayinnclub.com/membership/what-is-vacation-ownership |
| 6 | https://www.ecfr.gov/current/title-32/subtitle-A/chapter-I/subchapter-M/part-232/section-232.3 |
| | |
| | |