UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANGELIQUE L. LINGARD and
SUDARIEN D. SMITH,

       Plaintiffs,

v.                                Case No: 6:23-cv-323-JSS-RMN

HOLIDAY INN CLUB VACATIONS,
INC. and WILSON RESORT
FINANCE, LLC,

       Defendants.
_____/

## ORDER

In this action, Plaintiffs seek to cancel their timeshare plans with Defendants pursuant to the Military Lending Act (MLA), 10 U.S.C. § 987. (Dkt. 20.) In preparation for the trial of this matter, each party seeks to exclude opposing experts. Plaintiffs move to exclude the testimony of Defendants' expert Paul Habibi. (Dkt. 74.) Defendants oppose the motion. (Dkt. 80.) Defendants move to exclude the testimony of Plaintiffs' rebuttal expert Dr. Christopher Young. (Dkt. 79.) Plaintiffs oppose the motion. (Dkt. 86.) For the reasons set forth below, Plaintiffs' motion is denied, and Defendants' motion is granted. Plaintiffs also move for class certification. (Dkt. 72.) Defendants oppose the motion. (Dkt. 77.) Plaintiffs filed a reply in support of the motion. (Dkt. 85.) For the reasons set forth below, the motion is denied.

# BACKGROUND

Plaintiffs bring this proposed consumer class action on behalf of themselves and other military servicemembers who are similarly situated against Defendants for alleged violations of the MLA, 10 U.S.C. § 987. (Dkt. 20.)  Plaintiffs and the proposed class members purchased timeshare interests from Defendants.  (*Id.* ¶¶ 88–89.) Defendants are in the business of selling timeshare plans to consumers throughout the United States. (*Id.* ¶¶ 51–56.)  These plans give their owners' points, which allow them to stay at Holiday Inn Club Vacation Resorts throughout the United States, stay at out-of-network resorts around the world, and buy airline tickets, cruises, rental cars, and other vacation services. (Dkt. 77 at 8.)  Plaintiffs allege that Defendants' timeshare contracts violate the MLA. (Dkt. 20 ¶¶ 57–76.)  Specifically, Plaintiffs allege that their and proposed class members' contracts contain mandatory arbitration, class action waiver, and jury trial waiver provisions in violation of the Act. (Dkt. 72 at 11.)  For these alleged violations, Plaintiffs, on behalf of themselves and the class, seek an order declaring the contracts void from inception and awarding actual damages. (Dkt. 20 at 38–39.)

Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), Plaintiffs move to certify the following class and subclass:

> MLA Class: All persons who have entered into Timeshare Purchase Agreements to purchase one or more timeshare interests in the Orange Lake Revocable Trust, in substantially the same form as Exhibit C, after February 24, 2018[,] and who were identified as an active duty servicemember or a dependent within a [Department of Defense (DoD)] Man[p]ower database on the contract date.

> Default Subclass: All members of the MLA Class whose
> accounts are or were delinquent as evidenced by [Holiday
> Inn Club Vacations (HICV)] imposing a "use restriction"
> on their timeshare interest for nonpayment.[1]

(Dkt. 72 at 19) (emphasis and footnote omitted).) Defendants rely on the report of its expert, Paul Habibi, in its response in opposition to Plaintiffs' motion for class certification. (Dkt. 77 at 18–19, 29.) In rebuttal to Defendants' expert, Plaintiffs disclosed Dr. Christopher Young and seek to rely upon his report to refute Mr. Habibi's report. (Dkt. 86 at 10–11.) The parties seek to exclude each other's proposed experts. The court will first consider the parties' motions to exclude each other's experts and then consider Plaintiffs' motion for class certification.

## MOTIONS TO EXCLUDE EXPERT TESTIMONY

In determining the admissibility of expert testimony under Federal Rule of Evidence 702, "[t]he court serves as a gatekeeper, charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007); *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850 (11th Cir. 2021) (quoting *Kilpatrick v. Breg, Inc.,* 613 F.3d 1329, 1335 (11th Cir. 2010)). A determination of admissibility requires findings that "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3)

---

[1] Exhibit C was not attached to the motion, but Plaintiffs filed the exhibit on the docket. (*See* Dkts. 81-3, 81-4.)

the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

If conflicting expert testimony is presented by both parties at the class certification stage, a district court should perform a full *Daubert* analysis at the class certification stage. *Sher v. Raytheon Co.*, 419 F. App'x 887, 890 (11th Cir. 2011); *PB Prop. Mgmt., Inc. v. Goodman Mfg. Co.,* No. 3:12-CV-1366-HES-JBT, 2016 WL 7666179, at *9 (M.D. Fla. May 12, 2016). "'[W]hen an expert's report or testimony is critical to class certification, . . . a district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion.'" *Sher*, 419 F. App'x at 890 (quoting *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815–16 (7th Cir. 2010)). If there is a challenge to the reliability of the expert's information, then the district court must resolve the issue if "'that information is relevant to establishing any of the Rule 23 requirements.'" *Id.* (quoting *Am. Honda*, 600 F.3d at 816). The district court "must make the necessary factual and legal inquiries and decide all relevant contested issues prior to certification." *Id.* at 891.

## ANALYSIS

### A. Dr. Christopher Young

A full *Daubert* analysis is only required at the class certification stage "when an expert's report or testimony is critical to class certification." *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1258 n.7 (11th Cir. 2014) (quoting *Am. Honda*, 600 F.3d at 815–16); *Sher*, 419 F. App'x at 890 (same).  In *American Honda Motor Co. v. Allen*, 600 F.3d 813 (7th Cir. 2010), the court determined that an expert's report or testimony was critical to class certification when the plaintiffs relied "heavily" on it "to demonstrate the predominance of common issues."  *Id.* at 814; *Sher*, 419 F. App'x at 888–90 (same) (citing *Am. Honda*, 600 F.3d  at 815–16).

Here, Dr. Young's report is not critical to the court's determination of whether to certify the proposed class because Plaintiffs have not heavily relied upon it for class certification.  Indeed, Plaintiffs only refer to Dr. Young's report in one sentence related to the manageability requirement for class certification under Federal Rule of Civil Procedure (b)(3)(D) (Dkt. 72 at 34–35) ("However, even if, arguendo, the Court were to determine that HICV is entitled to an offset, . . . offset is calculable, . . . as Plaintiffs' rebuttal expert makes clear. . . . Thus, there are no manageability issues that would preclude trial on a classwide basis.")  Even if the court were to determine that multiple individual lawsuits would be more manageable than a class action, lack of manageability "will rarely, if ever, be in itself sufficient to prevent certification."  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1272 (11th Cir. 2004), *abrogated in part on other grounds*

by *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). Nonetheless, as Plaintiffs have not heavily relied upon Dr. Young's report, "there [is] no need to engage [in] the *Daubert* analysis before resolving the class certification motion." *Local 703,* 762 F.3d at 1258 n.7.

Plaintiffs seek to rely upon Dr. Young's report to rebut Defendants' expert's opinion on the issue of class certification. Defendants have moved to exclude Dr. Young's report on two grounds. Defendants contend Dr. Young's report was untimely disclosed and lacks reliability under Daubert.

