UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANGELIQUE L. LINGARD and
SUDARIEN D. SMITH,

    Plaintiffs,

v.                                               Case No: 6:23-cv-323-JSS-RMN

HOLIDAY INN CLUB VACATIONS,
INC. and WILSON RESORT
FINANCE, LLC,

    Defendants.
_____/

**ORDER**

Defendants move for summary judgment. (Dkt. 102; *see* Dkt. 116.) Plaintiffs oppose the motion. (Dkt. 114.) For the reasons outlined below, Defendants' motion is granted.

**BACKGROUND**[1]

Plaintiffs are United States Air Force servicemembers who entered into eight timeshare point loan purchase contracts with Defendant Holiday Inn Club Vacations, Inc. (HICV) from November 2016 through August 2021, with financing from Defendant Wilson Resort Finance, LLC. (Dkts. 102 ¶ 4, 77-3, 77-4, 77-5, 77-6.) Plaintiffs maintain that they made their timeshare purchases because HICV's representative falsely told them that because they were in the military, HICV would

---

[1] The court draws the facts mainly from the portion of Defendants' Statement of Undisputed Facts which Plaintiffs agree are undisputed (Dkt. 102 ¶¶ 1, 2, 4, 5, 14–35) and Plaintiffs' depositions (Dkts. 77-8, 77-9).

1

buy back their timeshare points upon request. (Dkt. 77-8 at 197:12–198:6; Dkt. 77-9 at 17:16–25.)

From 2017 through 2022, Plaintiffs stayed at HICV resorts approximately fifteen times and occasionally purchased additional timeshare points from HICV. (Dkt. 102 ¶¶ 14–31; Dkt. 77-11; Dkt. 114 at 8.) Plaintiffs maintain that by 2021, they could no longer afford their timeshares, and they requested that HICV buy back their points. (Dkt. 77-9 at 55:3–10.) HICV refused to buy back their points, and Plaintiffs ceased making payments on their two active timeshare loan contracts: the 2020 Timeshare Contract (Dkt. 99-1) and the 2021 Timeshare Contract (Dkt. 99-2). (*See* Dkt. 77-8 at 186:9–12; Dkt. 77-9 at 17:5–15, 53:6–54:2.)

Defendants have sought to collect the outstanding loan balances from Plaintiffs, but Plaintiffs assert that as "covered borrowers" within the meaning of 32 C.F.R. § 232.3(g), they are entitled to the protections of the Military Lending Act (MLA), 10 U.S.C. § 987. (Dkt. 77-8 at 178:8–20; Dkt. 99 ¶¶ 49, 76, 81.) Plaintiffs allege that their contracts with HICV violate the MLA by: (1) failing to provide a statement of the Military Annual Percentage Rate (MAPR) as outlined by 32 C.F.R. § 232.6, (Dkt. 99 ¶¶ 85–86); (2) including an arbitration clause in violation of 10 U.S.C. § 987(e)(3), (Dkt. 99 ¶ 88); and (3) including class-action and jury-trial waiver clauses in violation of 10 U.S.C. § 987(e)(2), (Dkt. 99 ¶ 93). Plaintiffs contend that their obligation to pay their loans is excused because Defendants' alleged MLA violations render the contracts "void from inception" under 10 U.S.C. § 987(f)(3) and 32 C.F.R. § 232.9(c). (Dkt. 99 ¶ 66). Plaintiffs seek to vitiate their contracts and to recover

damages for MLA violations (count one) and common law fraud (count two) arising from Defendants' alleged misrepresentations that HICV would buy back Plaintiffs' timeshare points upon request. (Dkt. 99 ¶¶ 80–117.)[2]

## APPLICABLE STANDARDS

On a motion for summary judgment, a district court views "all facts and reasonable inferences in the light most favorable to the nonmoving party." *Wesson v. Huntsman Corp.*, 206 F.3d 1150, 1152 (11th Cir. 2000). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The movant "bears the initial responsibility of informing the district court of the basis for its motion" and "identifying those portions" of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the movant demonstrates the absence of a genuine issue of material fact, "[t]he burden . . . shifts to the non[]moving party" to "go beyond the pleadings" and

---

[2] To challenge their payment obligations, Plaintiffs initially sought to certify a class, which the court denied. (Dkt. 97.) Plaintiffs' motion for reconsideration of the court's order denying class certification (Dkt. 100) must be denied as moot in light of this order. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("[J]urisdiction is power to declare the law," so when it does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause.").