"Federal Rule of Civil Procedure 26 prescribes when and how parties must disclose potential witnesses." *Baxter v. Roberts*, 54 F.4th 1241, 1254 (11th Cir. 2022). Complying with Rule 26 is "'not merely an aspiration' as 'the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise.'" *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, No. 6:07–cv–222–Orl–35KRS, 2009 WL 1043974, at *3 (M.D. Fla. Apr. 17, 2009) (quoting *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008)). Rule 26(a) and (e) require the parties "to disclose all bases of their experts' opinions" and to timely supplement these expert disclosures "upon discovery of an omission or as required by court order." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009). Absent a stipulation or court order, expert evidence that "is intended solely to contradict or rebut evidence on the same subject matter identified by another party" must be disclosed "within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D). Nevertheless, an expert's opinion cannot properly be characterized as rebuttal evidence to cure untimely

disclosure. *Bell v. Progressive Select Ins. Co.*, 692 F. Supp. 3d 1121, 1124–26 (M.D. Fla. 2023) (striking an untimely expert report characterized as a rebuttal expert report when the expert opined on "issues that [the plaintiff] must prove in his case in chief").

Indeed, a plaintiff cannot characterize an untimely expert report as a rebuttal expert report when the expert addresses an issue that the plaintiff bears the burden of proof on at trial. *See Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 71 F.4th 894, 904–908 (11th Cir. 2023). In *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, the plaintiff did not disclose an expert to testify in its case-in-chief. *Id*. at 906–08. Instead, the plaintiff attempted to rely on their purported rebuttal expert's report on an issue they bore the burden of proving at trial. *Id*. at 908. The Eleventh Circuit affirmed the district court's ruling excluding the expert's report during the summary judgment stage, explaining that:

> The plaintiff argued that [their expert's] report rebutted [the defendant's expert's] opinions as if it did not have the burden of proof or did not need an expert to meet that burden. . . . The plaintiff did not move the court to redesignate their expert as a case-in-chief expert. And the district court correctly applied Rule 56 by refusing to consider rebuttal evidence as evidence that could meet the plaintiff's burden of proof.

*Id*. at 909 (cleaned up).

Here, Plaintiffs untimely disclosed Dr. Young's report to Defendants. The case management and scheduling order expressly states that Plaintiffs' deadline for disclosing class action expert reports was March 26, 2024. (Dkt. 61 at 1.) According to Defendants, Plaintiffs did not identify any expert or serve any expert report on that

date.  (Dkt. 79 at 9.)  Instead, Defendants assert that Plaintiffs disclosed Dr. Young's identity and report on May 28, 2024, the day that class discovery closed.  (*Id.*)  Plaintiffs' argument that Dr. Young's report was properly disclosed as a rebuttal expert report pursuant to Federal Rule of Civil Procedure 26(a)(2)(D)(ii) is not well taken.

The crux of Dr. Young's opinion is that a common methodology can be used to estimate the offset owed to Holiday Inn from the proposed class members who used their timeshare points.  (Dkt. 79-1 at 14–21.)  Although Dr. Young's opinion contradicts Mr. Habibi's report, Plaintiffs bear the burden of proof on this damages issue.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (explaining that under Rule 23(b)(3), the plaintiff bears the burden of "establishing that damages are capable of measurement on a classwide basis"); *Klay*, 382 F.3d at 1259 (explaining that during the class certification stage, the plaintiff must "come forward with plausible statistical or economic methodologies to demonstrate [damage] impact on a class-wide basis").  Plaintiffs bear the burden of identifying a method to determine the dollar value of the benefits received by each proposed class member who used timeshare points.[2]  Once

---

[2] If the class were to be certified and Plaintiffs prevailed on the merits, the court would declare the contracts void from the inception.  In connection with that declaration, Plaintiffs seek on behalf of themselves and the class "actual damages the greater of all amounts they paid in connection with or pursuant to the illegal and void timeshare contracts or $500 per MLA violation . . ."  (Dkt. 20 at 39; *see also* Dkt. 72 at 39 (explaining that Plaintiffs on behalf of themselves and the class seek "actual damages equal to amounts paid on the void loans").)  The Supreme Court has stated that "when Congress declare[s] in [a statute] that certain contracts are void, it intend[s] that the customary legal incidents of voidness w[ill] follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution."  *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19 (1979).  Rescission of the contracts is the equitable relief that would flow from the contracts

these amounts are determined for each individual, they will be deducted from the actual damages claimed by each member related to the timeshare contract payments. 382 F.3d at 1259. This damages calculation makes sense because it prevents Plaintiffs and the proposed class members who used their timeshare points from receiving a windfall should they prevail on the merits. Additionally, Plaintiffs moving for class certification also have the burden of showing that determining the value of these individual benefits does not predominate over the issues subject to generalized proof. Plaintiffs cannot excuse the untimeliness of Dr. Young's disclosure by ignoring these burdens and characterizing Dr. Young's report as a rebuttal expert report.

Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). To determine whether a nondisclosure was substantially justified

---

being declared void. *See Wilson v. Par Builders II, Inc.*, 879 F. Supp. 1187, 1190 (M.D. Fla. 1995) ("The rescission of contract 'amounts to the unmaking of a contract, or an undoing of it from the beginning, and not merely a termination . . . .'" (quoting Black's Law Dictionary, (5th Ed. 1979)). "The rescission . . . may be effected by mutual agreement of parties, or by one of the parties declaring rescission of the contract, without the other if a legally sufficient ground therefor[e] exists, or by applying to courts for a decree of rescission . . . .'" *Id.* (quoting same). It is "an action of an equitable nature." *Id.* Under Florida law, one of "[t]he fundamental requirements necessary to state a cause of action for rescission of contract" is that if "the moving party has received benefits from the contract, he should . . . allege an offer to restore these benefits to the party furnishing them, if restoration is possible . . . ." *Bland v. Freightliner LLC*, 206 F. Supp. 2d 1202, 1206 (M.D. Fla. 2002).

or harmless, courts consider five factors: "(1) the unfair prejudice or surprise of the opposing party; (2) the opposing party's ability to cure the surprise; (3) the likelihood and extent of disruption to the trial; (4) the importance of the evidence; and (5) the offering party's explanation for its failure to timely disclose the evidence." *Northrup v. Werner Enter., Inc.*, No. 8:14-cv-1627-T-27JSS, 2015 WL 4756947, at *2 (M.D. Fla. Aug. 11, 2015) (citation omitted).   The non-disclosing party bears the burden of showing a failure to disclose was substantially justified or harmless.  *Mitchell*, 318 F. App'x at 824.   "The district court has broad discretion to admit or exclude untimely submissions under [Rule 37(c)(1)]." *Lambert v. Monaco Coach Corp.*, No. 8:04-cv-608-T-30-TBM, 2005 WL 5961075, at *1 (M.D. Fla. Feb. 10, 2005) (citing *Bearint v. Dorel Juv. Grp., Inc.*, 389 F.3d 1339 (11th Cir. 2004)).