"present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). To satisfy its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In resolving a motion for summary judgment, the district court must consider the materials in the record to which the parties cite, but it does not need to consider any other materials in the record. Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."); *see HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) ("This rule was implemented so that a 'court may decide a motion for summary judgment without undertaking an independent search of the record.'" (quoting Fed. R. Civ. P. 56(c)(3) advisory committee's note to 2010 amendment)).

## ANALYSIS

Defendants seek summary judgment on two principal grounds: (1) that Plaintiffs lack standing to bring their claims under the MLA and (2) that, because Plaintiffs lack standing to bring their federal claims, the court should decline to exercise supplemental jurisdiction over Plaintiffs' common law fraud claims. (Dkt. 102 at 15–19, 23.) The court discusses these grounds in turn.

### A. Standing

Standing contains three elements. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an 'injury in fact'—an invasion of

a legally protected interest which is (a) concrete and particularized" and "(b) []actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* (collecting cases). Second, the injury must be "fairly . . . trace[able] to the challenged action of the defendant." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41 (1976). Traceability requires "a causal connection between the alleged injury and the allegedly improper conduct." *Fla. Ass'n of Med. Equip. Dealers v. Apfel*, 194 F.3d 1227, 1230 (11th Cir. 1999). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38, 43). "As the part[ies] invoking federal jurisdiction, [Plaintiffs] bear the burden of demonstrating that they have standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021) (citing *Lujan*, 504 U.S. at 561). A dismissal for lack of standing "has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citing *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991)).

The issue of whether Plaintiffs have standing under the MLA has been litigated throughout this case. In July 2023, the court determined that Plaintiffs satisfied standing at the pleading stage. (*See* Dkt. 36 at 13–14.) Following that order, Defendants moved for reconsideration, citing a recent unpublished Eleventh Circuit opinion addressing MLA standing requirements in a factually analogous case, *Louis v.*

5

*Bluegreen Vacations Unlimited, Inc.*, No. 22-12217, 2024 WL 2873778 (11th Cir. June 7, 2024).[3] (*See* Dkt. 78.)

In *Louis*, the plaintiffs, who claimed to be covered by the MLA, entered into a timeshare contract that did not contain required MLA disclosures but did contain an arbitration clause prohibited by the MLA. *Louis*, 2024 WL 2873778, at *1. The plaintiffs argued that the defendant's MLA violations caused them to pay money toward loans made void under 10 U.S.C. § 987(f)(3). *Id.* at *2. Reviewing the district court's dismissal of the case for lack of standing, the Eleventh Circuit did not opine as to whether the plaintiffs suffered a concrete injury by paying on loans purportedly void under the MLA. *Id.* Nor did the court address redressability. *See generally id*. Instead, the Eleventh Circuit affirmed the dismissal of the complaint because it found that the plaintiffs "lack[ed] specific allegations that link[ed] their claimed injury to [the defendant's] alleged misconduct." *Id.* at *2. In other words, the Eleventh Circuit held that the plaintiffs lacked standing because they failed to allege "how the allegedly unlawful conduct here (MLA violations) affected [the plaintiffs'] financial interests." *Id.* The court noted that the plaintiffs "did not allege that their down payment was made because they were not provided the required disclosures or because the [timeshare contract] included an arbitration provision." *Id.* The court explained that the possibility the loans might be void under section 987(f)(3) "serve[d] merely as a

---

[3] In the Eleventh Circuit, "unpublished decisions . . . bind no one," *Ray v. McCullough Payne & Haan, LLC*, 838 F.3d 1107, 1109 (11th Cir. 2016), but "may be cited as persuasive authority," 11th Cir. R. 36-2.