Although Plaintiffs recite the substantially justified or harmless standard, they do not make any argument in support of their position.  (*See generally* Dkt. 86.)  Rather, Plaintiffs explain that Dr. Young's expert report was timely provided as a rebuttal expert report.  The court has rejected that argument.  Plaintiffs have, therefore, failed to meet their burden of showing that their late disclosure was substantially justified or harmless.  *Knight ex rel. Kerr v. Miami-Dade County*, 856 F.3d 795, 812 (11th Cir. 2017) (concluding that a district court did not abuse its discretion by excluding the plaintiffs' untimely disclosed expert when the plaintiff failed to establish justification for their tardiness or that the late disclosure was harmless).

Defendants maintain that they were prejudiced because Plaintiffs disclosed Dr. Young on the day class discovery closed.  (Dkt. 79 at 22–23.)  Although Defendants

deposed Dr. Young after the court granted an extension to the class discovery deadline solely for this to occur, Defendants assert there is still unfair prejudice because many topics could not be fully explored at the deposition.  (*Id.* at 21–22.)  For example, Defendants assert that Dr. Young refused to answer questions about his testimony in prior cases by invoking confidentiality agreements that had not been disclosed to Plaintiffs' counsel for their review.  (Dkt. 79 at 21–22.)  Defendants also contend that they are unfairly prejudiced because Dr. Young's report and deposition testimony are full of speculation because he reached his conclusions without evaluating any of the relevant data to estimate the value of the proposed class members' uses of their points. (*Id.* at 9, 21–23.)  Given the prejudice caused by the untimely disclosure, the inability to cure the prejudice at the deposition, and the fact that the trial is only months away, Dr. Young's opinion will be excluded.

Second, even if Dr. Young's report was timely disclosed, which it was not, it is still due to be excluded because Dr. Young has not reliably applied his " principles and methods to the facts of the case."  Fed. R. Evid. 702(d).   To determine whether an expert's methodology is sufficiently reliable, courts consider the following:

> (1) whether the theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) in the case of a particular . . . technique, the known or potential rate of error, and (4) whether the theory or technique is generally accepted by the relevant . . . community.

*Hendrix ex rel G.P. v. Evenflo, Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010).  Dr. Young's report is full of limitations because he has not tested the theories he asks the court to

accept.  For example, he opines that the market approach methodology "can be used" to estimate the offset due to Holiday Inn.  (Dkt. 79-1 at 14.)  According to Dr. Young, this approach entails evaluating the following market observations to determine the value of the Holiday Inn points: (1) the purchase of points by the issuer, (2) the purchase of points in order to complete a transaction, (3) the sale of points in secondary markets, and (4) the redemption of points for items such as holiday stays, cruises, and car rentals, versus the cost of purchasing them.  (*Id*. at 17.)  Dr. Young did not analyze these observations to make any calculations because he was not provided with this data, and he speculates as to whether Holiday Inn maintains this data.  Dr. Young's deposition testimony evidences this:

> Q: Do you know what that exchange rate is?
> A: I don't know what the exchange rate is because I don't have all the data.
> Q: Do you know --
> A: Once I -- once I get the data, we will perform that analysis. . .
> Q: Can you point to a single document or a piece of paper that ascribes a dollar value to the use of Holiday Inn Club Vacation points, outside the Holiday Inn Club Vacations network?
> A: Again, once I get all of the data, we can calculate all of -- all of -- I can give you thousands of calculations, but once we get the data -- because Holiday Inn has all of this information because they have to have this information. And so once we receive that information and we can look at all of the various exchanges, when somebody gave up points on -- one of the plaintiffs gave up points for a rental car or somebody gave up points for an airline, I can calculate what the value of those points were at that point in time.  . . .
> Q: And you reached that conclusion that you can make those calculations before receiving the data, correct?
> A: I do not have the data yet; that is correct.

(Young Dep., Dkt. 79-2 at 184:22–185:3, 186:2–18, 187:1–6.)  In his report, Dr. Young offers only methods unapplied to this case that might determine the value of potential class members' Holiday Inn points.  This unapplied and speculative methodology does not support "that a reliable [class-wide] damages methodology exist[s]."  *Green-Cooper v. Brinker Int'l Inc.*, 73 F.4th 883, 893 (11th Cir. 2023).  Therefore, the court will exclude Dr. Young's report.  *See Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014) ("[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." (quoting *Cook*, 402 F.3d at 1111)); *see also Morgan v. Orlando Health, Inc.*, No. 6:17-cv-1972-Orl-41GJK, 2019 WL 7423514, at *5 (M.D. Fla. Oct. 23, 2019) (excluding and striking the plaintiff's class certification expert's report when the expert's report contained no analysis and merely described a method they would have taken to analyze the data); *Brashevitzky v. Reworld Holding Corp.*, 348 F.R.D. 107, 120 (S.D. Fla. Nov. 13, 2024) (explaining that when a party is producing a class certification expert at the close of class discovery, "[i]t is not sufficient, as a basis to support [the] admission of [the] expert['s] opinion, . . . to state what [the expert] *will do later on*").

## B. Paul Habibi

Defendants heavily rely on Mr. Habibi's report to oppose Plaintiff's motion for class certification.  Specifically, they refer to the report to challenge Plaintiffs' assertion that the issues in the proposed class action that are subject to generalized proof predominate over the damages issue subject to individualized proof.  (Dkt. 77 at 18–

19, 30–35.) Plaintiffs challenge the admissibility of Mr. Habibi's report under *Daubert*. (Dkt. 74 at 12–26.)

A determination of admissibility under *Daubert* requires findings that "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The basic *Daubert* requirements of "qualification, reliability, and helpfulness . . . [are] distinct concepts[,] and the courts must take care not to conflate them." *Moore*, 995 F.3d at 851 (quoting *Frazier*, 387 F.3d at 1260). The party offering an expert has the burden of satisfying each of these elements by a preponderance of the evidence. *Id.*; *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005).

In formulating his opinion, Mr. Habibi reviewed the operative complaint, the court's order granting in part and denying in part Defendants' motion to dismiss, Plaintiffs' deposition transcripts, Plaintiffs' timeshare loan documents, and timeshare points use charts for some of the proposed class members who have been identified. (Dkt. 77-2 at 31–38.) After reviewing these materials, Mr. Habibi provided three opinions based on his training and experience: (1) Plaintiffs and proposed class members acquired unique and variable timeshare interests in different structures with

different use rights, financing terms, and financing disclosures before and during the Proposed Class Period; (2) any negative impact on Plaintiffs' and proposed class members' credit scores, ability to obtain financing, and professional careers in the military cannot be reliably assessed using a common approach across the entire class; and (3) the remedies sought by Plaintiffs would require an individualized analysis of each proposed class member's respective purchase, interest, and use history. (Dkt. 83-1 at 15–24.) Plaintiffs seek to exclude Mr. Habibi's report, arguing that he is not qualified, all of his conclusions are irrelevant, and that his third conclusion is not based on reliable facts and is not helpful to the trier of fact. (Dkt. 74 at 11–27.)

### 1. Qualifications

Plaintiffs assert that Mr. Habibi is not qualified to render an opinion in this matter because his curriculum vitae does not refer to expertise in timeshares or economics or valuing non-traditional property interests such as timeshare vacation points. (*Id*. at 9.) Defendants maintain that Mr. Habibi is qualified to give his opinion here because his area of competence matches the subject matter of his testimony. (Dkt. 80 at 21.)