6

possible remedy" and does not itself establish traceability between the plaintiffs' claimed harm and the defendant's MLA violations. *Id*. Thus, the Eleventh Circuit concluded that the plaintiffs' claimed injury could not "be fairly traced to [the defendant's] alleged violations of the MLA." *Id.*

This court distinguished *Louis* and denied Defendants' motion for reconsideration. (Dkt. 92.) The court explained that unlike the plaintiffs in *Louis*, Plaintiffs in this case alleged that "they paid interest in excess of the amount stated in the agreements in violation of the MLA" and that "they have made payments pursuant to the unlawful agreements, which money they would not have paid but for [HICV] knowingly or negligently inducing them into entering into illegal and void agreements." (Dkt. 92 at 4 (alterations adopted) (quoting Dkt. 20 ¶ 12).) As such, the court determined that Plaintiffs had plausibly pleaded the traceability element of standing. However, standing must also be shown to exist at the summary judgment stage. *See Lujan*, 504 U.S. at 561 ("[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." (collecting cases)). "[I]n response to a summary judgment motion, . . . the plaintiff can no longer rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' . . . which for purposes of the summary judgment motion will be taken to be true." *Id.* (quoting Fed. R. Civ. P. 56(e) (1987)); *see also Ramirez*, 594 U.S. at 430–31. Thus, Defendants raise the issue of standing again,

7

asserting that there is no genuine dispute that Plaintiffs' claimed injury is not fairly traceable to Defendants' MLA violations. (Dkt. 102 at 15–19.)

Defendants direct the court (*see* Dkt. 102 at 17) to Plaintiffs' deposition testimony that they were unfamiliar with the requirements of the MLA or with some of its relevant concepts—such as "arbitration" and "class action"—at the time they entered into the timeshare purchase agreements (Dkt. 77-8 at 75:20–77:13, 177:7–23, 187:13–18; Dkt. 77-9 at 22:9–29:17, 78:5–10). Plaintiffs further testified that they were unsure whether Defendants' compliance with the MLA would have affected their purchase decisions. (Dkt. 77-8 at 177:7–23, Dkt. 77-9 at 78:5–10.) Plaintiffs' testimony contradicts their allegation that they "paid money they would not have paid but for [HICV] knowingly or negligently inducing them into entering into [the] illegal and void agreements." (Dkt. 102 at 7; *see* Dkt. 99 ¶ 12.) Moreover, Defendants maintain that the possibility that the timeshare contracts are void as a result of MLA violations "serves merely as a possible remedy" and does not itself establish the nexus between Plaintiffs' claimed injury and Defendants' MLA violations. (Dkt. 102 at 18–19.) *See Louis*, 2024 WL 2873778, at *2.

Plaintiffs again argue that this case is distinguishable from *Louis*. (Dkt. 114 at 13–16.) Plaintiffs maintain that they are proceeding under section 987 subsections (a) and (e), unlike the *Louis* plaintiffs, who proceeded only under section 987 subsection (e), which provides that it is "unlawful" for creditors to extend credit under agreements containing prohibited terms. (*Id.* at 14–15.) *See* 10 U.S.C. § 987(a), (e). According to Section 987(a):

> Interest. A creditor who extends consumer credit to a covered member of the armed forces or a dependent of such a member shall not require the member or dependent to pay interest with respect to the extension of such credit, except as—
> (1) agreed to under the terms of the credit agreement or promissory note;
> (2) authorized by applicable [s]tate or [f]ederal law; and (3) not specifically prohibited by this section.

10 U.S.C. § 987(a).

Plaintiffs argue that through section 987(a) "Congress cured" the purported failure of section 987(e) to connect the lender's prohibited conduct under the MLA to the borrower's payment of money because Plaintiffs construe subsection (a) as "tying the prohibited or unlawful conduct of the creditor to payment of money by [c]overed [b]orrowers." (Dkt. 114 at 15.) Plaintiffs maintain that absent such a reading, it would be a "rare day when a borrower pays money [because] of an arbitration clause, class ban, or jury trial waiver." (*Id.*)

Notwithstanding Plaintiffs' position, Plaintiffs' claimed injury is still not "fairly traceable" to Defendants' "allegedly unlawful conduct." *See California v. Texas*, 593 U.S. 659, 669 (2021). Traceability exists only where a plaintiff's claimed harm is causally linked to "the challenged action of the defendant." *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023) (quoting *Lujan*, 504 U.S. at 560). Because Plaintiffs have not shown that the requirement to pay interest under section 987(a) is actionable absent an MLA violation, this court follows *Louis* in interpreting the "challenged action" of Defendants in this case as the inclusion of MLA-prohibited terms in the loan agreements. *See Louis*, 2024 WL 2873778, at *2 (explaining that the plaintiffs'