"Determining whether a witness is qualified to testify as an expert requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." *Feliciano v. City of Miami Beach*, 844 F. Supp. 2d 1258, 1262 (S.D. Fla. 2012) (quotation omitted). This inquiry is not stringent, and "so long as the expert is minimally qualified, objections to the level of the expert's expertise

[go] to credibility and weight, not admissibility." *Vision I Homeowners Ass'n, v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quotation omitted).

Mr. Habibi is the owner of a real estate expert services firm. (Dkt. 83-1 at 4.) He is also a senior continuing lecturer at the University of California Los Angeles Schools of Management and Law, where he teaches in the areas of real estate, finance, and accounting. (*Id.*) He holds a Master of Business Administration and is a licensed realtor, broker, and certified public accountant. (*Id.* at 29–30.) Mr. Habibi teaches a course on timeshares for the MBA program at UCLA. (Dkt. 83-3 at 7.) He also teaches a course on business skills for lawyers, which covers business valuations and economic damages. (*Id.* at 7–8.) Mr. Habibi's extensive educational background and experience qualify him to provide expert testimony in this matter.

### 2. Relevance and Helpfulness

Plaintiffs maintain that Mr. Habibi's first opinion is irrelevant and unhelpful because Plaintiffs' proposed class definition is now limited to servicemembers who purchased one type of timeshare interest, an interest in the Orange Lake Revocable Trust. (Dkt. 74 at 12.) Initially, in the operative complaint, Plaintiffs' proposed class definition was not limited to one type of timeshare interest and sought to include "[a]ll covered borrowers who financed a timeshare from Holiday Inn." (Dkt. 20 ¶ 77.) Defendants assert that Mr. Habibi's opinion is still relevant despite Plaintiffs narrowing the proposed class definition because Plaintiffs seek to void the contracts. (Dkt. 80 at 11.) Specifically, Defendants argue that if the court were to declare the contracts void, Plaintiffs would seek to rescind those contracts. (*Id.* at 5–6.) Therefore,

- 16 -

Plaintiffs have the burden of showing that rescission is feasible and equitable on a class-wide basis based on the facts of the case.  (*Id.* at 11–13); *see also Cox v. Cmty. Loans of Am. Inc.*, 625 F. App'x 453, 457 (11th Cir. 2015) (acknowledging that the MLA allows covered servicemembers and their dependents to rescind and seek restitution on a contract rendered void under the statute's criteria).   In this regard, Mr. Habibi opines:

> [Plaintiffs] have offered no way to determine, on a class-wide basis, the type of timeshare interest purchased by each proposed class member, the use rights of each proposed class member[], the value of those use rights in the HICV network or any comparative value within the Proposed Class Period, the value of any of those interests in securing accompanying financing, or whether HICV accurately disclosed the terms of financing.

(Dkt. 83-1 ¶ 50.)  "An expert's testimony is helpful if it 'assists the trier of fact, through the application of scientific, technical, or specialized expertise, [(1)] to understand the evidence or [(2)] to determine a fact in issue.'"  *Rivera v. Ring*, 810 F. App'x 859, 863 (11th Cir. 2020) (quoting *Frazier*, 387 F.3d at 1260).  Since Plaintiffs seek to declare the timeshare contracts void and seek actual damages, Mr. Habibi's opinion is relevant and helpful "to understand the evidence or to determine a fact in issue . . . ."  Fed. R. Evid. 702(a).  Specifically, Mr. Habibi's first opinion is relevant to the predominance class certification analysis because the parties dispute whether actual damages can be easily calculated for all class members.  (*Compare* Dkt. 72 at 37–40, *with* Dkt. 77 at 30–35.)

Next, Plaintiffs contend that Mr. Habibi's second opinion is also irrelevant and unhelpful because Plaintiffs do not seek damages for the harms described in the

opinion. (Dkt. 74 at 13.) Defendants maintain that the opinion is relevant and helpful
to the court's class certification predominance analysis. (Dkt. 80 at 9–10.)
Specifically, Defendants assert this opinion helps the court evaluate the proposed class
members' Article III standing. (*Id.*) District courts should consider "whether the
individualized issue of standing will predominate over the common issues in the case
when it appears that a large portion of the class does not have standing, . . . and making
that determination for these members of the class will require individualized
inquiries." *Cordoba v. DIRECTV, LLC,* 942 F.3d 1259, 1277 (11th Cir. 2019). Mr.
Habibi's second opinion is relevant to the predominance class certification analysis
because Defendants challenge whether determining standing for each proposed class
member will predominate over issues subject to generalized proof. (*Compare* Dkt. 72
at 32–35, *with* Dkt. 77 at 29–30.)

As for Mr. Habibi's third opinion, Plaintiffs maintain that it is irrelevant and
unhelpful because Defendants failed to plead set-off as an affirmative defense. (Dkt.
74 at 14–18.) The court finds this argument unpersuasive because Mr. Habibi opines
concerning Plaintiffs' ability to establish a class-wide damages methodology, which
they bear the burden of proving during the class certification stage and at trial. *Klay*,
382 F.3d at 1259. Mr. Habibi's third opinion is relevant to the court's predominance
class certification analysis since the parties dispute whether actual damages can be
easily calculated for all class members.

### 3. Reliability

Plaintiffs maintain that Mr. Habibi's third opinion is unreliable because he did not consider relevant information in the possession of Holiday Inn before reaching his conclusion. (Dkt. 74 at 22–23.) Specifically, Plaintiffs argue that Mr. Habibi should have reviewed the third-party contracts that Holiday Inn had with other companies. (Dkt. 80 at 18–19.) According to Plaintiffs, such a review would help determine a dollar value of points redeemed by class members for services provided by these third parties, which would help calculate the potential setoff for class members. (*Id.*) Defendants respond that this exceeds the scope of Mr. Habibi's assignment here as he was not retained "to calculate damages but rather to evaluate the approach one could take to do so on a common class-wide basis." (*Id.* at 19 (citing Habibi Dep., Dkt. 83-3 at 88:4–6.)) According to Defendants, the fact that some of their contracts with their third-party vendors may provide some mechanism for reimbursement in dollars does not render unreliable Mr. Habibi's opinion that there is no common approach that can be used to value the redeemed points of the proposed class members. The court agrees. For example, Defendants' corporate representative, Michael Gould, testified that Holiday Inn does not have information on how points used at RCI, an external exchange company where members could redeem their points, could be valued because Holiday Inn lacks access to this information. (Gould Dep., Dkt. 77-1 at 104:9–108:5.) Mr. Habibi analyzed the timeshare points usage history data of 300 proposed class members. (Dkt. 83-1 ¶ 70.) Based on his analysis, Mr. Habibi determined the following: (1) 39% of the proposed class members redeemed all of their

timeshare points to stay at another Holiday Inn resort, and (2) for the proposed class members who redeemed their points for external stays or outside services, the average class member used 26.9% of their total timeshare points towards outside services. (*Id.*) Mr. Habibi reached the following conclusion in his report after analyzing the data:

> [A]ny rescissory damages must be offset by the actual benefits received by putative class members each of whom had a different usage history of his or her timeshare interests. . . . [T]he timing and form of product which each owner redeems his or her interest is associated with significant variation [of] the value of such interest. If an owner redeems his or her interests to redeem outside services or book reservations on external exchanges, the cash equivalent value of HICV Club Points for outside services and exchanges may vary over time. In these cases, owners can convert their Club Points to credits for outside services or points on external exchanges, but the number of points required to book a particular service (such as airfare or a rental car) or a hotel or timeshare stay on an external exchange is highly dynamic. . . . Because the value of points for outside services and on external exchanges can change on a daily basis, estimating the value received by proposed class members for the redemption of their Club Points necessitates an individualized analysis of each owner.