9

alleged harm could not be fairly traced to the defendant's "fail[ing] to provide disclosures, misrepresenting the MAPR, and requiring arbitration"). The court is persuaded by the Eleventh Circuit's explanation in *Louis* that prevailing standing-doctrine jurisprudence requires a causal nexus between Plaintiffs' claimed harm and Defendants' MLA violations to satisfy the element of traceability. *See Walters*, 60 F.4th at 650 ("[The plaintiff] must establish that his wasted time, financial harm, and emotional distress are traceable to [the defendant's] alleged [Truth in Lending Act] violation."). Besides their argument attempting to distinguish *Louis*, which the court has rejected, Plaintiffs do not provide the court with record evidence that supports Plaintiffs' claimed injuries are fairly traceable to Defendants' unlawful conduct. (*See generally* Dkt. 114 at 13–20.) Therefore, summary judgment must be granted on the issue of standing as to Plaintiffs' MLA claims. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271–72 (11th Cir. 2019) (finding that the element of traceability is lacking if the plaintiff "would have been injured in precisely the same way" without the defendant's misconduct).

Moreover, Plaintiffs have not provided any legal authority indicating that Congress can "cure" the jurisdictional requirement of traceability via statutory enactment. (*See* Dkt. 114 at 15–16.) It is well-established that "[i]n no event . . . may Congress abrogate" the elements of injury in fact, traceability, and redressability for standing. *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979). Thus, Plaintiffs' construction of the MLA must be rejected.

### B. Common Law Fraud

Having found that Plaintiffs' MLA claims must be dismissed for lack of standing, the court turns to Defendants' argument that it should decline to exercise jurisdiction over Plaintiffs' remaining common law fraud claims. "As 'a court of limited jurisdiction,' a federal court 'possesses only that power authorized by the Constitution and statutes, which is not to be expanded by judicial decree.'" *United States v. Batmasian*, 66 F.4th 1278, 1280 (11th Cir. 2023) (cleaned up) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Plaintiffs' complaint cites supplemental jurisdiction under 28 U.S.C. § 1367 as the sole jurisdictional basis for their common law fraud claims, which arise under state law. (*See* Dkt. 99 ¶ 9). Defendants maintain that although diversity exists between the parties, Plaintiffs never invoked diversity jurisdiction as a basis for their claims in the complaint and have not alleged damages sufficient to satisfy the amount in controversy requirement. (Dkt. 103 at 5 n.5 (citing *id.*).) The court agrees. *See* 28 U.S.C. § 1332 (explaining to establish diversity jurisdiction, the amount in controversy must exceed $75,000); *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1306 (11th Cir. 2016) ("[D]iversity jurisdiction is determined at the time of filing the complaint.").

A court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the . . . court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has instructed that "if the federal claims are dismissed before trial," then "the state claims should be dismissed as well" because "[n]eedless decisions of state law should be avoided both as a matter of comity and to

11

promote justice between the parties." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The Eleventh Circuit has explained that "if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims." *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) (quoting *L.A. Draper & Son v. Wheelabrator–Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984)). Accordingly, the court declines to exercise supplemental jurisdiction over Plaintiffs' common law fraud claims. *United Mine Workers of Am.*, 383 U.S. at 726; *Mergens*, 166 F.3d at 1119; *Sutherland v. Global Equip. Co.*, 786 F. App'x 156, 162–63 (11th Cir. 2019).[4]

## CONCLUSION

Accordingly:

1. Defendants' Motion for Summary Judgment (Dkt. 102) is **GRANTED**.

2. Count one of Plaintiffs' third amended complaint (Dkt. 99 ¶¶ 80–102) is **DISMISSED** without prejudice for lack of standing. Count two of Plaintiffs' third amended complaint (*id.* ¶¶ 106–117) is **DISMISSED** without prejudice for lack of jurisdiction.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines and to close this case.

---

[4] Having found that summary judgment must be granted for the reasons explained above, the court does not address Defendants' remaining arguments.

**ORDERED** in Orlando, Florida, on July 17, 2025

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record