(*Id.* ¶¶ 66, 69–71 (footnote omitted).) Mr. Habibi's analysis supports his conclusion that proposed class members have redeemed their points in various ways at different times such that there is no common value ascribed to points universally that could be used as a basis to ascribe a specific dollar value to the points on a class-wide basis. (Habibi Dep., Dkt. 83-3 at 89:14–90:6.) Further, as mentioned above, Plaintiffs bear the burden of establishing that calculating damages on a class-wide basis predominates over issues subject to individualized proof. Defendants only offer Mr. Habibi's testimony to rebut Plaintiffs' assertion they have met their burden on this issue. Mr.

Habibi's nonscientific opinion about whether there is a common methodology that can
be used to determine the value of the points redeemed by the proposed class members
is reliable based on his training and experience, and the court has already found this
testimony to be relevant and helpful to the court's predominance class certification
analysis. *Am. Gen. Life Ins. Co. v. Schoenthal Fam., LLC*, 555 F.3d 1331, 1338 (11th Cir.
2009) ("A district court may decide that nonscientific expert testimony is reliable based
upon personal knowledge or experience." (quotation omitted)).

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs move to certify a class, (Dkt. 72), and Defendants oppose class
certification, (Dkt. 77). "The class action is 'an exception to the usual rule that
litigation is conducted by and on behalf of the individual named parties only.'" *Wal-
Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 349 (2011) (quoting *Califano v. Yamasaki*, 442
U.S. 682, 700–01 (1979)). The burden of establishing the propriety of class
certification "rests with the advocate of the class." *Valley Drug Co. v. Geneva Pharms.,
Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). A "district court has broad discretion in
determining whether to certify a class." *Washington v. Brown & Williamson Tobacco
Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992*); accord Griffin v. Carlin*, 755 F.2d 1516, 1531
(11th Cir. 1985) ("Questions concerning class certification are left to the sound
discretion of the district court.").

Federal Rule of Civil Procedure 23(a) requires the movant to demonstrate the
following when moving for class certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are commonly called the "numerosity, commonality, typicality, and adequacy of representation" requirements. *Williams v. Reckitt Benckiser, LLC*, 65 F.4th 1243, 1260 (11th Cir. 2023)). After meeting the requirements of Rule 23(a), the party seeking class certification must establish at least one of the alternative requirements of Rule 23(b). *Valley Drug*, 350 F.3d at 1188.

A Rule 23(b)(2) class is permitted when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Fed. R. Civ. P. 23(b)(2). A Rule 23(b)(3) class is permitted if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Also, the class representative must have standing to sue, and the proposed class must be adequately defined and clearly ascertainable. *See Prado–Steiman*, 221 F.3d at 1279; *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016).

# ANALYSIS

### A. Standing

Plaintiffs must demonstrate Article III standing to pursue each of the claims asserted in the complaint. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). This requires Plaintiffs to establish that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but . . . also be part of the class and possess the same interest and suffer the same injury as the class members." *Mills v. Foremost Ins. Co.,* 511 F.3d 1300, 1307 (11th Cir. 2008) (quotation omitted). Therefore, the court must determine that at least one named class representative has Article III standing to raise each class claim or subclaim. *Prado–Steiman*, 221 F.3d at 1279.

The court has already addressed Defendants' standing arguments as to the named Plaintiffs on the merits in its orders granting in part and denying in part Defendants' Motion to Dismiss (Dkt. 36) and denying Defendants' Motion for Reconsideration (Dkt. 92). Therefore, for the reasons previously explained by the court, Plaintiffs have sufficient standing to pursue the class claims.

### B. Adequacy of Class Definition and Ascertainability

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is

adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d
1302, 1304 (11th Cir. 2012) (quotation omitted).    "A class is ascertainable if
membership is based on objective criteria." *Mount v. Pulte Home Co., LLC*, No. 6:20-cv-
2314-RBD-LRH, 2022 WL 3446217, at *2 (M.D. Fla. Aug. 17, 2022) (citing *Karhu v.
Vital Pharms.*, 621 F. App'x 945, 946 (11th Cir. 2015)).    "[A] vague class definition
portends significant manageability problems for the court." *Rink v. Cheminova, Inc.*,
203 F.R.D. 648, 660 (M.D. Fla. 2001).

Defendants argue that the proposed class period is overbroad by three years and
should be limited to applicable class members who purchased their timeshare after
February 24, 2021.[3] (Dkt. 77 at 37.)  The MLA states:

> An action for civil liability . . . may be brought . . . not later
> than the earlier of--
>> (i) two years after the date of discovery by the plaintiff
> of the violation that is the basis for such liability; or
>> (ii) five years after the date on which the violation
> that is the basis for such liability occurs.

10 U.S.C. § 987(f)(5)(E).   Plaintiffs maintain that the five-year class period applies
because Defendants claim the MLA does not apply to its timeshare loans. (Dkt. 85 at
11.)  The Supreme Court has interpreted similar "two-sentence" statutes of limitations
like the MLA by viewing the shorter period as a statute of limitations and the longer
period as a statute of repose. *Cal. Pub. Emps.' Ret. Svs. v. ANZ Sec., Inc.*, 582 U.S. 497,

---

[3] Defendants argue that February 27, 2021, is the applicable date. (Dkt. 77 at 37.) However,
it appears that Defendants made a typographical error in their calculations.  Although this
case was assigned on February 27, 2023, a review of the docket shows that it was filed on
February 24, 2023. (Dkt. 1.)  Thus, the court concludes that Defendants intended to use
February 24, 2021, as the relevant date for their statute of limitations argument.

506 (2017) (explaining that "[t]he pairing of a shorter statute of limitations and a longer statute of repose is a common feature of statutory time limits"). Specifically, "[t]he two periods work together: The discovery rule gives leeway to a plaintiff who has not yet learned of a violation, while the rule of repose protects the defendant from an interminable threat of liability." *Id.* (interpreting the one-year discovery provision and the three-year statute of repose in 15 U.S.C. § 77m). Because other grounds support the decision not to certify the class, and this issue was not adequately briefed—it was only mentioned in three sentences before the conclusion of Defendants' opposition (Dkt. 77 at 37) and in a short paragraph in Plaintiffs' reply (Dkt. 85 at 11)—the court declines to define the appropriate limitations period at this time.

Defendants do not otherwise challenge whether the proposed class is adequately defined and clearly ascertainable. (*See* Dkt. 77.) Based on the evidence submitted, Plaintiffs establish that the parties can identify the proposed class members that purchased one or more timeshare interests in the Orange Lake Revocable Trust from Defendants through Defendants' business records and can determine their military status through a query of the Department of Defense Manpower Data Center database. Plaintiffs also point to an Orange Lake Revocable Trust timeshare contract form that contains the mandatory arbitration, class action waiver, and jury trial waiver provision that Plaintiffs allege violates the MLA and is substantially similar to the contracts signed by the proposed class members. (Dkts. 81-3, 81-4.) Defendants also stipulated that all of its timeshare loan contracts contain substantially similar mandatory arbitration, class action waiver, and jury trial waiver provisions. (Brandow

Dep., Dkt. 81-5 at 121:11–122:6.) Plaintiffs further established that the parties could identify the proposed subclass members by reviewing Defendants' business records. Plaintiffs produced evidence that supports Holiday Inn sends monthly billing statements reflecting loans that are in default and places a "use restriction" on timeshare interests that are in default. (Dkt. 72-5 ¶ 27; Dkt. 72-6 ¶ 27.) Therefore, the court concludes that the proposed class is adequately defined and clearly ascertainable.

### C. Rule 23(a) Factors

#### 1. Numerosity

A class action is appropriate "only if . . . the class is so numerous that joinder of all members is impracticable . . . ." Fed. R. Civ. P. 23(a)(1). "As a general rule, . . . more than forty class members will be adequate to meet the numerosity requirement, while fewer than twenty-one class members will be inadequate . . . ." *Mills*, 269 F.R.D. at 670 (citing *Cox v. Am Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).

Plaintiffs contend that while the precise number of potential class members is unknown, they have identified over three hundred potential class members. (Dkt. 72 at 24–25). This demonstrates an adequate number of members in the proposed class as joinder of a class this size is impracticable. "[A] plaintiff need not show [a] precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 930 (11th Cir. 1983). Moreover, Defendants do not dispute numerosity. (*See* Dkt. 77.) Therefore, the court finds that the numerosity requirement is satisfied.

### 2. Commonality

Commonality requires "questions of law or fact common to the class . . . ." Fed. R. Civ. P. 23(a)(2).  To satisfy this element, the class members' "claims must depend upon a common contention," and that common contention "must be of such a nature that it is capable of classwide resolution." *Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 273–74 (M.D. Fla. 2019) (quoting *Dukes*, 564 U.S. at 350).  "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Carriuolo*, 823 F.3d at 984 (quoting *Dukes*, 564 U.S. at 359); *accord Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) ("Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members.").

Plaintiffs maintain that two issues are common to the class: (1) whether the MLA applies to the timeshare loans and (2) whether the contracts are void from inception for containing mandatory arbitration, class action waiver, and jury trial waiver provisions in violation of the Act.  (Dkt. 72 at 25–27.)  The determination of whether the MLA applies to the loans and whether Defendants violated the Act, making the contracts void from inception, "will resolve an issue that is central to the validity of each one of the [class members'] claims in one stroke." *See Dukes*, 564 U.S. at 350.  Therefore, the commonality requirement is satisfied.

### 3. Typicality

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class . . . ." Fed. R. Civ. P. 23(a)(3).  The class

representative's claims need not be identical to those of the individual class members; rather, "there need only exist a sufficient nexus between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (cleaned up). "This nexus exists 'if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Id.* (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). Furthermore, "[a] class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009) (quoting *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008)). Lastly, the presence of substantial factual differences does not negate a finding that the typicality requirement has been met so long as "there is a strong similarity of legal theories." *Local 703*, 762 F.3d at 1259 (quoting *Williams*, 568 F.3d at 1357).

Plaintiffs contend that their individual and the proposed class claims arise from being "covered borrowers" as defined by the MLA and purchasing a timeshare interest in the Orange Lake Revocable Trust. (Dkt. 72 at 28.) Plaintiffs further maintain that Plaintiffs' and the proposed class's legal theories are the same and that Defendants' inclusion of the provisions prohibited by the MLA makes the contracts void from inception. (*Id.*)

Plaintiffs bring individual common law fraud claims against Defendants under Florida law. According to Plaintiffs, these claims arise from a Holiday Inn sales agent

allegedly falsely informing Plaintiffs that since they are members of the military, Holiday Inn "would buy back their timeshare points" at any time upon Plaintiffs' request. (Dkt. 20 ¶¶ 127–139.) The facts that give rise to Plaintiffs' individual fraud claims do not arise from Defendants' alleged MLA violations. *Ault*, 692 F.3d at 1216. The proof required to prove Plaintiffs' individual claims differs from the proof required to establish that Defendants violated the MLA. Plaintiffs do not provide the court with legal authority supporting their ability to represent the class, maintain their individual claims, and satisfy the typicality requirement. Therefore, the court finds that Plaintiffs have not met their burden of showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

### 4. Adequacy of Class Representation

The final Rule 23(a) element requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy refers to both the named plaintiffs and the lawyers who intend to serve as class counsel. *London v. Wal-Mart Stores, Inc.,* 340 F.3d 1246, 1253 (11th Cir. 2003). The adequacy of representation requirement "encompasses two separate inquiries: '(1) whether any substantial conflicts of interest exist between the representatives and the class[] and (2) whether the representatives will adequately prosecute the action.'" *Valley Drug*, 350 F.3d at 1189 (quoting *In re HealthSouth Corp. Sec. Litigation*, 213 F.R.D. 447, 460–461 (N.D. Ala. 2003)). The adequacy requirement also concerns whether the plaintiff's counsel is "qualified, experienced, and generally able to conduct the proposed

litigation." *Griffin*, 755 F.2d at 1533.  Plaintiffs maintain that they are adequate representatives because no conflicts exist, and they have actively participated in this litigation by conferring with counsel numerous times, responding to written discovery, producing documents, and appearing for depositions.  (Dkt. 72 at 29.)  Plaintiffs' attorneys also maintain that they have extensive experience prosecuting complex class actions. Defendants do not challenge Plaintiffs' attorneys' qualifications or their ability to prosecute this action.  (*See* Dkt. 77.)  After reviewing the record, the court is satisfied that Plaintiffs' attorneys are qualified, experienced, and can adequately prosecute this action.

Defendants argue that Plaintiffs are inadequate representatives for the proposed class based on four grounds.  First, Defendants maintain without citing any supporting legal authority that Plaintiffs' interpretation of the Uniform Code of Military Justice could harm class members. (Dkt. 77 at 24–25.)  This argument is unpersuasive because it is based on speculation.  *See Gamache v. Hogue*, 338 F.R.D. 275, 290 (M.D. Ga. 2021) ("Adequacy is not defeated by mere speculative or hypothetical conflicts.").  Second, Defendants challenge the credibility of Plaintiffs, arguing that statements contained in Plaintiffs' June 26, 2024, declarations contradict their prior deposition testimony. (Dkt. 77 at 26–28.)  The court deems it inappropriate to assess Plaintiffs' credibility at this stage of litigation.  *Powers v. GEICO*, 192 F.R.D. 313, 317 n.6 (S.D. Fla. 1998) ("[A]ny inquiry concerning [a plaintiff's] credibility [at the class certification stage] is an impermissible examination of the merits of the case.") (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. at 177–78 (1974)).  Any credibility concerns may be appropriately

raised and addressed at a later phase of litigation or trial upon consideration of the

merits of Plaintiffs' claims.  Third, Defendants maintain that Plaintiffs have created a

conflict of interest between themselves and the proposed class members because

Plaintiffs improperly abandoned claims based on Defendants' purported failure to

include the statement of the Military Annual Percentage Rate (MAPR) in Plaintiffs'

and the proposed class members' timeshare contracts.  (Dkt. 77 at 25–26.)   The MLA

states in pertinent part:

> With respect to any extension of consumer credit (including
> any consumer credit originated or extended through the
> internet) to a covered member or a dependent of a covered
> member, a creditor shall provide to the member or
> dependent . . . orally and in writing before the issuance of
> the credit . . . [a] statement of the annual percentage rate of
> interest applicable to the extension of credit.

10 U.S.C. § 987(c)(1).  According to Defendants, this kind of "claim-splitting" is not

permitted because Eleventh Circuit precedent requires a plaintiff to assert all of its

causes of action arising from a common set of facts in one lawsuit.  (Dkt. 77 at 25

(citing *Kennedy v. Floridian Hotel*, 998 F.3d 1221, 1236 (11th Cir. 2021); *Kelescseny v.

Chevron*, 262 F.R.D. 660, 672–73 (S.D. Fla. 2009)).)

Under *Kennedy v. Floridian Hotel*, "[t]he claim-splitting doctrine . . . applies

where a second suit has been filed before the first suit has reached a final judgment."

998 F.3d at 1236.  This case is distinguishable because only one lawsuit has been filed

by Plaintiffs against Defendants.  In *Kelescseny v. Chevron*, the court determined that the

plaintiff was not an adequate representative because

> [p]otential class members who . . . suffered damages . . .
> would be precluded from obtaining relief for the withdrawn
> damages claims under Florida law.

*Id.* at 673.  The court explained that the plaintiff, in seeking a limited remedy, "not

only foreclose[d] his own right to relief for other damage done to his boat but

foreclose[d] the rights of all other class members."  *Id.*  This case is distinguishable

because Plaintiffs' abandonment of the MAPR claim does not leave potential class

members without relief, as in *Kelesceny.*  This is because Plaintiffs contend that all the

potential class members' loan contracts contain mandatory arbitration, class action

waiver, and jury trial waiver provisions that also violate the MLA and make their

contracts void from inception.

Plaintiffs reply that the missing MAPR disclosure language pertains to loan

interest rates exceeding 36%.  (Dkt. 85 at 9 (citing 32 C.F.R. § 232.6(c)(3)).)  Because

the interest rates on the applicable timeshare loans are well below 36%, they contend

that the absence of the MAPR disclosure is a mere procedural violation that did not

cause any actual harm.  (*Id.* (citing *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917,

924 (11th Cir. 2020).)  Courts have found that a class representative is adequate,

despite abandoning certain claims or theories and thereby subjecting absent class

members to preclusive effects, when the court determined that the abandoned claim

was not suitable for class treatment and that the remaining claims adequately protect

the class members' interests.  *See In re Universal Serv. Fund Tel. Billing Practices Litig.*,

219 F.R.D. 661, 670 (D. Kan. 2004) (finding class representative adequate where

plaintiff abandoned uncertifiable fraud claim, which "advance[d] the named plaintiffs'

interests as well as the interests of the absent class members"); *Stanich v. Travelers
Indem. Co.*, 259 F.R.D. 294, 308 (N.D. Ohio 2009) ("Here, the only thing that has been
abandoned is one theory for satisfying the duty element of the fraudulent concealment
claim. Thus, the potential conflict in this case is less significant than the abandonment
of an independent fraud claim . . . .")  Defendants have not shown Plaintiffs to be
inadequate class representatives based on Plaintiffs' failure to assert the MAPR
violation claim since that claim is unsuitable for class treatment under the
circumstances here.  The remaining claims for the allegedly violative mandatory
arbitration, class action waiver, and jury trial waiver provisions violations adequately
protect the class members' interests.

Next, Defendants maintain that a fundamental conflict of interest exists because
Plaintiffs and some of the proposed class members used their timeshares.  (Dkt. 77 at
17–18 & 23–24.)  In *Valley Drug*, the Eleventh Circuit explained:

> A fundamental conflict exists where some party members
> claim to have been harmed by the same conduct that
> benefitted other members of the class. In such a situation,
> the named representatives cannot vigorously prosecute the
> interests of the class through qualified counsel because their
> interests are actually or potentially antagonistic to, or in
> conflict with, the interests and objectives of other class
> members.

*Valley Drug*, 350 F.3d at 1189 (quotation omitted).  Defendants assert that out of the
322 identified proposed class members, over 60% have used their timeshare points to
stay at a Holiday Inn Club Vacations resort or used their points for external services
such as airfare, car rental companies, and resort exchanges.  (Dkt. 77 at 23–24.)

Plaintiffs do not dispute this assertion.  Instead, Plaintiffs note that Defendants have provided no evidence supporting the contention that the proposed class members prefer to retain their timeshare interests and the related financial burden.  (Dkt. 85 at 8.)  Plaintiffs also respond that if they were to prevail on the merits, no evidence supports that voiding the contracts and awarding the proposed class actual damages would be financially detrimental to class members because they can always purchase another timeshare if they desire.  (*Id.*)

Plaintiffs' arguments are not well-taken.  As the "party seeking class certification," Plaintiffs "must affirmatively demonstrate" their compliance with Rule 23.  *Dukes*, 564 U.S. at 350.  Plaintiffs have not done so here, as they do not dispute that more than half of the identified proposed class members used their timeshare points in various ways.  As a result, Plaintiffs' interests in seeking to void the timeshare contracts are "actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class members."  *Valley Drug*, 350 F.3d at 1189; *accord Warren v. City of Tampa*, 693 F. Supp. 1051, 1061 (M.D. Fla. 1988) ("Conflicts pertaining to the specific issues being litigated will bar class certification.").  This conflict is further evidenced by Plaintiffs' position that potential class members who wish to keep using their timeshare points can buy another timeshare if Plaintiffs were to prevail on the merits and obtain a declaration voiding the class members' timeshare contracts.  *See In re Photochromic Lens Antitrust Litig.*, No. 8:10-md-2173, 2014 WL 1338605, at *10 (M.D. Fla. Apr. 3, 2014) ("It follows that a class cannot be certified when some members of the class benefitted from the alleged wrongful conduct, such that the

proposed class consists of winners and losers." (citing *Pickett v. Iowa Beef Processors*, 209

F.3d 1276, 1280 (11th Cir. 2000)).  Based on this conflict, Plaintiffs have not met their

burden of showing that "the representative parties will fairly and adequately protect

the interests of the class."  Fed. R. Civ. P. 23(a)(4).  As a result, the proposed class will

not be certified because Plaintiffs have failed to demonstrate typicality and adequacy.

### D. Rule 23(b)(2) Certification

Plaintiffs seek hybrid class certification under Federal Rule of Civil Procedure

23(b)(2) and (b)(3).  (Dkt. 72 at 29.)  Plaintiffs contend that the class should be certified

under Rule 23(b)(2) because "[a]ny meaningful redress for Plaintiffs and the [c]lass

requires a declaration voiding the loans from inception."  (Dkt. 72 at 30.)  Plaintiffs

also seek rescission of the contracts and actual damages.  (Dkt. 20 at 38–39.)

Generally, claims for monetary relief may not be certified under Federal Rule

of Civil Procedure 23(b)(2).  *Dukes*, 564 U.S. at 360–61.  ("Rule 23(b)(2) applies only

when a single injunction or declaratory judgment would provide relief to each member

of the class. . . . [I]t does not authorize class certification when each class member

would be entitled to an individualized award of monetary damages.")  The damages

Plaintiffs seek on behalf of the class would flow from a declaration that the contracts

they signed are void from the inception.  However, the damages sought here are not

merely incidental to declaratory relief of an indivisible injunction that benefits all class

members.  Rather, the damages sought are individualized claims for money, which

"belong in Rule 23(b)(3)" not Rule 23(b)(2).  *Id.* at 362.  Each class member would be

entitled to a different amount of damages, depending on the amount of interest paid

and the amount of the loan.  For these reasons, even if Plaintiffs satisfied the Rule
23(a) factors, which they have not, the class still cannot be certified pursuant to Rule
23(b)(2).

### E.  Rule 23(b)(3) Certification

#### 1.  Predominance

Plaintiffs also seek class certification under Rule 23(b)(3).  The requirement that
common questions of law or fact predominate means "the issues in the class action
that are subject to generalized proof and thus applicable to the class as a whole[] must
predominate over those issues that are subject only to individualized proof."  *Kerr v.
City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989) (quotation omitted).
Common issues do not predominate if "as a practical matter, the resolution of [an]
overarching common issue breaks down into an unmanageable variety of individual
legal and factual issues."  *Babineau v. Fed. Express. Corp.,* 576 F.3d 1183, 1191 (11th Cir.
2009) (quotation omitted).  Plaintiffs maintain there is one predominating common
question here: whether "the Trust Product Timeshare loans [are] void from inception
because they contain provisions that are prohibited by [section] 987(e) of the MLA."
(Dkt. 72 at 33.)  Defendants contend that individual issues predominate for several
reasons.  (Dkt. 77 at 28–35.)

First, Defendants argue that Plaintiffs' burden to prove standing for each
proposed class member predominates over whether the loans are void from inception.
"In some cases, whether absent class members can establish standing may be
exceedingly relevant to the class certification analysis required by [Rule 23]."  *Cordoba*,

942 F.3d at 1273.  "[A]t some time in the course of the litigation[,] the district court will have to determine whether each of the absent class members has standing before they [can] be granted any relief." *Id.* at 1275.  Of course, "[t]hat is an individualized issue," and a district court must consider it in the predominance inquiry under Rule 23(b)(3).  *Id.*  Here, it is undisputed that some of the proposed class members use their timeshares despite the alleged MLA violations.  Reviewing thousands of claims to determine which class members suffered an injury in fact due to the alleged MLA violations would likely require individualized legal and factual analyses that ordinarily prevent a finding of predominance under Rule 23(b)(3).  *See Green-Cooper*, 73 F.4th at 893 n.13.

Second, Defendants contend that if the class were certified and Plaintiffs were to prevail on the merits, individual analysis would be needed to unwind and rescind the proposed class members' contracts. (Dkt. 77 at 30–31.)  Defendants maintain that the "mortgages and deeds associated with each transaction would have to be taken back through either a deed-in-lieu of foreclosure or foreclosure and re-deeded." (Dkt. 77–14 ¶ 4.)  For proposed class members such as Plaintiffs who utilized equity from a previous timeshare interest to buy a timeshare interest in the Orange Lake Revocable Trust, Defendants argue that re-deeding may be impossible.  (*Id.* ¶¶ 3, 5.)  According to Defendants, the type of former timeshare interest Plaintiffs owned might no longer exist, or a third party may now own it.  (*Id.*; Dkt. 77 at 31.)  Defendants also argue that predominance is defeated because Plaintiffs have not identified a method to

determine the value of the timeshare points used by Plaintiffs and proposed class members. (Dkt. 77 at 31, 33.)

"[T]he presence of individualized damages issues does not prevent a finding that the common issues in the case predominate," as long as Plaintiffs "come forward with plausible statistical or economic methodologies to demonstrate [damage] impact on a class-wide basis." *Klay*, 382 F.3d at 1259 (quotation omitted). "Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification." *Id.* at 1259–60 (footnote omitted).

Plaintiffs have not "come forward with plausible statistical or economic methodologies" to demonstrate how damages can be calculated class-wide. *See id* at 1259. Plaintiffs do not rely on an expert to argue that a class-wide damage methodology exists. According to Plaintiffs, damages can be calculated class-wide by looking at Defendants' business records to determine all payments made by each class member on each void loan. (Dkt. 72 at 38.) This may be true for potential class members who have paid on their timeshares and are not delinquent in making payments but have not redeemed any points or who have paid on their timeshares and are delinquent in making payments but did not redeem any points before delinquency. However, this calculation does not account for the potential class members who have paid on their timeshares, are not delinquent in those payments, and have redeemed some of their points or who have paid on their timeshares and are delinquent in making

payments but redeemed some of their points predelinquency.  For the potential class members who used their timeshare points, the value of the benefit received must be quantified individually and subtracted from their potential recovery.  *Klay*, 382 F.3d at 1259.  Although the exact figures deduced from these calculations are not required at the class certification stage, Plaintiffs are required to identify a plausible methodology at this stage.  They have failed to do so.  Therefore, even if Plaintiffs would have met their burden under Rule 23(a), which they have not, they have not met their burden of establishing predominance under Rule 23(b)(3).

### 2.  Superiority and Manageability

The Rule 23(b)(3) superiority provision requires the court to determine "that the class action device is superior to other available methods for the fair and efficient adjudication" of the controversy.  *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004).  The four factors district courts consider in making this determination are (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely to be encountered in the management of the class action.  Fed. R. Civ. P. 23(b)(3)(A)–(D).

Plaintiffs assert that they are unaware of any other litigation brought by absent class members against Defendants.  (Dkt. 72 at 37.)  However, as discussed previously, the record suggests that some potential class members use their timeshare points

despite the purported MLA violations.  Therefore, a class action is not a superior method for the fair and efficient adjudication of this controversy because military servicemembers like Plaintiffs who seek to void their timeshare contracts may bring individual actions.

## CONCLUSION

Accordingly:

1. Plaintiffs' Motion in Limine to Exclude the Expert Report and Testimony of Paul Habibi (Dkt. 74) is **DENIED**.

2. Defendants' Motion to Exclude the Opinions of Plaintiffs' Proposed Expert Christopher Young (Dkt. 79) is **GRANTED**.

3. Plaintiffs' Motion to Certify Class (Dkt. 72) is **DENIED**.  **On or before March 14, 2025**, Plaintiffs shall file a third amended complaint which omits class action allegations.

**ORDERED** in Orlando, Florida, on February 14, 2025.


JULIE S. SNEED
UNITED STATES DISTRICT JUDGE


Copies furnished to:
Counsel of Record